UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN COOLEY and COOLEY & CO. LTD.
                                    Plaintiffs,

-against-


PENGUIN GROUP (USA) INC., DK PUBLISHING,
INC. an affiliate of PENGUIN GROUP (USA) INC.,
DORLING KINDERSLEY LIMITED. an affiliate of
PENGUIN GROUP (USA) INC., GETTY IMAGES,
INC., CORBIS CORPORATION, RGB VENTURES
LLC D/B/A SUPERSTOCK and LOUIS PSIHOYOS,

                                    Defendants.

**12 CIV 0001**

**JURY TRIAL DEMANDED**



## COMPLAINT

Plaintiffs Brian Cooley ("**Cooley**") and Cooley & Co. Ltd. ("**Cooley & Co.**") (collectively, "**Plaintiffs**", each individually "**Plaintiff**") as for their Complaint by and through their counsel Sam P. Israel, P.C. against Penguin Group (USA) Inc., DK Publishing, Inc., Dorling Kindersley Limited, Getty Images, Inc. ("**Getty**"), Corbis Corporation ("**Corbis**"), RGB Ventures LLC d/b/a SuperStock ("**SuperStock**") and Louis Psihoyos ("**Psihoyos**") (collectively "**Defendants**"), allege upon Plaintiff's own personal knowledge and otherwise upon information and belief, as follows:

## NATURE OF THE ACTION

1.      In this action the Plaintiff Cooley, a preeminent artist in the paleontology field seeks to arrest the unlawful reproduction and sale of copies of two of his world renowned copyrighted sculptures of dinosaur eggs and to recover damages he has sustained as a consequence of this misconduct. As alleged herein, the Defendants — a photographer, three photography clearance organizations and a publishing conglomerate — have individually and collectively distributed and continue to distribute illegal copies of the Plaintiff's works through their distinct channels of distribution, at

all times doing so without authorization, and in violation of the Plaintiff's exclusive rights of reproduction and distribution under the United States Copyright Act.

## PARTIES

2.     Brian Cooley is a citizen of Canada residing at 6727 Silverview Road, NW Calgary, Alberta, Canada T3B 3L5. Cooley & Co. is a Canadian company located in the Province of Alberta, Canada, owned jointly by Brian Cooley and his wife and engaged in the business of generating three-dimensional objects, primarily dinosaurs, for use or sale by or to its clients.

3.     Upon information and belief, defendants DK Publishing, Inc. and Dorling Kindersley Limited are affiliated publishing corporations, owned and/or operated by defendant Penguin Group (USA) Inc. (collectively, the "**Publisher Defendants**"), each either maintaining offices and/or conducting business at 375 Hudson Street, New York, New York 10014.

4.     Upon information and belief, defendant Getty is a domestic corporation that purports to offer "licensing models, digital media management tools and a comprehensive offering of creative and editorial imagery, microstock, footage and music." *See* http://company.gettyimages.com. Getty maintains offices and/or conducts business at 75 Varick Street, New York, N.Y. 10013.

5.     Upon information and belief, defendant Corbis is a domestic corporation that purports to offer a selection of licensed stock photography and illustrations through the companies' "branded websites." *See* http:// corporate. corbis.com/ company- fact-sheet. Corbis maintains offices and/or conducts business at 250 Hudson Street, New York, N.Y. 10013.

6.     Upon information and belief, defendant SuperStock is a domestic corporation, "photographer owned and operated," which purports to offer a "large collection of Royalty Free, Rights Managed and Subscription stock images" through its website.   http://www.linkedin.com/company/superstock.   SuperStock   maintains

offices and/or conducts business in New York. (Corbis, Getty and SuperStock are collectively referred to herein as the "**Clearinghouse Defendants**.")

7.     Upon information and belief, defendant Louis (*a.k.a.* "Louie") Psihoyos is a professional photographer residing at 443 Juniper Avenue, Boulder, Colorado 80304 who conducts business throughout the United States, including in the State of New York and within this Judicial District.

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a), in that, among other causes of action stated herein are claims arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*

9.     The Court has *in personam* jurisdiction over the Defendants generally and/or specifically in that they reside in New York and/or purposely avail themselves of the privileges of conducting business here under the laws of New York State within the meaning of Section 301 of the New York Civ. Prac. L. & Rules and/or because one or more of them have engaged in activities within the State that has caused injury outside of New York.

