UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN COOLEY and COOLEY & CO. LTD.

                    Plaintiffs,

**Index No. 12-CV-0001**

    -against-

PENGUIN GROUP (USA) INC., DK PUBLISHING,
INC. an affiliate of PENGUIN GROUP (USA) INC.,
DORLING KINDERSLEY LIMITED. an affiliate of
PENGUIN GROUP (USA) INC., GETTY IMAGES,
INC., CORBIS CORPORATION, RGB VENTURES
LLC D/B/A SUPERSTOCK and LOUIS PSIHOYOS,

                  Defendants.

# MEMORANDUM OF LAW
## IN SUPPORT OF THE PLAINTIFFS' MOTION
## FOR A TEMPORARY RESTRAINING ORDER
## AND A PRELIMINARY INJUNCTION

Respectfully submitted,

**SAM P. ISRAEL, P.C.**

Sam P. Israel, Esq. (SPI0270)
1 Liberty Plaza – 23rd Fl.
New York, NY 10006
Tel: 212-201-5345
Fax: 212-201-5343

*Attorneys for Plaintiffs,*
*Brian Cooley and Cooley & Co. Ltd.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

I. PRELIMINARY STATEMENT .......................................................................1

II. THE FACTS ...................................................................................................1

III. ARGUMENT .................................................................................................3

    A. PLAINTIFFS HAVE MET THE STANDARD FOR INJUNCTIVE RELIEF .....................3

        1. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS: THE BOOKS AND WEBSITES INFRINGE PLAINTIFFS' COPYRIGHTS AND THE DEFENDANTS HAVE VIOLATED THE LANHAM ACT .........................................4

            A. THE CLAIMS FOR COPYRIGHT INFRINGEMENT .................................................4

                i. Plaintiffs' Ownership of the Copyrights in the Works ...............................5

                ii. Defendants' Infringements: The Defendants Copied or Created Unauthorized Derivative Material from Plaintiffs' Copyrighted Works .........................................5

                iii. Defendants' Knowing and Continuing Misconduct . ..................................8

            B. THE ELEMENTS OF A LANHAM ACT (15 U.S.C. § 1125) CLAIM.................9

                i. False Designation of Origin ........................................................................9

                ii. Consumer Confusion ...............................................................................10

                iii. Harm to the Plaintiffs Arising out of Defendants' Misrepresentations ...............10

        2. PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ABSENT RELIEF..........11

        3. THE BALANCE OF HARDSHIPS FAVORS PLAINTIFFS ...................................14

IV. CONCLUSION ...........................................................................................16

# TABLE OF AUTHORITIES

## Cases

*ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60 (2d Cir. 1996) ...........................11, 14

*Apple Computer Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3d Cir. 1983) ....................15

*Beeba's Creations, Inc. v. Details Sportswear, Inc.*, 1994 WL 268241 (S.D.N.Y. June 15, 1994) ..............................................................................................................................................4, 6

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ..........................................................12

*Castle Rock Entm't, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132 (2d Cir. 1998).....................12

*Central Point Software, Inc. v. Global Software & Accessories, Inc.*, 880 F.Supp. 957 (E.D.N.Y. 1995) ..............................................................................................................................................8

*Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600 (1st Cir. 1988).........................15

*Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir. 1980) ........................................7

*Feist Publications, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340 (1991) .............................4, 5

*Folio Impressions, Inc. v. Byer California*, 937 F.2d 759 (2d Cir. 1991) ..................................4, 5

*Gaste v. Kaiserman*, 863 F.2d 1061 (2d Cir. 1988)...................................................................6, 8

*Hasbro Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70 (2d Cir. 1988) ...................................................11

*Ideal Toy Corp. v. Fab–Lu Ltd.*, 360 F.2d 1021 (2d Cir. 1966) ....................................................6

*Interactive Edge v. Martise*, 1998 U.S. Dist. LEXIS 801 (S.D.N.Y. Jan. 28, 1998) ....................3

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995) ....................................................................6, 8

*Lumen Inc. v. Highsmith*, 919 F. Supp. 624 (E.D.N.Y. 1996)........................................................3

*Malden Mills, Inc. v. Regency Mills, Inc.*, 626 F.2d 1112 (2d Cir. 1980) ...................................6

*Merkos L'Inyonei Chinuch, Inc. v. John Does Nos. 1-25*, 172 F.Supp.2d 383 (E.D.N.Y. 2011) ............................................................................................................................................13

*My-TFine Corp. v. Samuels*, 69 F.2d 76 (2d Cir. 1934)...........................................................14

*National Football League v. McBee & Bruno's, Inc.*, 792 F.2d 726 (8th Cir. 1986) .................12

*Natsource LLC v. Paribello*, 151 F. Supp. 2d 465 (S.D.N.Y. 2001)..............................................3

*New Line Cinema v. Bertlesman Music Group, Inc.*, 693 F. Supp. 1517 (S.D.N.Y. 1988)........14

*Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090 (2d Cir. 1977).................................4

