UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------- x

BRIAN COOLEY, and COOLEY & CO. LTD.,

                Plaintiffs,

      - against -

PENGUIN GROUP (USA) INC., DK
PUBLISHING, INC. an affiliate of PENGUIN
GROUP (USA) INC., DORLING
KINDERSLEY LIMITED, an affiliate of
PENGUIN GROUP (USA) INC., GETTY
IMAGES, INC., CORBIS CORPORATION,
RGB VENTURES LLC D/B/A SUPERSTOCK,
and LOUIS PSIHOYOS,

                Defendants.

------------------------------------------------------------- x

Index No. 12 CIV 0001 (LAK)

**EFC CASE**

## GETTY IMAGES (US), INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Linda Steinman
Deborah Adler
DAVIS WRIGHT TREMAINE LLP
1633 Broadway – 27th Floor
New York, NY 10019
Phone: 212-489-8230
Fax: 212-489-8340
lindasteinman@dwt.com

*Attorneys for Defendant Getty Images (US), Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................... 3

ARGUMENT .................................................................................................................................. 5

    A.    PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION ON THEIR COPYRIGHT INFRINGEMENT CLAIMS .............. 5

        1.    No Probability of Success on the Merits....................................................... 6

        2.    No Irreparable Harm ..................................................................................... 7

        3.    The Balance of Hardships Favors Defendants............................................. 8

        4.    The Public Interest Weighs Against An Injunction .................................... 9

    B.    PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION ON THEIR LANHAM ACT CLAIM, WHICH IS INVALID AS A MATTER OF LAW .............................................................................. 10

    C.    PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION ON THEIR NEW YORK UNFAIR COMPETITION LAW CLAIM, WHICH IS INVALID AS A MATTER OF LAW .................... 13

    D.    PLAINTIFFS' REQUEST ON THEIR PRELIMINARY INJUNCTION MOTION FOR "DESTRUCTION" OF ALL UNAUTHORIZED COPIES OF THE WORK IS IMPROPER ................................................................... 13

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AFP v. Morel*,
  769 F.Supp.2d 295 (S.D.N.Y. 2011) .................................................................................12

*Belushi v. Woodward*,
  598 F. Supp. 36 (D. Col. 1984) ............................................................................................9

*Berlent v. Focus Features, LLC*,
  No. 06 Civ. 2834, 2006 U.S. Dist. LEXIS 41095 (S.D.N.Y. June 8, 2006) ........................8

*Campbell v. Acuff-Rose*,
  510 U.S. 569, 114 S. Ct. 1164 (1994) ..................................................................................8

*Clonus Assoc. v. Dreamworks, LLC*,
  417 F. Supp. 2d 248 (S.D.N.Y. 2005) ..................................................................................8

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23, 123 S. Ct. 2041 (2003) ........................................................................3, 10, 11

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388, 126 S. Ct. 1837 (2006) ............................................................................5, 10

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*,
  713 F.Supp. 2d 215 (S.D.N.Y. 2009) .................................................................................11

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt. Inc.*,
  443 F.2d 1159 (2d Cir. 1971) ...............................................................................................7

*Hanson Trust PLC v. SCM Corp.*,
  774 F.2d 47 (2d Cir. 1985) ...................................................................................................2

*Marcy Playground, Inc. v. Capital Records, Inc.*,
  6 F. Supp. 2d 277 (S.D.N.Y. 1998) (Kaplan, J.) ..........................................................7, 8, 9

*New Era Pubs. Int'l., ApS v. Henry Holt and Company, Inc.*,
  873 F.2d 576 (2d Cir. 1989) .................................................................................................9

*Rosemont Enterprises, Inc. v. Random House, Inc.*,
  366 F.2d 303 (2d Cir. 1966) .................................................................................................9

*Salinger v. Colting*,
  607 F.3d 68 (2d Cir. 2010) .......................................................................................2, 5, 10

*Shapiro, Bernstein & Co. v. H.L. Green Co.*,
  316 F.2d 304 (2d Cir. 1963) .................................................................................................7

