UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
------------------------------------------------------- x

BRIAN COOLEY, and COOLEY & CO. LTD.,       :
                                            :       Index No. 12 CIV 0001 (LAK)
                 Plaintiffs,                :
                                            :
              - against -                   :       **EFC CASE**
                                            :
PENGUIN GROUP (USA) INC., DK                :
PUBLISHING, INC. an affiliate of PENGUIN    :
GROUP (USA) INC., DORLING                   :
KINDERSLEY LIMITED, an affiliate of         :
PENGUIN GROUP (USA) INC., GETTY             :
IMAGES, INC., CORBIS CORPORATION,           :
RGB VENTURES LLC D/B/A SUPERSTOCK,          :
and LOUIS PSIHOYOS,                         :
                                            :
                 Defendants.                :
------------------------------------------------------- x

## DECLARATION OF HEATHER CAMERON
## FOR DEFENDANT GETTY IMAGES (US), INC.
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

HEATHER CAMERON, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am a Senior Paralegal acting on behalf of Getty Images, Inc.  I make this affidavit based upon my personal knowledge and my familiarity with Getty Images, Inc. and the practices and business records of its subsidiaries, including its wholly owned subsidiary Getty Images (US), Inc. ("Getty Images"), the proper party in this action.  I submit this declaration on behalf of Getty Images and in opposition to plaintiffs' motion for a preliminary injunction and temporary restraining order.

2.      Getty Images is a leading provider of digital media worldwide, creating and distributing a range of assets – from photography to video, music and multimedia.  It offers one of the broadest collections of imagery and footage – including award-winning news, sports and entertainment content, plus rare historical and contemporary archival imagery.

3.      Plaintiffs Brian Cooley, a sculptor of dinosaur egg models, and Cooley & Co., Ltd., the alleged assignee of Cooley's copyrights, claim copyright ownership in two works: "Segnosaur Embryo" ("Segnosaur Embryo") and Therizinosaur ("Therizinosaur") (collectively the "Works").  Plaintiffs claim that Louis Psihoyos ("Psihoyos") took unauthorized photographs of these two Works (the "Photographs"), which allegedly infringe plaintiffs' copyright in the models.

4.      Psihoyos is represented by the photo agency Ressmeyer Productions, Inc., formerly Visions of Tomorrow, Inc., d/b/a Science Faction ("Science Faction"), which in turn entered into a "Rights Managed Distribution Agreement" (the "Distribution Agreement") with Getty Images.  Science Faction supplied Getty Images with the Psihoyos Photographs under this Distribution Agreement.  Copies of the Distribution Agreement and the second amendment are attached hereto as Exhibit 1 (confidential provisions have been redacted).

5.      On April 28, 2011, Getty Images licensed the allegedly infringing Therizinosaur photograph to Dorling Kindersley ("DK") for use in the interior of *Ask A Dinosaur*.  Although Science Faction also may have granted Getty Images a non-exclusive license to distribute Psihoyos's photograph of plaintiffs' Segnosaur Embryo, Getty Images was not the source of this photograph for DK's books titled *Dinosaurs: A Visual Encyclopedia* and *Dinosaurs: A Children's Encyclopedia*.

6.      Upon information and belief, Getty Images had no actual knowledge of infringement, or knowledge of any claims of infringement, regarding the Photographs prior to plaintiffs' filing of the complaint on January 3, 2012.  The Photographs were first supplied to Getty Images by Science Faction many years ago, namely in 2005, and plaintiffs never sent Getty Images any notice of infringement over the ensuing years.  While plaintiffs' counsel

DWT 18845170v1 0053349-000088

appears to have sent a letter in November 2011 to defendant Penguin Group (USA) Inc.
regarding DK's alleged use of plaintiffs' Segnosaur Embryo (which was not licensed to DK by
Getty Images), plaintiffs' counsel did not provide Getty Images with any letter or other notice of
plaintiffs' claims before commencing this action, nor did Penguin Group (USA) Inc. contact
Getty Images after receiving the letter from plaintiffs' counsel.