10.     Venue is proper in this forum pursuant to 28 U.S.C. §§ 1391(a) and (c) and § 1400(b) because the Defendants conduct business within this District, are amenable to process here, and have infringed Plaintiff's copyrights within this District, as described herein.

## BACKGROUND FACTS

11.     Brian Cooley is an internationally renowned sculptor of prehistoric life. Over the past thirty years his highly realistic life-sized dinosaur sculptures have been showcased in museums and other institutions throughout the world and featured in an array of scholarly and lay publications including on the front covers of National Geographic and Time magazines. Among other distinctions, Cooley has been awarded

the top international prize in the category of sculptural work by a "paleoartist" by the Society of Vertebrate Paleontology.

12.     Among his other original dinosaur sculptures, in or about 1995 Cooley designed and created a three-dimensional model of a broken- open dinosaur egg with an exposed Segnosaur embryo. A photograph of the *Segnosaur Embryo* sculpture was published in the National Geographic Magazine in its May, 1996 issue, Volume 189, No. 5, on page 107.

13.     That same year (1995), Cooley designed and created another three-dimensional dinosaur egg sculpture entitled *"Therizinosaur,"* which would also be featured on the cover of the same May, 1996 issue of National Geographic Magazine.

14.     In creating both sculptures (the **"Works"**), Cooley applied his imagination, paleontological knowledge, talent, judgment and skill to craft academically approved three dimensional renditions of dinosaur embryos as they likely would have existed just prior to hatching. Accordingly, the Works comprise copyrightable subject matter and were indeed later registered under the Copyright Act of 1976 § 101, *et seq.*, as amended, ( **"Copyright Act"** or the **"Act"**), bearing the titles *"Segnosaur Embryo"* and *"Therizinosaur"* and bearing Registration Nos.VA1-793-315 (**"Therizinosaur"**) and VA1-793-313 (**"Segnosaur Embryo"**). Cooley & Co. is the lawful owner of the copyrights to the Works by way of written assignment.

*The Publisher Infringements*

15.     Then unbeknownst to Cooley and as he has only recently come to learn, in or about 2011, DK Publishing, Inc. and its affiliate, Dorling Kindersley Limited—each acting at the instance of defendant Penguin Group (USA) Inc. — caused to be designed, produced, printed, published, marketed and distributed three children's books containing photography and text that make prominent, unauthorized and un-credited usage of the Works.

16.     *"Dinosaurs: A Children's Encyclopedia"* (Dorling Kindersley Limited 2011) and *"Dinosaurs: A Visual Encyclopedia"* (DK Publishing, Inc. 2011) feature the Plaintiff's

*Segnosaur Embryo* sculpture on their front covers (as well as on page 195 of the latter publication); "*Ask a Dinosaur*" (DK Publishing, Inc. 2011) features the *Therizinosaur* sculpture on page 31 of the publication. *See* Exhibit 1 hereto. (*Dinosaurs: A Visual Encyclopedia*" (DK Publishing, Inc. 2011), "*Dinosaurs: A Children's Encyclopedia*" (Dorling Kindersley Limited 2011) and "*Ask a Dinosaur*" (DK Publishing, Inc. 2011) are collectively referred to herein as the "**Books**.")

17.    As is evidenced by the legal discussion of U.S. Copyright law on Penguin's website, at all relevant times the Publisher Defendants were aware that they needed approval not only from the photographer of the Works but of the creator of the models themselves before reproducing the Works in their Books; and since they took affirmative action to procure the photographer's approval, the failure to obtain clearance from the Plaintiff could only have been by design or as a consequence of aggravated recklessness.

18.    Moreover, beyond unauthorized, the publication of copies of the Works was entirely without any accreditation. Although the Publisher Defendants undoubtedly recognized that someone must have created the sculptures, they not only neglected to credit Mr. Cooley for his work, but they credited no one. Other artists, listed as *model makers*, are credited for works elsewhere in the Books, but no one is given credit for the sculpture on the very cover of the Books.  Again, this glaring omission cannot be attributed to mere error but was, by necessity, an exceptionally reckless, if not intentional, violation of the Plaintiff's rights and entitlement to recognition of authorship.