*Paramount Pictures Corp. v. Carol Pub. Group*, 11 F. Supp. 2d 329 (S.D.N.Y. 1998) .............12

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487 (2d Cir.1960) .............................6

*Psihoyos v. Apple, Inc.*, Index No. 09 Civ. 7315 (S.D.N.Y. Aug. 1, 2009) ...............................16

*Psihoyos v. John Wiley & Sons, Inc.*, 2011 U.S. Dist. LEXIS 137847 (S.D.N.Y. Nov. 21, 2011) ...........................................................................................................................................15

*Rogers v. Koons*, 751 F. Supp. 474 (S.D.N.Y. 1990) ...................................................................7

*Roy Export Co. Establishment of Vaduz, Liechtenstein, Black Inc., A.G. v. Columbia Broad. Sys. Inc.*, 503 F. Supp. 1137 (S.D.N.Y. 1980) ...................................................................................12

*SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp.2d 301 (S.D.N.Y. 2000).......................4

*Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77 (2d Cir. 2004)..............................................12

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ..................................12

*Twin Peaks Productions, Inc. v. Publications Int'l*, 778 F.Supp. 1247 (S.D.N.Y. 1991) .......6, 12

*Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120 (2d Cir. 1989)................................3

*Waldman Publishing Corp. v. Landoll, Inc.*, 43 F.3d 775 (2d Cir. 1994) .........................9, 10, 11

*Weissmann v. Freeman*, 868 F.2d 1313 (2d Cir. 1989) ................................................................4


**Statutes, Rules**

15 U.S.C. § 1125 (2006) .........................................................................................................8, 10

17 U.S.C. § 101 (2006)........................................................................................................2, 3, 6

17 U.S.C. § 102 (2006)...............................................................................................................5

17 U.S.C. § 103 (2006)...............................................................................................................6

17 U.S.C. § 106 (2006)...............................................................................................................4

17 U.S.C. § 501 (2006)...............................................................................................................4

17 U.S.C. § 502 (2006)...............................................................................................................4

17 U.S.C. § 504 (2006)...............................................................................................................8


**Misc**.

M. Nimmer & D. Nimmer, Copyright (1990)...............................................................5, 7, 12

Restatement (Third) of Unfair Competition (1995) .........................................................8, 10

Plaintiffs Brian Cooley ("**Cooley**") and Cooley & Co. Ltd. ("**Cooley & Co.**") (collectively, "**Plaintiffs**," each individually a "**Plaintiff**"), hereby submit this memorandum of law, together with the declarations of counsel, Sam P. Israel (the "**Israel Decl.**") and Plaintiff Cooley (the "**Cooley Decl.**"), in support of their Motion (the "**Motion**") to preliminarily enjoin defendants Penguin Group (USA) Inc., DK Publishing, Inc., Dorling Kindersley Limited (collectively, the "**Publishing Defendants**"), Getty Images, Inc. ("**Getty**"), Corbis Corporation ("**Corbis**"), RGB Ventures LLC d/b/a SuperStock ("**SuperStock**") (collectively, the "**Clearinghouse Defendants**"), and; photographer Louis Psihoyos ("**Psihoyos**") (altogether, the "**Defendants**") from the continued reproduction, publication and sale of unlawful copies of the Plaintiffs' copyrighted sculptures.

## I.  PRELIMINARY STATEMENT

As alleged in the accompanying complaint (the "**Complaint**"), a photographer, four photography clearance corporations and a publishing conglomerate have distributed and continue to distribute unauthorized copies of Plaintiff's works through distinct channels of distribution, individually and in tandem violating the Plaintiff's exclusive rights under the United States Copyright Act, and in violation of the Lanham Act and New York law concerning unfair competition. Faced with the dire consequences of this misconduct the Plaintiffs seek to have the Defendants' ongoing misconduct enjoined and the threatened irreparable injury abated.

## II.     THE FACTS

The Court is respectfully referred to the accompanying Complaint and declarations by the Plaintiffs and their counsel for a full statement of the relevant facts and attendant evidentiary submissions.

By way of summary, Plaintiff Cooley is a preeminent dinosaur sculptor who alleges that he and his company (to which he assigned underlying rights) are the

creators and owners of the copyrights in two signature dinosaur models, one entitled "Therizinosaur", the other "Segnosaur Embryo" (hereinafter the "**Works**"), each registered under the Copyright Act of 1976 § 101, *et seq.*, as amended. Compl. ¶ 14; Cooley Decl. ¶¶ 2–3, Ex. 1 thereto.

Cooley has recently come to learn that DK Publishing, Inc. and its affiliate Dorling Kindersley Limited—both subsidiaries of Penguin Group (USA) Inc.—are publishing and distributing three children's books that prominently feature unauthorized and un-credited reproductions of the Works. *See* Compl. ¶ 16. The Plaintiff's Segnosaur Embryo sculpture appears on the front covers of "*Dinosaurs: A Visual Encyclopedia*" (DK Publishing, Inc. 2011) and "*Dinosaurs: A Children's Encyclopedia*" (Dorling Kindersley Limited 2011) (as well as on page 195 of the latter publication). The Therizinosaur sculpture appears further on page 31 of these defendants' "*Ask a Dinosaur*" (DK Publishing, Inc. 2011) publication. *See* Compl. ¶ 16, Ex. 1 thereto. Cooley Decl. ¶ 3. (These three publications are collectively referred to herein as the "**Books**".)