DWT 18839757v1 0053349-000088

*Twentieth Century Fox Film Corp. v. Marvel Enters, Inc.*,
   277 F.3d 253 (2d Cir. 2002) ............................................................................................. 7

*UMG Recordings, Inc. v. Veoh Networks Inc.*,
   665 F. Supp. 2d 1099 (C.D. Cal. 2008) ........................................................................... 6

*Winter v. National Resources Defense Council, Inc.*,
   555 U.S. 7, 129 S. Ct. 365 (2008) .................................................................................... 5

*Wolk v. Kodak Imaging Network, Inc.*,
   No. 10 Civ. 4135(RWS), 2011 WL 940056 (S.D.N.Y. Mar. 17, 2011) ........................... 6

**STATUTES**

15 U.S.C. § 1125(a)(1) ............................................................................................................ 10

17 U.S.C. § 512 ......................................................................................................................... 6

**OTHER AUTHORITIES**

*Nimmer on Copyright*, § 1.01[D][2] ...................................................................................... 11

## PRELIMINARY STATEMENT

This brief is submitted on behalf of defendant Getty Images (US), Inc. ("Getty Images"), in opposition to plaintiffs' motion for a preliminary injunction and temporary restraining order.[1]

Plaintiffs Brian Cooley, a sculptor of dinosaur egg models, and Cooley & Co., Ltd., the alleged assignee of Cooley's copyrights, claim copyright ownership in two works: "Segnosaur Embryo" ("Segnosaur Embryo") and Therizinosaur ("Therizinosaur") (collectively the "Works"). Plaintiffs claim that Louis Psihoyos ("Psihoyos") took unauthorized photographs of these two Works (the "Photographs"), which allegedly infringe plaintiffs' underlying copyright in the models. Psihoyos is represented by the photo agency Visions of Tomorrow d/b/a Science Faction, who in turn entered into a "Rights Managed Distribution Agreement" with Getty Images. Getty Images licensed the allegedly infringing Therizinosaur photograph to Dorling Kindersley ("DK") for use in the interior of *Ask A Dinosaur*. Although Science Faction also may have granted Getty Images a non-exclusive license to distribute Psihoyos's photograph of plaintiffs' Segnosaur Embryo, Getty Images was not the source of this photograph for DK's books titled *Dinosaurs: A Visual Encyclopedia* and *Dinosaurs: A Children's Encyclopedia.*

Contrary to plaintiffs' allegations, Getty Images had no knowledge of any infringement of plaintiffs' Works in the Photographs. In the Rights Managed Distribution Agreement, Science Faction warrants that its products do not infringe on any third party copyright or other proprietary rights. Getty Images relied in good faith upon that representation in its offering of the Photographs for license. Moreover, although the Photographs were first made available through Getty Images as early as 2005, plaintiffs never contacted Getty Images to allege

---

[1] The complaint improperly names Getty Images, Inc. as the defendant. Getty Images (US), Inc. is the licensing entity for the photographs at issue, and therefore the proper defendant.

infringement at any time prior to filing suit. Getty Images removed the Photographs from its website on the very date that it was served with the Complaint.

Rather than await a considered determination of the complex issues in this case, plaintiffs rush to this Court for a preliminary injunction. A preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies," *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985), and should not be routinely granted. *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010), quoting *Winter v. National Resources Defense Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 376-77 (2008). The injunction sought here is both unclear and broad-sweeping. In addition to seeking to enjoin further distribution of the specific DK books at issue, plaintiffs (a) seek to enjoin all defendants, including Getty Images, from "the publication, advertisement, shipment and/or sales of copies (and/or books or other materials containing copies)" of the Works; (b) seek to enjoin all defendants from making representations concerning the ownership of the copyrights in the Works; and (c) seek an injunction requiring that all of the defendants, including Getty Images, destroy all images of the Works on their websites.