7.     Moreover, Getty Images relied in good faith upon Science Faction's
representations and warranties in its offering of the Photographs for license.  Section 9 of the
Distribution Agreement provides that Science Faction has sufficient rights in its images to grant
Getty Images "any necessary approval, consent, authorization, release, clearance or license" of
any third party.  It further provides that Science Faction's images "do not and will not [ ] infringe
on or violate any Third Party copyright, patent, trademark, trade secret, privacy right, publicity
right or other intellectual property or proprietary right of a Third Party," and that Getty Images'
licensing of the images "will not infringe on or violate any copyright … or other intellectual
property or proprietary right of any Third Party."

8.     Science Faction provides Getty Images with captions and releases associated with
an image and further warrants that the information it provides to Getty Images about images will
be "complete and accurate."  That information includes captions and all releases associated with
an image.  As a result, the captions cannot be used as evidence of Getty Images' alleged
knowledge of infringement, as plaintiffs would like to suggest.

9.     Plaintiffs also take issue with Getty Images for displaying Psihoyos's name on the
credit line of the photographs.  However, under the Second Amendment to the Distribution
Agreement, dated April 23, 2010, Getty Images was specifically obligated to "display the credit

line as submitted" by Science Faction for images created by Psihoyos (as well as those created by another photographer).

10.     Getty Images began investigating plaintiffs' claims on January 3, 2012, when it first learned that plaintiffs had filed a complaint, and before service of the complaint.  As a sign of its good faith, Getty Images was already in the process of expeditiously removing the Photographs from its website at the time it was served with the complaint on January 5, 2012. The Photographs were promptly taken down from Getty Images' website on January 5, 2012. Getty Images will not re-post the Photographs on its website until further clarification or resolution of this matter.

11.     As an additional sign of good faith, Getty Images will not enter into any new licenses of the Photographs until further clarification or resolution of this matter.

12.     Contrary to plaintiffs' allegations, Getty Images receives no financial benefit directly attributable to any infringing activity by licensees in connection with the Works.  Getty Images did not promote the availability of infringing content, attract customers based on infringing content (or lose them because of the eventual obstruction of infringement), or charge more for infringing content.

13.     Nor did Getty Images have the right or ability to supervise the end-uses of the Photographs made by its licensee, DK, in the books at issue.  Getty Images did not prescreen or edit DK's use of the Photographs in these books.

14.     Similarly, Getty Images did not substantially participate in any allegedly infringing conduct by its licensees.  It did nothing more than license Photographs long in its

DWT 18845170v1 0053349-000088

collection at a time when it did not know, and had no reason to know, that plaintiffs were claiming that the Photographs infringe their copyright.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on January 13, 2012.

_____
HEATHER CAMERON

EXHIBIT 1

**Rights Managed Distribution Agreement**

This Distribution Agreement ("Agreement") is made as of October 7, 2004 ("Effective Date") between Getty Images (US) Inc., having an office at 601 North 34th Street, Seattle, WA 98103 USA ("Getty Images") and Visions of Tomorrow, Inc., having an office at 7683 SE 27th Street #361, Mercer Island, WA  98040 ("Partner").

Whereas, Getty Images owns and operates a global distribution systems for the sale and license of photographs and graphic design resources to creative professionals; and

Whereas, Partner is in the business of imagery and would like the opportunity to have its Products distributed by Getty Images;

Now therefore, in consideration of the mutual undertakings here after set forth the parties hereby agree as follows:

## SECTION 1    DEFINITIONS

1.1        "Confidential Information" means information designated as confidential or proprietary by the disclosing party, or known by the receiving party to be confidential.  Confidential Information includes all information covered or referenced by Section 11.

1.2        "Products" means Partner's rights managed images, materials, goods, and products, together with all packaging materials and documentation included with such Products, as applicable.