19.    Inasmuch as the *Segnosaur Embryo* comprises the majority of the front cover of the Books and in that it has been or will be seen by tens of thousands of purchasers and potential purchasers of the Books, the Publisher Defendants have deprived the Plaintiff of the opportunity to have his name associated with this signature image of his work in the minds of tens, if not hundreds of thousands of viewers.

20.    Such accreditation is essential to the Plaintiff's business.  Where not by referral by a former client, nearly all of Cooley's business is a result of the appearance of

his name in association with an image or series of images in publications. As a result of his work appearing on the covers of three separate National Geographic magazine issues, for instance, clients in Canada, the U.S., Japan, Taiwan and Europe contracted Cooley to create works that were not only of ambitious scope and substantial prestige, but were highly remunerative.

21.     Indeed, the value of contracts coming by way of referral is in the millions of dollars. In the case of the Books, Cooley has been not only denied such opportunities, but those opportunities have been afforded competing sculptors who are mentioned in the Books and who profit by false association occasioned by the omission of Cooley's name.

22.     Upon information and belief, the Books were first distributed by the Publisher Defendants to booksellers in July, 2011, then in the United States and shortly thereafter in Canada, United Kingdom, Australia, India, Continental Europe and elsewhere.

23.     The Books are currently sold throughout the world both online and in bookstores, including through outlets such as Amazon.com, Walmart, Target, Barnes & Noble, and the like.

### Psihoyos' Fraudulent Registration and the Clearing House Infringements

24.     Having discovered the foregoing infringing conduct, Cooley undertook an investigation into how the Publisher Defendants came into possession of his Works. He discovered that—without the Plaintiff's permission or authorization— defendants Corbis, Getty and SuperStock had been publicly displaying and offering for distribution images of the *Therizinosaur* and *Segnosaur Embryo* sculptures.

25.     Upon information and belief, defendant Louie Psihoyos unilaterally reproduced the Works—albeit in a different medium—and he provided the infringing work for use to the Clearinghouse Defendants.

26.     At all relevant times, Psihoyos knew that his photographs were derived from and would not have been possible without the Works. The Works are clearly

recognizable in Psihoyos's photographic reproductions; in fact, little or no substantive content was added or detracted from the Works and the two-dimensional images faithfully portray the three-dimensional Works in exact detail.

27.     Psihoyos also knew that the images were to be made available for purchase by the Clearinghouse Defendants' customers by access to their web pages and that the Clearinghouse Defendants would commercially benefit thereby.

28.     Yet, Psihoyos made no attempt to obtain authorization from the Plaintiffs with respect to the Works and instead willfully disregarded the Plaintiffs' rights under the Act.

29.     The Plaintiff would discover that Psihoyos went so far as to register derivative photographic reproductions of the Works with the United States Copyright Office.

30.     In filing for copyright registration of the photographs he had taken of the Plaintiff's Works, Psihoyos not only neglected to recognize the underlying  original works of authorship (as is plainly required under the Copyright Act), but he misrepresented to the U.S. Copyright Office that he is the *sole* author of the material he filed.

31.     Psihoyos was, at all times, fully aware of the implications of his conduct under the Copyright Act. Indeed, Psihoyos has himself brought suit in this very Court on more than one occasion for the claimed infringement of certain of his own alleged copyrights. *See Psihoyos v. John Wiley & Sons, Inc.*, 2011 U.S. Dist. LEXIS 137847 (S.D.N.Y. Nov. 21, 2011) and *Psihoyos v. Apple, Inc. and Apple Computers, Inc.*, Index no. 09 Civ. 7315 (S.D.N.Y. Aug. 1, 2009).

32.     In fact, Psihoyos funds his projects partially with healthy earnings from copyright infringement cases; he publicly admitted that in recent years he has "aggressively pursued copyright infringements and … made several million dollars on those cases," and that "statutory damages have been the lifeblood of … [his] career." http://www.photomediaonline.com/features-stories/person-of-the-year/item/270-louie-psihoyos-weapon-of-mass- construction.html.

33.     For their part, upon information and belief, both Getty and Corbis were fully aware of the true authorship of the Works when they were provided to them by Psihoyos. Getty's "Creative Image # 56128098," for instance, goes as far as to paraphrase a caption that accompanies a photograph in the same National Geographic article as the one featuring the Works and prominently displaying Cooley's Copyright. Likewise, but with even more certainty, Corbis refers to the subject matter of its "stock photo ID: AAMK001029" as a "Model of Therizinosaur Embryo in Egg by artist Brian Cooley." *See* Ex. 2 hereto.