By means of an ensuing investigation Cooley has discovered that several websites offer stock photography and illustrations of the Works for licensing and/or distribution (among other things), by and through the unauthorized display of copies of the Works and that they do so not only without the Plaintiffs' permission but also without accreditation. These websites include Getty Images, Inc., Corbis Corporation, and RGB Ventures LLC d/b/a SuperStock. Compl. ¶¶ 24, 33–36, Ex. 2 thereto.

Photographer Louie Psihoyos—is named as an additional defendant by reason of his dissemination of the Works to the Clearinghouse Defendants and their ensuing distributions of the Works to, among others, the Publisher Defendants. As is further alleged, Psihoyos went so far as to register his photographic reproductions of the Works with the United States Copyright Office, neglecting to recognize the Plaintiff's underlying original works of authorship. Compl. ¶¶ 29–30; Cooley Decl. ¶¶ 5–6.

More thoroughly detailed in the accompanying Complaint and declarations are the ways in which the Defendants' misconduct has revealed itself to be willful and that

should it persist, the Plaintiffs will suffer irreparable injury in the form of lost accreditations, recognition, benefits and control over the manner in which the Works are depicted. Compl. ¶¶ 18–23; Cooley Decl. ¶¶ 7–9. The Plaintiffs seek to arrest the unlawful reproduction and sales of copies of their world renowned copyrighted sculptures under the rights and protections afforded them under the Copyright Act of 1976 § 101, *et seq.*, as amended, ("**Copyright Act**"), and to prohibit the continued display of the Works without appropriate accreditation—conduct plainly barred by § 43(a) of the Lanham Act. Compl. ¶¶ 45–51.

# III.   ARGUMENT

## A. PLAINTIFFS HAVE MET THE STANDARD FOR INJUNCTIVE RELIEF

Courts in the Second Circuit have repeatedly required the following showing before issuing a preliminary injunction:

> (a) a threat of irreparable harm, and (b) either (i) likelihood of success on the merits, or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting relief.

*See, e.g., Lumen Inc. v. Highsmith,* 919 F. Supp. 624, 627 (E.D.N.Y. 1996) (*citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979)); *see also Natsource LLC v. Paribello*, 151 F. Supp. 2d 465 (S.D.N.Y. 2001). For the reasons set forth herein and in the accompanying declarations, Plaintiffs ably meet this standard.

In addition to an injunction—and pending the Court's ruling on the Plaintiffs' Motion, a temporary restraining order is urgently needed to maintain the *status quo* for so long as is necessary to hold a hearing. *See Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1124 (2d Cir. 1989) (holding that a court could issue a temporary restraining order without notice in order to preserve *status quo* and prevent irreparable harm for so long as is necessary to hold a hearing); *See also Interactive Edge v. Martise*, 1998 U.S. Dist. LEXIS 801 (S.D.N.Y. Jan. 28, 1998). Only swift action—pending a full hearing on the Plaintiffs' application for preliminary injunctive relief—will arrest the

impact of the Defendants' misconduct and foreclose the prospect of a mere pyrrhic victory at a later date.

**1.** **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS: THE BOOKS AND WEBSITES INFRINGE PLAINTIFFS' COPYRIGHTS AND THE DEFENDANTS HAVE VIOLATED THE LANHAM ACT**

**A.** **THE CLAIMS FOR COPYRIGHT INFRINGEMENT**

Section 502(a) of the Copyright Act authorizes a "grant [of] temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a) (2006). To establish a *prima facie* case for copyright infringement, plaintiff must demonstrate: "(1) ownership of [the] copyright and (2) copying of the constituent elements by the defendant." *Feist Publications, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991); *Weissmann v. Freeman*, 868 F.2d 1313 (2d Cir. 1989), *cert. denied*, 493 U.S. 883 (1989); *Beeba's Creations, Inc. v. Details Sportswear, Inc.*, 1994 WL 268241 (S.D.N.Y. June 15, 1994) (*citing Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 765 (2d Cir. 1991)); *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp.2d 301, 305 (S.D.N.Y. 2000).[1]

Plaintiffs can easily establish a *prima facie* copyright infringement based on: (1) ownership of a valid, existing copyright; and (2) the Defendants' unauthorized and exact reproductions of their copyrighted materials. *See Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir. 1977).