As set forth herein, plaintiffs do not remotely meet the demanding standards necessary to obtain a preliminary injunction. First and foremost, there is no irreparable harm here. As is evident from plaintiffs' papers, their only concern is an alleged loss of profits – namely license fees and "millions of dollars" in supposedly anticipated referrals. *See* Memorandum of Law in Support of the Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction ("Plaintiffs' Brief"), p. 13. Second, for the reasons set forth in Penguin's Memorandum of Law in Opposition to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunctions ("Penguin's Brief") and the accompanying affidavit of Yuki Hirose, both incorporated by reference herein, various documents including an agreement between Brian

2

Cooley and National Geographic Society raise substantial doubts about plaintiffs' ownership and control of the rights necessary to support their claims. Further, plaintiffs' Lanham Act claim is barred by the U.S. Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.* Finally, whereas plaintiffs can readily be compensated in money damages in the event they prove liability, plaintiffs' vague and broad request that defendants be enjoined from publishing, advertising, shipping or selling any materials containing copies of the Works – even if Cooley's Works appear only in one small photograph on one page of a full-length book – threatens to be highly disruptive to the business plans of good faith actors.

## STATEMENT OF FACTS

The relevant facts are set forth in the Declaration of Heather Cameron ("Cameron Decl.") and briefly summarized below. Getty Images is a leading provider of digital media worldwide, creating and distributing a range of assets – from photography to video, music and multimedia. Cameron Decl. ¶ 2. In 2004, it entered into a "Rights Managed Distribution Agreement" (the "Distribution Agreement") with the photo agency Visions of Tomorrow d/b/a Science Faction ("Science Faction"). Science Faction represents Louis Psihoyos ("Psihoyos") and supplied Getty Images, pursuant to the Distribution Agreement, with the Psihoyos Photographs at issue in this action. On April 28, 2011, Getty Images licensed the allegedly infringing Therizinosaur photograph to DK for use in the interior of *Ask A Dinosaur*. *Id.* at ¶¶ 4, 5.

Getty Images relied upon Science Faction's representations and warranties regarding the Photographs. The Distribution Agreement provides that Science Faction's images do not infringe on or violate any copyright or other intellectual property or proprietary right of any Third Party. Cameron Decl. ¶ 7. Science Faction further warrants that the information it provides to Getty Images (US) about images will be "complete and accurate." That information includes captions and all releases associated with an image. Getty Images does not author the

3

captions for the images submitted by Science Faction. *Id.* at ¶ 8. In addition, Getty Images is obligated to "display the credit line as submitted" by Science Faction for images created by Psihoyos. *Id.* at ¶ 9.

Getty Images had no actual knowledge of any infringement, or knowledge of any claims of infringement, regarding the Photographs prior to plaintiffs' filing of the complaint on January 3, 2012. The Photographs were first supplied to Getty Images by Science Faction many years ago, namely in 2005, and plaintiffs never sent Getty Images any notice of infringement over the ensuing years. Likewise, plaintiffs' counsel did not provide Getty Images with any notice of plaintiffs' claims before commencing this action, and Penguin understandably did not contact Getty Images after receiving a letter from plaintiffs' counsel in November 2011 regarding the Segnosaur Embryo Photograph, licensed to DK by another party. Cameron Decl. ¶ 6.

Getty Images began investigating plaintiffs' claims on January 3, 2012, when it first learned that plaintiffs had filed a complaint, and before service of the complaint. As a sign of its good faith, Getty Images was already in the process of removing the Photographs from its website at the time it was served with the complaint on January 5, 2012. The Photographs were taken down from Getty Images' website on January 5, 2012. Getty Images will not enter into any new licenses of the Photographs until further clarification or resolution of this matter. Cameron Decl. ¶¶ 10, 11.

## ARGUMENT

### A. PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION ON THEIR COPYRIGHT INFRINGEMENT CLAIMS

Plaintiffs are not entitled to a preliminary injunction (or temporary restraining order) on their copyright infringement claims (Counts I, III and IV). In fact, as set forth in Penguin's Brief, plaintiffs have failed to discuss – or even cite – the governing standards for a preliminary injunction in the Second Circuit set forth in *Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010). These standards are in turn dictated by two recent U.S. Supreme Court rulings, namely *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365 (2008) and *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S. Ct. 1837 (2006).