1.3        "Term" has the meaning set forth in Section 5.1.

1.4        "Territory" means the following geographical area: The World.

1.5`· ·` "Third Party" means any person or entity not a party to this Agreement and not an affiliate of a party to this Agreement.

## SECTION 2    RELATIONSHIP AND DUTIES OF THE PARTIES

2.1        Appointment and Grant of Rights.  Subject to the terms and conditions of this Agreement, Partner grants to Getty Images, an exclusive license to distribute Partner's Products in the Territory.  Partner grants to Getty Images all rights, licenses and permissions to act as a distributor and marketer of Partner's Products to Getty Images' customers through its wholly-owned offices, through its network of delegates and distributors, and through their catalogues and promotional materials, as well as their online distribution mechanisms as described and implied in this Agreement.  Getty Images will not alter or edit the Partner's Products except as appropriate to be technically and editorially compatible with Getty Images' offerings and services.

2.2        Independent Contractor.  The parties to this Agreement are independent contractors to one another. This Agreement will not be interpreted or construed as creating or evidencing any association, agency, joint venture or partnership between the parties or as imposing any partnership obligation or responsibilities on either party.

2.3        Partner's Products.                                REDACTED


2.4        Non-Solicitation.
                                                              REDACTED

1

REDACTED

2.5
REDACTED

2.6     Rights Management.  Partner is responsible for establishing processes for efficient rights management between Partner and any provider or other rights holder of Partner Products.  Partner will respond to all rights requests from Getty Images within 48 hours.  Partner will provide accurate information for all Products, including those provided to Partner by a Third Party.  The information provided by Partner will include details on any exclusive licenses based on Getty Images rights management framework and any other restrictions that apply to the licensing of the Products.  Getty Images will use this information to manage the rights and exclusivity granted to its customers.

2.7     Similars.  "Similar" means any image, other than images and Products that originate in the public domain, whose principal elements are depicted in a way that, when compared side by side with another image, would cause an industry professional to believe they are substantially the same.  Images shall not be considered Similars based only on their subject matter.  Getty Images may grant its customers exclusive rights to some of its rights managed products, and includes appropriate restrictions in its agreements with photographers and Partners to ensure that Getty Images has obtained exclusive rights to such images. As such, Partner will include provisions in its contracts with photographers to obtain exclusive rights to the Products submitted to Getty Images (including any Similars) and will prohibit the submission to Partner of images that are Similars to those submitted to Getty Images or any other third party.  Upon request by Getty Images, Partner will provide all available information pertaining to the Products that may be necessary for Getty Images to identify any Similars contained within the Products.  If Partner or Getty Images becomes aware that any of the Products are Similar to any other images being licensed or sold by Getty Images, Partner will take all steps necessary to facilitate the removal of such Products from Getty Images' website."

## SECTION 3     MARKETING/PROMOTION

Marketing/Promotion.  Getty Images will use commercially reasonable efforts to diligently market Partner's Products as part of its broader product offering.  No marketing or promotional opportunities are given to Partner as consideration for this Agreement aside from those expressly referenced within this Agreement.

## SECTION 4     LIMITATIONS

4.1     Limitations of Getty Images' Rights.  Partner reserves all rights not expressly granted to Getty Images under this Agreement. Without limiting the forgoing, Getty Images will not, except as described in this Agreement, (a) market, distribute, transfer or otherwise commercially exploit the Products, (b) copy or repackage the Products, or (c) disassemble or reverse engineer the Products or otherwise attempt to discover any trade secrets related to the Products.

4.2     Limitations on Getty Images' Duties.  All Products chosen by Partner for Getty Images' promotion or distribution must be approved by Getty Images, such approval not to be unreasonably withheld.  Getty Images reserves all necessary rights to refuse to promote or distribute Partner Products that do not meet Getty Images' technical requirements or that Getty Images reasonably deems outdated, inaccurate, obscene, defamatory or libelous, objectionable, or where there are questions regarding the intellectual property rights regarding the Product.  Getty Images shall not be liable for any failure to promote or distribute Partner's Products.