34.     Yet, neither Getty nor Corbis have made any effort to obtain proper authorization from Plaintiff in order to display and distribute copies of the Works on their websites.

35.     As for SuperStock: the defendant's website offers three images of the Works (two images of *Therizinosaur* sculpture (Nos. 4102-2034 and 4102-2035) and one image of the *Segnosaur Embryo* sculpture (No. 4102-2046)) pursuant to the terms and conditions of SuperStock's "Rights Managed License." *See* Ex. 2. The "license" states, among other things, that "[i]f any Image is used in an editorial manner, the credit line, "[Artist's Name]/SuperStock", must appear adjacent to the Image or as otherwise indicated by SuperStock."

36.     Yet, even beyond the Getty and Corbis misuse of the Plaintiffs' Works, SuperStock actually credits itself and a third party with the copyrights to these reproductions of the Works. *See* Ex. 2.

## COUNT I
## COPYRIGHT INFRINGEMENT
(Against All Defendants)

37.     Plaintiff re-alleges and incorporates by this reference each and every allegation contained in each paragraph above as if fully set forth herein.

38.     The Copyright Act confers upon copyright owners—such as the Plaintiffs—"the exclusive right to do and to authorize," *inter alia*, "(1) to reproduce the copyrighted work in copies … ; (2) to prepare derivative works based upon the

copyrighted work; (3) to distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership...." 17 U.S.C. § 106 (1)–(3). And derivative works are defined as "work[s] based upon one or more preexisting works, such as [an] . . . art reproduction . . . or any other form in which a work may be recast, transformed, or adapted." *See* 17 U.S.C. § 101.

39.     Psihoyos, at all relevant times, had knowledge of the fact that his photographs were derived from and would not have been possible without the Works. Yet, Psihoyos willfully disregarded the Plaintiff's rights by unlawfully creating derivative material and/or distributing copies of the Works to the public and/or the Clearinghouse Defendants.

40.     For their part, the Clearinghouse Defendants have publicly distributed and continue to distribute copies of the Works without the Plaintiffs' authorization, and in violation of the Plaintiff's exclusive rights of reproduction and distribution. Such actions by these defendants constitute infringement of Plaintiff's copyrights and exclusive rights under the Act.

41.     Likewise, whereas the Publisher Defendants had no license or other form of permission to copy, duplicate, or claim copyright ownership in or to the Works, they created unauthorized derivative works; specifically, the defendants copied, reproduced, used and distributed copies of the Works in the above-described publications (*i.e.*, the Books), all in violation of 17 U.S.C. § 106.

42.     As a direct and proximate result of all six of the Defendants' willful, wanton, and continued infringements of the Plaintiffs' copyrighted Works, the Plaintiff has suffered irreparable harm, in addition to financial damages, arising from the loss of credit, recognition, benefits and control over the manner in which the Works have been depicted, together with gains, profits and advantages derived from the Defendants' acts of infringement.

43.     Consequently, by reason of the foregoing, the Plaintiffs are entitled to the following relief: pursuant to 17 U.S.C. § 502, a preliminary and permanent injunction restraining the Defendants and each of their respective officers, agents, servants,

employees, representatives, and parent and subsidiary corporations from further infringement of the Plaintiffs' copyrighted Works; an order directing Defendants to deliver to the Plaintiffs or to destroy all unauthorized copies or reproductions of the Works and any means used to create or capable of creating the same, including the removal of all images of infringing material from websites of Clearinghouse Defendants and Publisher Defendants (pursuant to 17 U.S.C. § 503); an accounting and judgment against the Defendants; all profits received by each from the use, distribution or sale of the infringing material including derivative works thereof, including, but not limited to any published books or photographs (pursuant to 17 U.S.C. § 504(b)); all actual damages suffered by the Plaintiffs as a result of the Defendants' copyright infringement, as provided in 17 U.S.C. § 504(b); an award of all costs of this action together with reasonable attorneys' fees (pursuant to 17 U.S.C. § 505); such other further relief as the Court deems just, proper and equitable.