---

[1] The Copyright Act confers upon copyright owners—such as the Plaintiffs—"the exclusive right to do and to authorize," *inter alia*, "(1) to reproduce the copyrighted work in copies … ; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies … of the copyrighted work to the public by sale or other transfer of ownership…." 17 U.S.C. § 106 (1)–(3) (2006). While the Copyright Act does not define "infringement," it states that "anyone who violates one of the exclusive rights of the copyright owner … is an infringer of copyright." 17 U.S.C. § 501(a) (2006), as amended; *SHL Imaging, Inc. v. Artisan house, Inc.*, 117 F.Supp.2d 301 (S.D.N.Y. 2000).

###### i.    <u>Plaintiffs' Ownership of the Copyrights in the Works</u>

Analysis of whether a work qualifies for copyright protection turns upon whether the work is "an original work of authorship fixed in any tangible medium of expression." 17 U.S.C.A. § 102(a) (2006); *Feist Publications, Inc.*, 499 U.S. at 345. In this vein, "original" means "only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. *Id.* (*quoting* M. Nimmer & D. Nimmer ("Nimmer"), Copyright §§ 2.01[A], [B] (1990)). Whereas "originality" is a statutory and constitutional requirement of copyright, the burden of proof is very low and even a "modicum of intellectual labor ... clearly constitutes an essential constitutional element." *Feist Publications, Inc.*, 499 U.S. at 340, Nimmer, §§ 1.06, 1.08.

Here, the individual Plaintiff is an internationally-renowned, prize-winning sculptor of prehistoric life. *See* Cooley Decl. ¶¶ 1–2; Compl. ¶ 11. Using his imagination, paleontological knowledge, talent, judgment and skill, Cooley single-handedly created academically approved three dimensional renditions of dinosaur embryos as they likely would have existed just prior to hatching (the Works). *See* Cooley Decl. ¶ 3, Exs. 1 and 3 thereto; Compl. ¶ 14. Clearly, much more than "some minimal degree of creativity" went into creating such detailed and unique works of visual art. Accordingly, the Works comprise copyrightable subject matter: they are "original" works created by Cooley in a tangible medium of expression. Cooley is the rightful owner of the copyrights in the Works and he has assigned the underlying commercial rights to his company, Plaintiff Cooley & Co., Ltd. *See* Cooley Decl. ¶ 3, Exs. 1 and 2 thereto.

###### ii.    <u>Defendants' Infringements: The Defendants Copied or Created Unauthorized Derivative Material from Plaintiffs' Copyrighted Works</u>

A *prima facie* case for copyright infringement requires proof that the Defendants copied the constituent elements of the Works. *See Feist Publications, Inc.*, 499 U.S. at 361. Copying may be inferred when it is shown that (1) substantial similarity exists as to the protected material and (2) defendant had access to the copyrighted works. *Folio*

*Impressions, Inc. v. Byer California,* 937 F.2d 759, 765 (2d Cir. 1991). "Substantial similarity" exists where "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Beeba's Creations, Inc.,* 1994 WL 268241 at *2; *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960); *accord Malden Mills, Inc. v. Regency Mills, Inc.,* 626 F.2d 1112, 1113 (2d Cir.1980); *Ideal Toy Corp. v. Fab–Lu Ltd.,* 360 F.2d 1021, 1022 (2d Cir. 1966).

First, with respect to defendant Psihoyos's photographs of the Works, copying is presumed inasmuch as the works are "so strikingly similar as to preclude the possibility of independent creation." *Lipton v. Nature Co.,* 71 F.3d 464, 471 (2d Cir. 1995); *Gaste v. Kaiserman,* 863 F.2d 1061, 1067-68 (2d Cir. 1988). In comparing Plaintiffs' Works with Psihoyos's photographs, the act of "copying" could not be more obvious. *Compare* Compl. Ex. 2 (showing Psihoyos' photographs as displayed on Clearinghouse Defendants' websites) *with* Cooley Decl. Ex. 1 (showing the copyrighted Works as featured in the National Geographic May 1996 issue) *and* Cooley Decl. Ex. 3 (showing Cooley's process of creating the Segnosaur Embryo). Even if defendant Psihoyos's photographs of the Works were found to be *derivative*[2] under 17 U.S.C. § 103, to be copyrightable derivative works must not be infringing. *See* 17 U.S.C. § 103(a) (2006) ("protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully"). Indeed, the protection of the copyright owner's rights extends beyond merely protecting against unauthorized copying but includes the right to make other versions of, perform, or exhibit the work. *Twin Peaks Productions, Inc. v. Publications Int'l,* 778 F.Supp. 1247, 1250 (S.D.N.Y. 1991), *rev'd on other grounds,* 996 F.2d 1366 (2d Cir. 1993) (*quoting Mirage Editions, Inc. v. Albuquerque A.R.T. Co.,* 856 F.2d 1341, 1343 (9th Cir. 1988)).

---

[2] Section 101 of the Act defines derivative works as "work[s] based upon one or more preexisting works, such as [an] . . . art reproduction . . . or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101 (2006).