Plaintiffs rely, instead, on the preliminary injunction standard abrogated by *Salinger*, *eBay* and *Winter*. As the *Salinger* court stated, 607 F.2d at 79: "This Court's pre-*eBay* standard for when preliminary injunctions may issue in copyright cases is inconsistent with the principles of equity set forth in *eBay* [and *Winter*]." In short, plaintiffs' brief is based entirely on preliminary injunction standards no longer controlling in this Court.

Under *Salinger*, 607 F.2d at 79-80, a plaintiff seeking a preliminary injunction must demonstrate, first, either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor. Second, a plaintiff must also demonstrate that he is "likely" to suffer irreparable injury in the absence of an injunction. The court must not adopt a "categorical" or "general" rule or "presume" that the plaintiff will suffer irreparable harm. Instead, irreparable harm must be proved, not presumed, and plaintiff must show that remedies available at law, such as monetary damages, are inadequate to compensate for the injury.

5

Further, as the U.S. Supreme Court emphasized in *Winter*, 555 U.S. at 22, 129 S. Ct. at 375-76, the "mere possibility" of irreparable injury will not satisfy plaintiff's burden; rather "injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Third, plaintiff must show that the balance of hardships between the plaintiff and the defendant tips in the plaintiffs favor. Fourth, plaintiff must establish that the public interest would not be disserved by the issuance of a preliminary injunction. Plaintiffs have not established any of these requirements.

### 1. No Probability of Success on the Merits

Plaintiffs have not shown a probability of success on the merits. First, as set forth in Penguin's brief, at the very least, the complicated licensing arrangements plaintiffs entered into with the National Geographic Society, and the NGS's licensing arrangements with Psihoyos, demonstrate issues of fact and contractual interpretation far too substantial to support the drastic relief of preliminary injunction.

Second, any copyright claims against Getty Images cannot survive since Getty Images qualifies for the "safe harbor" under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, and plaintiffs failed to send a takedown notice to Getty Images. *See UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F. Supp. 2d 1099, 1110 (C.D. Cal. 2008) (granting summary judgment where notices were insufficient under the DMCA safe harbor). Indeed, Getty Images, like defendant Photobucket.com in *Wolk v. Kodak Imaging Network, Inc.*, No. 10 Civ. 4135(RWS), 2011 WL 940056, at *4-5 (S.D.N.Y. Mar. 17, 2011), is an online service provider who displayed images supplied by a user and therefore is protected by the safe harbor, such that plaintiffs cannot show a likelihood of success on the merits of a copyright claim and should be denied a preliminary injunction. Moreover, as for the claims against Getty Images for contributory copyright infringement and vicarious copyright infringement, the accompanying

6

Declaration of Heather Cameron establishes that plaintiffs will be unable to prove the necessary elements of such claims. Among other reasons, Getty Images did not have knowledge of the allegedly infringing activity (*Gershwin Publ'g Corp. v. Columbia Artists Mgmt. Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)); nor did Getty Images enjoy the direct benefit from another's infringing activity. *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963).

### 2. No Irreparable Harm

Irreparable harm is the *sine qua non* of injunctive relief; without a showing of irreparable injury, a court may not issue an injunction. Here, plaintiffs have made no showing of irreparable harm. Instead, they rely heavily on the erstwhile "presumption" of irreparable harm, which is no longer good law. Plaintiffs' Brief, p. 11. Nor could plaintiffs show that any of the broad-sweeping uses they seek to enjoin in their order to show cause will create irreparable harm to plaintiffs' interests. Nothing in plaintiffs' motion papers, including Brian Cooley's declaration, suggests that plaintiffs have suffered or will suffer any harm that cannot be remedied by money damages. Instead, plaintiffs dwell on lost license fees and the speculative missed opportunities of referrals from those viewing Cooley's Works on DK's covers. *See, e.g.*, Cooley Decl. ¶ 8 (referring to his "opportunities to create works for clients ... generating million-dollar contracts"). *See Marcy Playground, Inc. v. Capital Records, Inc.*, 6 F. Supp. 2d 277, 282 (S.D.N.Y. 1998) (Kaplan, J.) (holding that alleged harm arising from record company's failure to provide attribution to plaintiffs in album liner notes was too speculative to qualify as irreparable injury). Further, although plaintiffs argue that there has been a "forced license" here, they do not identify any irreparable harm to plaintiffs from the inclusion of the Photographs in DK's highly reputable books, on Getty Images' website, or otherwise. "[W]hen a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why