## SECTION 5   TERM AND TERMINATION OF AGREEMENT

5.1    <u>Term</u>.  The term of this Agreement (the "Term") shall commence as of the Effective Date, and terminate three (3) years from the Effective Date.  This Agreement shall renew automatically for one-year terms unless terminated under the conditions of either Sections 5.2 or 5.3.

5.2    <u>Optional Termination of Agreement</u>.  Either party may terminate this Agreement with or without cause after giving the other party one hundred and eighty (180) days advance written notice of termination.  Neither party shall exercise this clause for the purpose of securing a more favorable royalty rate or terms.

5.3    <u>Termination for Cause.</u>  Either party may terminate immediately by giving the other party written notice of termination, if the other party fails to cure any breach of or default under this Agreement within (30) days after it receives written notice of such breach or default, or should either party become insolvent either may terminate immediately.

5.4    <u>Effect of Termination.</u>  Upon any expiration or termination of the Term, the appointment and license under Section 2 will immediately terminate.  Within a commercially reasonable time, Getty Images will return to Partner any and all physical media containing Products that were provided to Getty Images, and will remove all Products and Partner's trademarks from all sales mechanisms, within ninety (90) days of the termination of this Agreement.   Partner will refund to Getty Images all amounts paid by Getty Images for Products that have been paid in full (or in part) by Getty Images and subsequently returned to Partner.  The termination of this Agreement by expiration of the term or otherwise shall not affect the obligations of Getty Images to pay any royalties due to Partner from sales of Products.

5.5    <u>Survival</u>.  Sections 1, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and all other provisions that may reasonably be construed as surviving the termination or expiration of the Term will survive the termination of this Agreement and the expiration of the Term.

## SECTION 6    PRESS RELEASES / PUBLICITY

REDACTED

## SECTION 7    REPORTING AND DATA

7.1    <u>Reports.</u>                                     REDACTED
                                                           REDACTED

7.2    <u>Audit Rights</u>.  Partner may provide Getty Images with reasonable notice of its request to have a neutral Third Party or accounting firm audit records pertinent to Partner Product transactions through

3

Getty Images. Getty Images will use reasonable efforts to accommodate such an audit, to be conducted at the sole expense of the Partner, within 30 days of the Partner's request. Getty Images shall bear the cost of such inspection and audit if an underpayment discrepancy of 10% or greater is found. Partner's audit right shall be during the Term and the one year period following the expiration or termination of this Agreement and may only be exercised once during any twelve (12) month period.

7.3     Data. Getty Images retains sole ownership over the data collected from its sales or distribution of Partner's Products. Getty Images reserves all rights afforded it regarding such data, as granted by the terms and conditions governing the transactions.

## SECTION 8    ORDERS, PRICING, PAYMENT

8.1     End User Orders. Getty Images and its fulfillment partners or contractors will use commercially reasonable efforts to fulfill customer orders for Partner's Products from Getty Images' web-sites, catalogues (if applicable), and other normal sales mechanisms. Getty Images will collect and keep all shipping charges borne by the end user customers.

8.2     Pricing for Customers.

      8.2.1     Price Setting. REDACTED
REDACTED

      8.2.2     Outbound Selling Price: REDACTED
REDACTED

8.3     Royalty Rate. REDACTED
REDACTED

8.4     Payment to Partner. REDACTED
REDACTED

8.5     Taxes. REDACTED
REDACTED

## SECTION 9    WARRANTIES

9.1     Mutual Warranties. Each party warrants and represents to the other party that it has full corporate power, authority, and resources to enter into this Agreement and carry out their respective obligations.