## COUNT II
## VIOLATIONS OF THE LANHAM ACT § 43(A); 15 U.S.C. § 1125(A)
(Against All Defendants)

44.     Plaintiffs re-allege and incorporate by this reference each and every allegation contained in each paragraph above as if fully set forth herein.

45.     15 U.S.C. § 1125 provides, in relevant part,

> (a) (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-- (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or  (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be

10

liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

46. Among other things, the Lanham Act may be used to prevent "the misappropriation of credit properly belonging to the original creator" of a work. *The Restatement of Unfair Competition* § 5. Where an originator of a misidentified product is involuntarily deprived of the advertising value of his name and of the goodwill that otherwise would stem from public knowledge of the true source of the product, he/she may claim that a violation of section 43(a) has occurred and that it will persist should his/her work remain in publication without his/her name.

47. For his part, by passing off, promoting and/or selling photographs of the Plaintiff's Works, defendant Psihoyos has misappropriated the efforts and goodwill of the Plaintiffs in interstate commerce within the purview and meaning of Section 43(a) of the Lanham Act.

48. By representing the Plaintiff's Works as either their own or the creation of Psihoyos, the Publishing and Clearing House Defendants have likewise falsely described goods and services in interstate commerce within the purview and meaning of Section 43(a) of the Lanham Act.

49. *The Restatement of Unfair Competition* recognizes the potential harm of the Defendants' conduct: "the misrepresentation may be likely to induce prospective purchasers to buy additional goods or services from the actor, resulting in a diversion of trade from the party seeking relief."

50. Here, the Defendants' individual and collective misconduct has and will continue to occasion consumer confusion: rather than Cooley, Psihoyos and/or the other Defendants and the writers and illustrators elsewhere credited in the Books and Websites containing reproductions of the Works will be perceived as the source and creators of the Works.

51. The Plaintiffs have been and will continue to be, harmed by Defendants' false designations of the Works and face irreparable injury should such conduct continue unabated. Accordingly, the Plaintiffs lack an adequate remedy at law.

52.     By reason of the foregoing, the Plaintiffs are entitled to recover damages in an amount to be determined at trial together with injunctive relief prohibiting the Defendants from making any further false representations concerning *their* ostensible goods and services.

## COUNT III
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
(Against Psihoyos and the Clearinghouse Defendants)

53.     Plaintiffs re-allege and incorporate by this reference each and every allegation contained in each paragraph above as if fully set forth herein.

54.     Psihoyos, at all relevant times, had knowledge of the fact that his photographs were derived from and would not have been possible without the Works. Yet, Psihoyos willfully disregarded the Plaintiffs' rights by unlawfully creating derivative material and/or distributing copies of the Works to the public and/or the Clearinghouse Defendants.

55.     For their part, the Clearinghouse Defendants have publicly distributed and continue to distribute copies of the Works without the Plaintiffs' authorization, and in violation of the Plaintiffs' exclusive rights of reproduction and distribution. Such actions by these defendants constitute infringement of Plaintiff's copyrights and exclusive rights under the Act.

56.     Because the Clearinghouse Defendants have publicly distributed and continue to distribute copies of the Works without the Plaintiffs' authorization, and in violation of the Plaintiff's exclusive rights of reproduction and distribution, Psihoyos is liable as a contributory copyright infringer for the infringing acts of the Clearinghouse Defendants. Psihoyos enables, induces, facilitates, and materially contributes to each act of infringement by the Clearinghouse Defendants.

57.     Psihoyos has actual and constructive knowledge that the Clearinghouse Defendants are copying and publicly displaying Plaintiffs' copyrighted Works.

58.     For their part, the Clearinghouse Defendants' "licensees," including, but not limited to the Publisher Defendants, have infringed and are infringing Plaintiffs'

rights in their registered copyrighted works by, *inter alia*, uploading infringing copies of Plaintiffs' copyrighted works and publicly displaying such infringing reproductions of the Works, all without the Plaintiffs' authorization. The Clearinghouse Defendants' licensees are therefore directly infringing Plaintiffs' exclusive rights of reproduction, and public display under 17 U.S.C. §§ 106(1), (4) and (5).

59.     The Clearinghouse Defendants' have actual and constructive knowledge that their licensees, including, but not limited to the Publisher Defendants are copying and publicly displaying Plaintiffs' copyrighted Works.