In this regard, whereas the Books and the Clearinghouse Defendants' websites may contain an original *framework* for their presentation, inasmuch as such publications encompass the Plaintiff's preexisting copyrighted material (as to which they enjoy no entitlement or authorization), they do not qualify for copyright protection and infringe the Plaintiffs' copyrights in the Works. Apparently, Psihoyos provided the reproduced Works to Getty, Corbis and SuperStock, knowing that the images were to be made available for sale and/or licensing purposes to customers of these companies on their web pages and subsequent distributions. Compl. ¶ 25; Cooley Decl. ¶ 5. These defendants also failed to designate the Plaintiff as the Works' creator or otherwise provide attribution to Cooley. The aforesaid conduct by the Clearinghouse Defendants constitutes *prima facie* infringement of Plaintiffs' copyrights and exclusive rights under the Act.

Likewise, the contents of the Books which exhibit Cooley's Works are no more than reproductions of the true images of the Works and are therefore "substantially similar" to the actual Therizinosaur and Segnosaur Embryo sculptures. Because the Publisher Defendants' illustrations of Mr. Cooley's models in the Books are the exact images of the Works, these defendants could not have independently created the illustrations without Mr. Cooley's sculptures. Thus Publisher Defendants unlawfully copied the Works in violation of Plaintiffs' rights under the Copyright Act.

Again, it is of no consequence that the Works were produced in other mediums. *See Rogers v. Koons,* 751 F. Supp. 474, 478 (S.D.N.Y. 1990), *aff'd*, 960 F.2d 301 (2d Cir. 1992), *cert. denied*, 506 U.S. 934 (1992) (internal quotations omitted). Plaintiffs' rights under the copyright law extend to photographic reproductions. *See id*; Nimmer, § 2.08 [C] ("mere reproduction of work in a different medium should not constitute the originality required for copyright protection"); *see also Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905,913 (2d Cir. 1980) (emphasizing that, in looking at two works of art to determine whether they are substantially similar, focus is on the similarity of the *expression* of an idea).

With respect to the *access*: copying may be proved without showing of access to copyrighted work if the two works are "so strikingly similar as to preclude the possibility of independent creation." *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995); *Gaste*, 863 F.2 at 1067-68. As alleged herein and in the Complaint, the Works and Defendants' copies are so patently similar as to preclude any possibility that the copies could have been created without Cooley's Therizinosaur and Segnosaur Embryo sculptures. Compl. ¶¶ 25–26; *see also* Cooley Decl. ¶¶ 4–5.

### iii.    Defendants' Knowing and Continuing Misconduct

By letter to Publisher Defendants dated November 18, 2011, Plaintiffs demanded that the Publisher Defendants immediately cease and desist "all further publication and sale" of the Books. *See* Israel Decl. ¶ 4, Ex. 3 thereto. Yet, the defendants have persisted in their infringing conduct even after their receipt of the foregoing demand by continuing to publish, print, market and distribute the Books containing unauthorized and un-credited reproductions of the Works. *See, e.g.,* Israel Decl. ¶ 5, Ex. 4 thereto (showing a receipt confirming a December 9, 2011 purchase of "*Dinosaurs: A Visual Encyclopedia*" (DK Publishing, Inc. 2011), which contains infringing images of the Works). Thus, the Publisher Defendants' actions can only be viewed as knowing and willful within the meaning of section 504 of the Copyright Act. *See* 17 U.S.C. § 504(c) (2006); *Central Point Software, Inc. v. Global Software & Accessories, Inc.*, 880 F.Supp. 957 (E.D.N.Y. 1995) (holding that copyright infringement is willful "when it is done with knowledge that it is in violation of the owner's copyright or with 'reckless disregard' for copyright owner's rights").

For their part, Psihoyos and the Clearinghouse Defendants continue to knowingly distribute copies of the Works without Plaintiff's authorization and in violation of Plaintiff's exclusive copyright rights. Psihoyos' knowledge of his infringing conduct can be inferred from his false claim of authorship of the *content* embodied in his photographic images of Works, yet Psihoyos' unauthorized copying and distribution of copies of the Works continues unabated. In a similar vein, whereas the Clearinghouse Defendants had knowledge that an artist's copyright information must be displayed

under the images of copyrighted material hosted on their websites, these defendants failed to do so in violation of their own policies.

**B. <u>THE ELEMENTS OF A LANHAM ACT (15 U.S.C. § 1125) CLAIM</u>**

Copyrighted works are protected under § 43(a) of the Lanham Act, which confers liability in a civil action upon "[a]ny person who, on or in connection with any goods or services … uses in commerce … any false designation of origin … which is likely to cause confusion … as to the origin … of his or her goods…." 15 U.S.C. § 1125(a)(1) (2006); *Waldman Publishing Corp. v. Landoll, Inc.*, 43 F.3d 775 (2d Cir. 1994). In order to prevail on a claim under the Lanham Act, Plaintiffs must show that Defendants affixed a false designation of origin on its goods or services, used the false designation in commerce, that the false designation is likely to cause consumer confusion, and that Plaintiffs are likely to be damaged by such false designation. *Waldman Publishing Corp.*, 43 F.3d at 780.