7

the extraordinary equitable remedy of a preliminary injunction should be granted." *Twentieth Century Fox Film Corp. v. Marvel Enters, Inc.*, 277 F.3d 253, 258 (2d Cir. 2002) (quoting *Borey v. National Union Fire Insurance Co.*, 934 F.2d 30, 34 (2d Cir. 1991)).

Further, any theoretical harm to plaintiffs' Works from Getty Images' licensing of the Psihoyos Photographs has already occurred -- since the DK books were published several months ago and were on sale during the all-important holiday period -- so the grant of an injunction against continued distribution would not remedy it. Courts routinely deny applications for a preliminary injunction if the alleged injury has already taken place. *See, e.g., Clonus Assoc. v. Dreamworks, LLC*, 417 F. Supp. 2d 248, 254-55 (S.D.N.Y. 2005) (preliminary injunction inappropriate because alleged diminution in value of plaintiff's copyright and the damage to the reputation of its creators who have not received credit for their contribution already occurred since the allegedly infringing product was already on the market); *Marcy Playground*, 6 F. Supp. 2d at 280 ("a preliminary injunction here would be very much like locking the barn door after the horse is gone"); *Berlent v. Focus Features, LLC*, No. 06 Civ. 2834, 2006 U.S. Dist. LEXIS 41095, at *10 (S.D.N.Y. June 8, 2006) (irreparable harm presumption not applicable because any harm resulting from confusion between plaintiff's song and the music in defendants' movie was already created when the movie trailer, soundtrack and movie were released). *See also, Campbell v. Acuff-Rose*, 510 U.S. 569, 578 n. 10, 114 S. Ct. 1164, 1171, n. 10 (1994) (urging caution in granting injunctive relief when strong public interest is at stake and defendants' record was already released with approximately 250,000 copies sold).

### 3. The Balance of Hardships Favors Defendants

The balance of hardships between the parties tips decidedly in the defendants' favor. As stated above, plaintiffs can be made whole by money damages, if they prevail. On the other hand, DK and Getty Images each, in turn, secured in good faith what it believed were the

necessary rights to license or publish the Photographs. Plaintiffs' vague but sweeping request that defendants be enjoined from publishing, advertising, shipping or selling any materials containing any copies of the Works seeks to disrupt longstanding publication plans for already published materials.

Moreover, plaintiffs' Works are only a small portion of any books containing the licensed Photographs. Indeed, the Therizinosaur Photograph in *Ask A Dinosaur* is one small image in a full-length book chock full of facts and other images. As set forth in Penguin's Brief at p. 6, courts readily recognize that in such instances an order enjoining the publication or sales of all materials containing copies of the Works would be disproportionate to the harm. For example, in *Belushi v. Woodward*, 598 F. Supp. 36, 37 (D. Col. 1984), a case brought by the photographer of one photo in a book about John Belushi, the court denied a preliminary injunction, noting the disruption of defendants' "carefully orchestrated and costly plans for selling and marketing the book, costing them a substantial amount in lost sales", and recognizing that the "successful marketing of a book . . . depends upon the coordination of advertising, serialization, author appearances, and reviews, and the release to the public of the book." *See also Marcy Playground*, 6 F. Supp.2d at 283.