9.2    Partner Warranties.  Partner has and shall have during the term of this Agreement, sufficient rights in Partner's Products to grant Getty Images the rights set forth in this Agreement, including any necessary approval, consent, authorization, release, clearance or license of Partner or any other Third Party and any release related to any rights of privacy or publicity, as may be necessary for Partner to enter into this Agreement.  The information about the Products, including any restrictions that may affect Getty Images' ability to license certain rights in the Products, is complete and accurate.  The Products provided by Partner to Getty Images under this Agreement, to the best of Partner's knowledge, after reasonable investigation, do not and will not: (i) infringe on or violate any Third Party copyright, patent, trademark, trade secret, privacy right, publicity right or other intellectual property or proprietary right of a Third Party; (ii) violate any law, statute, ordinance, or regulation; (iii) be defamatory or trade libelous; (iv) be pornographic or obscene; or (v) contain viruses, Trojan Horses, worms, time-bombs, or other similar harmful or deleterious programming routines; and Getty Images' exercise of its rights hereunder will not infringe on or violate any copyright, patent, trademark, trade secret, privacy right, publicity right or other intellectual property or proprietary right of any Third Party.  Partner warrants that none of the Products may be sold independently by the photographers who originally captured the images and that Partner's contracts with its contributing photographers prohibit the sale by such photographers of photographs that are included within Partner's Products.  It is understood and agreed that certain Products may be in the public domain, or they may be derived from images or other materials in the public domain.

9.3    Getty Images' Warranties.  Getty Images will not knowingly use the Partner's Products in any manner which is or may be defamatory, derogatory or disparaging to Partner or any Partner employee, photographer, representative or affiliate; and Getty Images will include all appropriate trademark and copyright notices provided by Partner on all Partner Products.

9.4    Disclaimer.  EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, NEITHER PARTY MAKES ANY OTHER REPRESENTATIONS OR WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE OR NON-INFRINGEMENT.

9.5    Loss of Goods.  Partner assumes all title and risk of loss for Products (including the physical media on which the Products are stored) until title for any such Products passes to a Getty Images customer or end user, with the exception that once Getty Images assumes custody of the physical media, Getty Images assumes responsibility for the replacement costs of the actual physical media.

## SECTION 10  INDEMNIFICATION

10.1    Indemnification by Partner.  Partner will indemnify and hold harmless Getty Images, for any damages, loss, cost, and expense (including, without limitation, reasonable attorneys' fees and expenses) incurred by Getty Images arising from or in connection with (a) any claim, demands, liabilities, suits, proceedings or actions ("Claim") for breach of any obligation, representation or warranty made by Partner in this Agreement or in any certificate, instrument, or document delivered by Partner pursuant to this Agreement, (b) any Claim that the Products or Getty Images' sale or distribution of Products in accordance with Getty Images' rights under this Agreement, infringes, misappropriates or violates any copyright, trademark, trade secret, privacy, publicity or other intellectual property or proprietary right of any party,  or (c) any Claim by any person for brokerage or finder's fee or commissions or similar payments based upon any agreement or understanding alleged to have been made by such person with Partner (or any person acting on its behalf) in connection with any of the transactions contemplated by this Agreement.

5

10.2   Indemnification by Getty Images. Getty Images will indemnify and hold harmless Partner, for any damages, loss, cost, and expense (including, without limitation, reasonable attorneys' fees and expenses) incurred by Partner arising from or in connection with any Claim for breach of any obligation, representation or warranty made by Getty Images in this Agreement or in any certificate, instrument, or document delivered by Getty Images pursuant to this Agreement.

10.3   Cooperation by Indemnified Party. The indemnifying party is under no obligation to indemnify under Section 10.1 or Section 10.2 and hold the other party harmless unless:

   10.3.1   the indemnifying party is promptly notified of the claim by the indemnified party and furnished by the indemnified party with a copy of each communication, notice or other action relating to said claim;

   10.3.2   the indemnifying party has the right to assume sole control to conduct the trial or settlement of such Claim or any negotiations related thereto at the party's own expense (provided that any settlement must be approved by both parties); and

   10.3.3   the indemnified party provides reasonable information and assistance requested by the indemnifying party in connection with such Claim.