60.     Psihoyos and the Clearinghouse Defendants are liable as contributory copyright infringers for the infringing acts of their clients. The defendants enable, induce, facilitate, and materially contribute to each act of infringement.

61.     Acting with this actual and constructive knowledge, Defendants enable, facilitate, and materially contribute to their client's copyright infringement, which could not occur without Defendants' enablement.

62.     Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

63.     As a direct and proximate result of defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages plus Defendants' profits from infringement, as will be proven at trial.

64.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

65.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiffs' copyrights.

## COUNT IV
## VICARIOUS COPYRIGHT INFRINGEMENT
(Against Psihoyos and the Clearinghouse Defendants)

66.     Plaintiffs re-allege and incorporate by this reference each and every allegation contained in each paragraph above as if fully set forth herein.

67.     Psihoyos had both the right and the ability to supervise Clearinghouse Defendants infringing conduct, and to prevent them from infringing Plaintiffs' copyrighted Works. Psihoyos is vicariously liable for the infringing acts of the Clearinghouse Defendants.

68.     Upon information and belief, the Clearinghouse Defendants currently engages in practices to enforce content restrictions and protect the copyrighted works of its business partners, but withholds these same protections for the copyrights of persons, including Plaintiffs, who have not granted licenses to them.

69.     Clearinghouse Defendants significantly and directly benefits from the widespread infringement by their users. The availability of a vast collection of infringing copyrighted works on the Clearinghouse Defendants sites, including Plaintiffs' most popular works, acts as a substantial draw, attracting users to the website and increasing the amount of time they spend there once they visit. Clearinghouse Defendants derive substantial advertising revenue tied directly to the volume of traffic they are able to attract to their sites.

70.     The defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

71.     As a direct and proximate result of defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages plus Defendants' profits from infringement, as will be proven at trial.

14

72.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

73.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiffs' copyrights.

## COUNT V
## VIOLATIONS OF NEW YORK UNFAIR COMPETITION LAW
(Against All Defendants)

53.     Whereas the standard for finding of unfair competition under New York common law is substantially the same as that applied under § 43(a) of the Lanham Act, for the reasons set forth above, Defendants engaged in unfair competition in violation of New York law. As such Plaintiffs are entitled to recover damages in the amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff respectfully pray that this Court enter a judgment against the Defendants, jointly and severally as follows:

> A.     On Count I, pursuant to 17 U.S.C. § 502, a preliminary and permanent injunction restraining the Defendants and each of their respective officers, agents, servants, employees, representatives, and parent and subsidiary corporations from further infringement of the Plaintiffs' Copyrighted Works; an order directing the Defendants and each of them to deliver to the Plaintiff or to destroy all unauthorized copies of the Copyrighted Works and any means used to create or capable of creating the same including the removal of all images of infringing material from websites of the Clearinghouse Defendants and Publisher Defendants (pursuant to 17 U.S.C. § 503); an accounting and judgment against the Defendants; all profits received by each from the use, distribution or sale of the infringing material including derivative works thereof, including, but not limited to any published books or photographs

(pursuant to 17 U.S.C. § 504(b)); all actual damages suffered by the Plaintiffs as a result of the Defendants' copyright infringement, as provided in 17 U.S.C. § 504(b); an award of all costs of this action together with reasonable attorneys' fees (pursuant to 17 U.S.C. § 505); such other further relief as the Court deems just, proper and equitable;

B.      On Counts II and V, damages in an amount to be determined at trial together with injunctive relief prohibiting the Defendants from making any further such false representations concerning their ostensive goods and services;

C.      On Count III and IV, Plaintiffs demand their actual damages plus Defendants' profits from infringement, as will be proven at trial, their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and a preliminary and permanent injunction pursuant to 17 U.S.C. § 502 preventing further infringement of Plaintiffs' copyrights; and

D.      On all Counts, applicable interest and such other relief the Court deems just and proper.


## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs hereby demand a trial by jury.

New York, New York
December 21, 2011

**SAM P. ISRAEL, P.C.**

By:     S/: Sam P. Israel

Sam P. Israel, Esq. (SPI 0270)
1 Liberty Plaza – Twenty Third Floor
New York, New York 10006
T:(212)201-5345;F:(212)201-5343;E:SMIsrael@aol.com

*Attorney for Plaintiffs Brian Cooley and Cooley & Co. Ltd.*