**i. <u>False Designation of Origin</u>**

The determination of whether the Defendants' acts constitute a false designation of origin under § 43(a) depends on whether misrepresentations have been made as to the source of a product. One such case of false designation has been found in "reverse passing off," in which a seller sells someone else's product under seller's name, thus passing off the product as his own. *Id*; *see* Restatement (Third) of Unfair Competition § 5 (1995). The Lanham Act may be used to prevent the "misappropriation of credit properly belonging to the original creator." Restatement (Third) of Unfair Competition § 5. Such "misappropriation" is of the artistic talent required to create the work (that is, not of the skill required for publication or distribution). *Waldman Publishing Corp.*, 43 F.3d at 780 (noting that a claim of reverse passing off is separate and distinct from a claim of copyright infringement).

The Defendants have misrepresented the source of their products by "reverse passing off" reproductions of the Works which belong to the Plaintiffs under the Copyright Act. *See id* ("[a] second work can be said to have the same origin as the first if the second was copied from the first"). The Publisher Defendants' claim of copyright

with respect to the Books misleads the public as to the source of the images of the Works published in those Books. In a similar manner, Psihoyos's copyrighted photographs which appear on the Clearinghouse Defendants' websites conceal and misrepresent the true origin of the images. Because the products at issue—to wit, the Works—originated with Mr. Cooley and not the Defendants, consumers who purchase the Books or license infringing photographs are misled as to the origin of the goods offered by these Defendants. The aforementioned conduct clearly goes beyond pure copyright infringement. Defendants are profiting from holding themselves out as the true owners and creators of goods, which either derive from or outright duplicate Mr. Cooley's artistic talent. Such misrepresentation of origin is an outright exploitation of rights that belong to the true copyright holder—to wit, the Plaintiff.

## ii. <u>Consumer Confusion</u>

In the process of their efforts to pass off Plaintiffs' Works as their own, Defendants' conduct also caused consumer confusion. And consumers are likely to be confused by misrepresentations as to the source of the goods or services where those goods or services are "substantially similar" to the original works. *Waldman Publishing Corp.*, 43 F.3d at 784. As alleged above, each Defendants' allegedly infringing material is "substantially similar" to the Plaintiffs' Copyrighted Works and is therefore likely to cause consumer confusion. Moreover, by wrongfully copying and displaying images of Plaintiffs' Works to the public in the manner described above, Defendants also misrepresented a material characteristic of the product, to wit, a three-dimensional, one of a kind sculpture created by an internationally-renowned artist.

## iii. <u>Harm to the Plaintiffs Arising out of Defendants' Misrepresentations</u>

Defendants can hardly be permitted to continue to market, advertise and profit from misappropriated images of Plaintiffs' Works. Accordingly, Section 43(a) of the Lanham Act provides that a civil action may be brought by "any person who believes he or she is or is likely to be damaged by [a Lanham Act violation]." 15 U.S.C. § 1125(a). Where Plaintiffs show irreparable harm, a preliminary injunction will be granted.

*Waldman Publishing Corp.*, 43 F.3d at 785. As asserted above and in the Complaint, by distributing photographs of the Plaintiff's Works, defendant Psihoyos has misappropriated the efforts and goodwill of the Plaintiff in interstate commerce. Compl. ¶ 47. Furthermore, by representing the Plaintiff's Works as either their own or the creation of Psihoyos, the Publishing and Clearing House Defendants have likewise falsely described goods and services in interstate commerce within the purview and meaning of Section 43(a) of the Lanham Act. Compl. ¶ 48. Such misrepresentation will likely induce prospective purchasers to buy additional goods or services from the Defendants, resulting in a diversion of profits from the true author of the Works. *See* Restatement (Third) of Unfair Competition §5(c). Plaintiffs have been and will continue to be, harmed by Defendants' false designations of the Works and face irreparable injury should such conduct continue unabated. Therefore, Plaintiffs lack an adequate remedy at law and injunctive relief prohibiting Defendants from making any further such false representations should be granted.

## 2. PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ABSENT RELIEF

Courts have held that trademark or copyright infringement gives rise to a presumption of irreparable injury. *See, e.g., ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 66 (2d Cir. 1996) (emphasizing that a prima facie case of copyright infringement supports a presumption of irreparable harm); *Hasbro Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988) ("[i]n a Lanham Act case a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm...."). As Plaintiffs have clearly demonstrated a likelihood of success on the merits of their copyright and trademark infringement claims, irreparable injury may be presumed. Even beyond the presumption of injury in intellectual property cases, however, it is clear that Plaintiffs will suffer irreparable harm absent an injunction.