### 4. The Public Interest Weighs Against An Injunction

The public interest would be disserved by a preliminary injunction. The Second Circuit has warned that courts should be especially reluctant to enjoin books:

> The normal reluctance to impose a summary restraint in advance of a full and complete trial is particularly acute in a case such as this which deals with the publication of a book. Before the court will intrude into an area fraught with sensitivity in its possible impingement upon fundamental democratic and intellectual institutions, it will require a showing by the movant of a right, both legal and factual, in most unequivocal terms.

*Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303, 311 (2d Cir. 1966). *See also*, *New Era Pubs. Int'l., ApS v. Henry Holt and Company, Inc.*, 873 F.2d 576, 596 (2d Cir. 1989) (affirming denial of preliminary injunction of biography of L. Ron Hubbard). Here, the public would be deprived of educational books where only a small portion of the books is implicated and where plaintiffs can be adequately compensated by money damages.

Finally there is no need for injunctive relief, in any event. Penguin's brief indicates that the Penguin Defendants have voluntarily ceased further distribution of the books in the United States pending clarification or resolution of this matter. Getty Images likewise has removed the Photographs from its website and does not intend to grant any new licenses in these Photographs pending clarification or resolution of this matter.

### B.   PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION ON THEIR LANHAM ACT CLAIM, WHICH IS INVALID AS A MATTER OF LAW

Plaintiffs' complaint (Count II) also alleges "reverse passing off" under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a). In *Salinger*, the Second Circuit stated that "we see no reason that *eBay* would not apply with equal force to an injunction in any type of case." 607 F.3d at 78 n. 7. Thus, the *Salinger* preliminary injunction standard applies to plaintiffs' Lanham Act claim. For all the reasons reviewed above, plaintiffs cannot meet these standards because they fail to establish irreparable harm and the balance of hardships and public interest weigh in defendants' favor.

Moreover, plaintiffs cannot show a likelihood of success on the merits on their Lanham Act claim because it is barred as a matter of law by the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 36-38, 123 S. Ct. 2041, 2049-2050 (2003).

Plaintiffs have asserted a claim for "false designation of origin" in violation of 15 U.S.C. § 1125(a)(1) for allegedly falsely describing plaintiffs' goods in interstate commerce. More

10

specifically, plaintiffs allege that Getty Images website "conceal[s] and misrepresent[s] the true origin of the images" by including Psihoyos's copyright notice – and not plaintiffs' copyright notice – next to the Photographs, and that consumers who "license infringing photographs are misled as to the origin of the goods offered by these Defendants." Plaintiffs' Brief, p. 10. These are classic "reverse palming off" claims.[2] Indeed, plaintiffs admit in their Memorandum of Law that their claim qualifies as one for "reverse passing off." *See* Plaintiffs' Brief, p. 9.

In *Dastar*, the Supreme Court held that Lanham Act claims such as those asserted by plaintiffs in this case do not survive and must be dismissed. As the Court held, "a cause of action for, in effect, plagiarism—the use of … works and inventions without attribution" – is not the province of the Lanham Act but rather falls under copyright law. *Dastar*, 539 U.S. at 36-37, 123 S. Ct. at 2049-2050. The Supreme Court further admonished that the Lanham Act was "not designed to protect originality or creativity" because that is the domain of copyright. *Dastar*, 539 U.S. at 37, 123 S. Ct. at 2050. As explained in *Nimmer*, "*Dastar* dooms most reverse passing off causes of action" because the "unanimous ruling in favor of *Dastar* gives wide berth to copyright principles in defeating the claims of creative plaintiffs who attempt to dress in other garb what is at base a claim for copying their expression." *Nimmer on Copyright*, § 1.01[D][2]. Thus, where the good in question is "a communicative product … such as a book or … a video," the term "origin" refers to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar*, 539 U.S. at 37, 123 S. Ct. 2050; *see also Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 713

---

[2] As the Supreme Court explained in *Dastar*, "Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. 'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own." 539 U.S. at 28 n.1, 123 S. Ct. at 2045 n. 1 (internal citations removed).