REDACTED

## SECTION 11. CONFIDENTIALITY

11.1   Confidentiality Obligation. During the term of this Agreement and for as long after its expiration or termination as either party possesses any Confidential Information, each party agrees to not disclose any Confidential Information of the other party to any Third Party or use any of the Confidential Information except as necessary to perform that party's obligations under this Agreement.

11.2   Exceptions to Confidentiality Obligation. A party will not be in breach of Subsection 11.1 if the Confidential Information in question:

   11.2.1   can be shown to have been known by that party before it was disclosed to that party by or on behalf of the other party, and not to have been acquired by that party improperly or from any Third Party who was or is subject to a confidentiality obligation;

 11.2.2 is or comes into the public domain (unless it does so because of that party's breach of Subsection 11.1);

 11.2.3 is required to be disclosed by any law or any competent legal authority provided, however, the party required to disclose the Confidential Information by any law or any competent legal authority agrees to immediately notify the disclosing party of the existence, terms and circumstances surrounding such a request, so that it may seek an appropriate protective order and/or waive the receiving party's compliance with the provisions of this Agreement;

 11.2.4 is only disclosed to that party's professional advisers under an obligation of confidentiality for the purpose of obtaining professional advice in connection with this Agreement, and in addition, in the case of Getty, disclosed to any Getty Office; or

 11.2.5 is disclosed only after obtaining the written consent of the other party.

## SECTION 12.  INTELLECTUAL PROPERTY

12.1 <u>Reservation of Rights</u>.  The Products involve valuable copyright, trade secret and other proprietary rights of Partner.  Except as described in this Agreement, no title to ownership of any Products, or the copyright, trademark, trade secret or other proprietary rights to any Products, are transferred to Getty Images.  Except as granted herein, Partner reserves all copyright, trade secret, and other proprietary rights in the Products.  Getty Images will use commercially reasonable measures to avoid removing, altering, or obscuring any trademark, copyright or other propriety right notice or legend appearing in or on the Products.

12.2 <u>Trademarks</u>.  Partner reserves all of its trademarks used in association with the Products, but hereby grants to Getty Images the nonexclusive right to use such trademarks during the Term to identify the Products in connection with Getty Images marketing and distribution of the Products in the Territory. Getty Images does not grant any rights or licenses in Getty Images' pending or registered trademarks to Partner without prior written consent.

## SECTION 13   LIMITATION OF LIABILITY

NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, EXCEPT FOR LIABILITY TO THIRD PARTIES ARISING UNDER SECTION 10 HEREOF OR ARISING FROM A BREACH OF SECTION 11, NEITHER PARTY SHALL, UNDER ANY CIRCUMSTANCES, BE LIABLE TO THE OTHER PARTY FOR INDIRECT, CONSEQUENTIAL, INCIDENTAL, PUNITIVE, OR SPECIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOST PROFITS, EVEN IF SUCH PARTY HAS BEEN APPRISED OF THE LIKELIHOOD OF SUCH DAMAGES OCCURRING.

## SECTION 14   OTHER

14.1 <u>Compliance with Applicable Laws</u>.  In performing this Agreement, each party will comply with all applicable laws, regulations and other requirements, now or hereafter in effect, of Governmental authorities having jurisdiction, including, but not limited to, the US Export Administration Act, regulations of the US Department of Commerce and other export controls of the US, as they may be amended. Neither party will take any actions that may cause the other party to be in violation of any law.

14.2 <u>Controlling Law</u>.  This Agreement shall be interpreted, construed and governed by the laws of the State of Washington, U.S.A.  Any dispute, controversy or claim between the parties arising out of or

related to this Agreement, or the breach, termination or invalidity hereof shall be settled by binding arbitration to be held in Seattle, WA, U.S.A., pursuant to the then current rules of the American Arbitration Association ("AAA"). The parties agree that one arbitrator shall be selected for the proceeding, utilizing the AAA's normal rules and procedures for arbitrator selection.