In their assessment of the propriety of injunctive relief courts consider "the current and potential market" for derivative works in addition to the primary market for the original work itself, as well as whether "unrestricted and widespread conduct of

the sort engaged in by the defendant ... would result in a substantially adverse impact on the potential market for the original." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 590 (1994) (citations omitted); *Roy Export Co. Establishment of Vaduz, Liechtenstein, Black Inc., A.G. v. Columbia Broad. Sys. Inc.,* 503 F. Supp. 1137, 1146 (S.D.N.Y. 1980) (value of author's exclusive right to make derivative work "would certainly seem to be diminished by the ability of another to use the copyrighted work in order to compete at will with the derivative work").

In the copyright infringement context, "some works are closer to the core of intended copyright protection than others," such that consideration is given to whether the copyrighted work is expressive or creative and whether the work is published. *Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.,* 150 F.3d 132, 143 (2d Cir. 1998). Here, the Works are clearly creative works entitled to the strongest protection, particularly where the secondary work is "at best minimally transformative." *Id.* at 144; *see also Twin Peaks,* 996 F.2d at 1376 (second factor "must favor a creative and fictional work, no matter how successful"); *Paramount Pictures Corp. v. Carol Pub. Group,* 11 F. Supp. 2d 329, 336 (S.D.N.Y. 1998) (resolving the factor in a single sentence because the determination was "straight forward").

From a marketing perspective, the Defendants are currently usurping commercial and other benefits of publication by using Plaintiffs' creative works without the slightest modification. Compl. ¶ 50; Cooley Decl. ¶¶ 7–9. An injunction is necessary to defeat what otherwise would be a forced license allowing for the use of Plaintiff's original Works without reciprocal obligation of any kind. *See, e.g., Silverstein v. Penguin Putnam, Inc.,* 368 F.3d 77 (2d Cir. 2004) (emphasizing that "injunction should be granted in copyright case if denial would amount to forced license to use creative work of another"); *National Football League v. McBee & Bruno's, Inc.,* 792 F.2d 726, 732 (8th Cir.1986); Nimmer, § 14.06[B]. Moreover, if the intended use of the copyright is for commercial gain, the likelihood of future harm is presumed. *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 451 (1984) (stating that "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly

12

privilege that belongs to the owner of the copyright"); *Merkos L'Inyonei Chinuch, Inc. v. John Does Nos. 1-25*, 172 F.Supp.2d 383, 387 (E.D.N.Y. 2011) (holding, "when a plaintiff has established a *prima facie* showing of copyright infringement, irreparable harm is presumed . . . because the confusion created in the marketplace will damage the copyright holder in incalculable and incurable ways").

Beyond unauthorized, the publication of copies of the Works was entirely without any accreditation. Although the Publisher Defendants undoubtedly recognized that someone must have created the sculptures, they not only neglected to credit Mr. Cooley for his work, but they credited no one. Other artists, listed as *model makers*, are credited for works elsewhere in the Books, but no one is given credit for the sculpture on the very cover of the Books. *See* Compl. ¶ 18. Again, this glaring omission cannot be attributed to mere error but was, by necessity, an exceptionally reckless, if not intentional, violation of the Plaintiff's rights and entitlement to recognition of authorship.

Inasmuch as the *Segnosaur Embryo* comprises the majority of the front cover of the Books and in that it has been or will be seen by tens of thousands of purchasers and potential purchasers of the Books, the Publisher Defendants have deprived the Plaintiff of the opportunity to have his name associated with this signature image of his work in the minds of tens, if not hundreds of thousands of viewers. Compl. ¶ 19.

Such accreditation is essential to the Plaintiff's business. Where not by referral by a former client, nearly all of Cooley's business is a result of the appearance of his name in association with an image or series of images in publications. As a result of his work appearing on the covers of three National Geographic magazine covers, for instance, clients in Canada, the U.S., Japan, Taiwan and Europe contracted Cooley to create works that were not only of ambitious scope and substantial prestige, but were highly remunerative. Compl ¶¶ 20–22; Cooley Decl. ¶ 8.

The value of contracts coming by way of referral is in the millions of dollars. In the case of the Books, Cooley has been not only denied such opportunities, but those opportunities have been afforded competing sculptors who are mentioned in the Books

and who profit by false association occasioned by the omission of Cooley's name. Compl. ¶ 21.

### 3. <u>THE BALANCE OF HARDSHIPS FAVORS PLAINTIFFS</u>

Because Plaintiffs have shown that they are likely to succeed on the merits, the Court need not consider whether the balance of hardships tips decidedly in favor of Plaintiffs. *See ABKCO Music,* 96 F.3d at 64. Nevertheless, Plaintiffs can satisfy this test as well. As set forth above, the continuation of the infringements would cause not just harm, but irreparable injury to Plaintiffs. *See New Line Cinema v. Bertlesman Music Group, Inc.,* 693 F. Supp. 1517, 1531 (S.D.N.Y. 1988) (balance of hardships favored copyright owner who offered evidence that the low-quality music video could dissuade an unspecified number of individuals from seeing its upcoming film).