11

F.Supp. 2d 215, 234 (S.D.N.Y. 2009) (where alleged "misrepresentation of authorship lies at the heart of th[e] action, the plaintiffs' Lanham Act claim is barred by *Dastar*."), citing *Antidote International Films, Inc. v. Bloomsbury Publishing, PLC*, 467 F.Supp.2d 394, 400 (S.D.N.Y. 2006).

*Dastar* thus forecloses plaintiffs' Lanham Act claims against Getty Images for false designation of origin. In a case closely on point against Getty Images, the court specifically found that "[b]ecause photographs are 'communicative products' protected by copyright, false designation of their authorship is not cognizable under section 43(a)(1)(A) after *Dastar*." *AFP v. Morel*, 769 F.Supp.2d 295, 307 (S.D.N.Y. 2011). In *AFP v. Morel*, the court dismissed a Lanham Act claim against Getty Images and others for allegedly misrepresenting the photographer in the credit lines of photographs offered for sale on Getty Images' website, holding that the photographer qualified as the author but not the "origin" of the photographs. Here, plaintiffs' claim of origin is even *more* attenuated because the Photographs allegedly "either derive from or outright duplicate" Cooley's work depicted in the Photographs (*see* Plaintiffs' Brief, p. 10) – but the Photographs themselves are not authored by Cooley, but rather Psihoyos. Cooley is neither the "origin" nor even the "author" of the goods that Getty Images offered for sale in this action, namely the Photographs. Cooley is only the "origin" of the actual, tangible sculptures that he created, and he does not allege that any of the defendants attempted to sell those tangible sculptures while misrepresenting their source. Because plaintiffs' Lanham Act claim relies on allegations of misrepresentation of authorship and copyright ownership, plaintiff have no likelihood of success on the merits of this claim, and it cannot be the basis of a

preliminary injunction.[3]

### C. PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION ON THEIR NEW YORK UNFAIR COMPETITION LAW CLAIM, WHICH IS INVALID AS A MATTER OF LAW

Plaintiffs' complaint (Count V) alleges violations of New York unfair competition law and seeks injunctive relief and damages. As set forth in Penguin's Brief, this claim is preempted, as a matter of law, by the federal copyright laws. Plaintiffs' state law claim is based solely on the defendants' alleged copying of their works without attribution. It is, therefore, a disguised copyright claim preempted by Section 301(a) of the Copyright Act.

### D. PLAINTIFFS' REQUEST ON THEIR PRELIMINARY INJUNCTION MOTION FOR "DESTRUCTION" OF ALL UNAUTHORIZED COPIES OF THE WORK IS IMPROPER

In Section 4 of the Order to Show Cause, plaintiffs request an order requiring the defendants to destroy all unauthorized copies of the Works, including all images of the Works as they appear on Getty Images' website. Under Section 503(b) of the Copyright Act, 17 U.S.C. § 503(b), the remedy of "destruction" of infringing copies can be ordered only "as part of a final judgment or decree." Plaintiffs' request is premature and unavailable on their preliminary injunction motion.

---

[3] Plaintiffs' third request for injunctive relief, namely an order enjoining the defendants from making representations concerning the ostensible ownership of the copyright in the Work, is presumably based on their faulty Lanham Act claim. Moreover, it makes no sense. Getty Images must accurately state that the copyright in the Photograph is held by Psihoyos. If and when this Court determines that plaintiffs should additionally be credited for copyright in the underlying models, Getty Images will add that additional information.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction and temporary restraining order should be denied.

Dated: New York, NY
       January 13, 2012

                                            Respectfully submitted,

                                            */s/ Linda Steinman*
                                            Linda Steinman (LS-5906)
                                            Deborah Adler (DA-0909)
                                            DAVIS WRIGHT TREMAINE LLP
                                            1633 Broadway – 27th Floor
                                            New York, NY  10019
                                            Phone: 212-489-8230
                                            Fax: 212-489-8340
                                            lindasteinman@dwt.com

                                            *Attorneys for Defendant Getty Images (US), Inc.*