14.3   Severability.  In the event that any provision of this Agreement shall be unenforceable or invalid under any applicable law, or so held by applicable court decision, such enforceability or invalidity shall not render this Agreement unenforceable or invalid as a whole, and in such event such provision shall be changed and interpreted so as to best accomplish the objectives of such provision.

14.4   Assignment.  Except to an entity that is a parent, subsidiary or affiliate at the time this Agreement is executed, or as otherwise specifically stated herein, neither party may assign any of its rights under this Agreement without the prior written consent of the other party, which shall not be unreasonably withheld. For the avoidance of doubt, any assignment by Licensor as the result of an acquisition or to an acquiring entity shall require the prior written consent of Getty Images. Notwithstanding the foregoing, Getty Images may assign its rights under this Agreement to a member of its delegate network to the extent necessary to carry out and fulfill Getty Images' rights under this Agreement.   Subject to the foregoing, this Agreement will be fully binding upon, inure to the benefit of, and be enforceable by the parties and their respective successors and assigns.

14.5   Notice.  Any notice or other communication under this Agreement given by either party to the other will be in writing and deliver either a) in person or by first-class, registered or certified mail or an internationally recognized courier service, return receipt requested, postage prepaid or b) by facsimile. Notices will be directed to the intended recipient at the address specified below:

To Getty Images:  601 North 34th Street, Seattle, WA 98103 USA

To Partner:  7683 SE 27th Street #361, Mercer Island, WA  98040

14.6   Waiver.  No express or implied waiver by either party of any provision of this Agreement or of any breach or default of the other party shall constitute a continuing waiver, and no waiver by either party shall prevent such party from enforcing any and all other provisions of this Agreement or from acting upon the same or any subsequent breach or default of the other party.

14.7   Entire Agreement.  This Agreement sets forth the entire Agreement between the parties, and supersedes any and all prior agreements between them, relating to the Products. No amendment or modification of any provisions of this Agreement will be valid unless set forth in a written instrument signed by both parties.

14.8   Counterparts; Fax Signatures.  This Agreement may be executed in one or more counterparts which, taken together, shall constitute one and the same instrument, and this Agreement shall become effective when one or more counterparts have been signed by each of the parties.  Signatures may be exchanged by facsimile transmission and each party to this Agreement agrees that it will be bound by its own facsimile signature and that it accepts the facsimile signature of the other party to this Agreement.

Getty Images                                          *Visions of Tomorrow, Inc.*

Name:  _____          Name:  _____

Print:   N. EVANS - LOMBE                    Print:   Roger H Ressmeyer

SVP
Title: _MATERIAL & SERVICES_          Title: _President_

Date: _12/11/04_                        Date: _10/26/2004_

9

## SECOND AMENDMENT TO RIGHTS MANAGED DISTRIBUTION AGREEMENT

This Second Amendment (the "Amendment"), dated April 23, 2010 (the "Amendment Effective Date"), modifies the Rights Managed Distribution Agreement by and between Getty Images (US), Inc. ("Getty Images"), and Visions of Tomorrow, Inc. (d/b/a Science Faction Images) ("Partner"), executed as of October 7, 2004, and amended as of August 17, 2005 (as amended, the "Agreement"). Section 14.7 of the Agreement allows this Amendment.

Except as set forth below, all terms of the Agreement shall remain in full force and effect and shall remain unaltered by this Amendment. Capitalized terms not defined herein shall have the meanings set forth in the Agreement.