In contrast, the only harm the Publishing and Clearinghouse Defendants would suffer if an injunction issued would be lost sales. For the Publisher Defendants, the Books are not even the only dinosaur books that they offer for sale (*See* Israel Decl. ¶2, Ex. 1 thereto; *see also* Browse DKBooks, DK.com, http://us.dk.com/ (last visited Dec. 19, 2011)), meaning that their prospective customer would likely purchase one of their other titles if the Books that would be enjoined from sale would not be available to consumers. [3]

But even if all of the Defendants had invested millions and the Books and websites comprised the entirety of their businesses, as Judge Hand made clear, injunctive relief would still be appropriate in light of the purposefulness of the infringing conduct. *See My-TFine Corp. v. Samuels,* 69 F.2d 76, 78 (2d Cir. 1934) (Hand, J.)

---

[3] For his part, Psihoyos funds his projects with healthy earnings from copyright infringement cases; he publicly admitted that in recent years he has "aggressively pursued copyright infringements and … made several million dollars on those cases," and that "statutory damages have been the lifeblood of … [his] career." http://www.photomediaonline.com/features-stories/person-of-the-year/item/270-louie-psihoyos-weapon-of-mass- construction. html. Psihoyos apparently has many other sources of revenues and it would be unfair for him to exploit the Act without subjecting himself to its strictures.

("advantages built upon a deliberately plagiarized makeup do not seem to us to give the borrower any standing to complain that his vested interests will be disturbed"); *see also Concrete Mach. Co. v. Classic Lawn Ornaments,* 843 F.2d 600, 612 (1st Cir. 1988) (internal quotations and citations omitted) ("[wlhere the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to he infringing, such an argument in defense merits little equitable consideration . . . . Such considerations apply even to a business which is exclusively based on an infringing activity and which would be virtually destroyed by a preliminary injunction."); *Apple Computer Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1255 (3d Cir. 1983), *cert. dismissed,* 464 U.S. 1033 (1984) (internal citations omitted).

Here, as is evidenced by the legal discussion of U.S. Copyright law on Penguin's website, at all relevant times the Publisher Defendants were aware that they needed approval not only from the photographer of the Works but of the creator of the model themselves before reproducing the Works in their Books; and since they took affirmative action to procure the photographer's approval, the failure to obtain clearance from the Plaintiff could only have been by design or as a consequence of aggravated recklessness. *See* Israel Decl. ¶ 3, Ex. 2 thereto.

Psihoyos not only failed to obtain authorization from the Plaintiffs with respect to the Works (and instead willfully disregarded the Plaintiff s' rights under the Copyright Act), he went so far as to register derivative photographic reproductions of the Works with the U.S. Copyright Office. Compl. ¶ 28–31. In filing for copyright registration of the photographs he had taken of the Plaintiff's Works, Psihoyos not only neglected to recognize the underlying  original works of authorship (as is plainly required under the Copyright Act), but he misrepresented to the U.S. Copyright Office that he is the *sole* author of the material he filed. Thus, Psihoyos was, at all times, fully aware of the implications of his conduct under the Copyright Act. (Indeed, Psihoyos has himself brought suit in this very Court on more than one occasion for the claimed infringement of certain of his own alleged copyrights. *See Psihoyos v. John Wiley & Sons,*

*Inc.*, 2011 U.S. Dist. LEXIS 137847 (S.D.N.Y. Nov. 21, 2011) and *Psihoyos v. Apple, Inc.,* Index no. 09 Civ. 7315 (S.D.N.Y. Aug. 1, 2009).

For their part, Getty, Corbis and SuperStock were fully aware of the true authorship of the Works when they were provided to them by Psihoyos. Getty's "Creative Image # 56128098," for instance, goes as far as to paraphrase a caption that accompanies a photograph in the same National Geographic article as the one featuring the Works and prominently displaying Cooley's Copyright. Likewise, but with even more certainty, Corbis refers to the subject matter of its "stock photo ID: AAMK001029" as a "Model of Therizinosaur Embryo in Egg by artist Brian Cooley." Even beyond the Getty and Corbis misuse of the Plaintiffs' Works, SuperStock actually credits itself and a third party with the copyrights to these reproductions of the Works. *See* Compl. ¶¶33–35, Ex. 2 thereto.

Whereas here there have been evinced likely violations of the Copyright and Lanham Acts; a threat of continuing violations coupled with a threat of irreparable injury, and it has been shown that less harm to the Defendants would result from a grant of the requested relief a preliminary injunction (and temporary restraining order pending a hearing), compared with that which is faced by the Plaintiffs in its absence, the Court should issue the requested relief.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court grant the Plaintiffs' request for preliminary injunction and other relief, along with whatever further relief that the Court deems just and proper.

Dated: New York, NY
December 21, 2011

Respectfully Submitted:
**Sam P. Israel, P.C.**

By: S/

Sam P. Israel, Esq. (SPI0270)
1 Liberty Plaza – Twenty Third Floor
New York, NY 10006
Tel: 212-201-5345; Fax: 212-201-5343
Email: SMIsrael@aol.com

*Attorney for Brian Cooley and Cooley & Co. Ltd
Plaintiffs*

17