In consideration of the mutual and adequate benefits arising from the execution of this Amendment, Partner and Getty Images agree to amend the Agreement as follows:

1.   A new Recital is added to the Agreement as follows:

"WHEREAS Getty Images and Partner would like to resume their business relationship under the terms of the Agreement, as amended by this Amendment, as of the Amendment Effective Date;"

2.   Section 1.7 of the Agreement is deleted in its entirety.

3.   Section 1.8 of the Agreement is deleted in its entirety.

4.   Section 1.9 of the Agreement is deleted in its entirety.

5.   Section 1.10 is added to the Agreement as follows:

"1.10   "Premium Access" refers to a program through which Getty Images delivers content to certain customers who have entered into customized pricing agreements, pursuant to which Getty Images makes available to those customers an agreed volume of imagery for a fixed monthly fee for an agreed scope of usage for an agreed term."

6.   Section 2.1 of the Agreement is deleted in its entirety and replaced with the following:

"2.1   Appointment and Grant of Rights. Subject to the terms and conditions of this Agreement, Partner grants to Getty Images a non-exclusive license to distribute Partner's products in the Territory. Partner grants to Getty Images all rights, licenses and permissions to act as a distributor and marketer of Partner's products to Getty Images' customers through its wholly owned offices, through its network of delegates and distributors, and through their catalogues and promotional materials, as well as their online distribution mechanisms as described and implied in this Agreement. Getty Images will not alter or edit Partner's Products except as

appropriate to be technically and editorially compatible with Getty Images' offerings and services."

7.    Section 2.3 of the Agreement is deleted in its entirety and replaced with the following:

2.3.    Partner's Products                    REDACTED

                            REDACTED

8.    Section 2.5 of the Agreement is deleted in its entirety and replaced with the following:

                            REDACTED

9.    Section 2.8 of the Agreement is deleted in its entirety.

10.    Section 2.9 of the Agreement is deleted in its entirety and replaced with the following:

"2.9    Product Acceptance and Ingestion.          REDACTED

                            REDACTED

REDACTED

11.     Section 2.11 is added to the Agreement as follows:

"2.11   Participation in Premium Access.          REDACTED
                              REDACTED

12.    Section 2.12 is added to the Agreement as follows:

    "2.12   Payment and Recoupment.                    REDACTED
                                        REDACTED

13.    Section 2.13 is added to the Agreement as follows:

    "2.13   Psihoyos and Wu Images.           REDACTED
                                    REDACTED

                REDACTED        Getty Images agrees that Partner may identify
Partner as the source of the Product in the credit line for any Psihoyos or
Wu Product that it submits, and Getty Images shall display the credit line as
submitted by Partner for such Products.           REDACTED
                                    REDACTED

    14.    Section 3 of the Agreement is deleted in its entirety and replaced with the
following:

        "SECTION 3. MARKETING/PROMOTION

REDACTED

15.    Section 5.1 of the Agreement is deleted in its entirety and replaced with the following:

"5.1    Term. The term of the Agreement (the "Term") shall resume as of the Amendment Effective Date and terminate on the later of (a) two (2) years from the Amendment Effective Date or (b) the date on which Partner has repaid in full the advance specified in Section 2.12. This Agreement shall renew automatically for one year terms unless terminated under the conditions of either Sections 5.2 or 5.3, provided, however, that notwithstanding the provisions of Section 5.2, neither Partner nor Getty Images may terminate this Agreement pursuant to Section 5.2 prior to the later of (a) two years from the Amendment Effective Date or (b) the date on which Partner has repaid in full the advance specified in Section 2.12."

16.    Section 7.1 of the Agreement is deleted in its entirety and replaced with the following:

"7.1   Reports.                    REDACTED
                                   REDACTED

In witness of their mutual agreement to the terms of the Amendment, the parties to the Agreement have executed this Amendment to be effective as of the date written above.

VISIONS OF TOMORROW, INC.

By: Roger H. Ressmeyer
Its: President and CEO
Dated: April 23, 2010

GETTY IMAGES (US), INC.

By: John Lapham
Its: Senior Vice-President & General Counsel
Dated:  April 23, 2010

6