UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN COOLEY and COOLEY & CO. LTD.

                     Plaintiffs,

-against –

PENGUIN GROUP (USA) INC., DK PUBLISHING, INC. an affiliate of PENGUIN GROUP (USA) INC., DORLING KINDERSLEY LIMITED. an affiliate of PENGUIN GROUP (USA) INC., GETTY IMAGES, INC., CORBIS CORPORATION, RGB VENTURES LLC d/b/a SUPERSTOCK and LOUIS PSIHOYOS,

                     Defendants.

Index No. 12-CV-0001

# REPLY MEMORANDUM OF LAW IN RESPONSE TO THE OPPOSITION FILED BY THE PENGUIN DEFENDANTS AND IN FURTHER SUPPORT OF THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Respectfully submitted,

**SAM P. ISRAEL, P.C.**

Sam P. Israel, Esq. (SPI0270)
1 Liberty Plaza – 23rd Fl.
New York, NY 10006
Tel: 212-201-5345
Fax: 212-201-5343

*Attorneys for Plaintiffs,*
*Brian Cooley and Cooley & Co. Ltd.*

Plaintiffs Brian Cooley and Cooley & Co. Ltd. (collectively, "**Plaintiffs**," each individually a "**Plaintiff**") submit this reply memorandum of law, together with the declaration of Plaintiff Cooley in response to the opposition filed by affiliated defendants Penguin Group (USA) Inc., DK Publishing, Inc., and Dorling Kindersley Limited (collectively the "**Penguin Defendants**") and in further support to the Plaintiffs' motion for a preliminary injunction (the "**Motion**").

## I. PRELIMINARY STATEMENT

The Penguin Defendants devote a major portion of their opposition to nuanced explications of the preliminary injunction standard in this Circuit even as they provide no evidence whatever in support of their position beyond two agreements which are actually fully consistent with the Plaintiff's allegations and plea for injunctive relief.

On the other hand, and in stark contrast to the opposition papers, the Plaintiffs' Motion papers include more than ample evidence of the Plaintiffs' ownership of valid and enforceable copyrights in the Therizinosaur and Segnosaur Embryo sculptures; that their claims of direct and indirect violations of the Plaintiffs' rights under the Copyright Act of 1976 (§§ 101, *et seq.*, as amended), Section 43(a) of Lanham Act, and New York's unfair competition law are strong and more likely than not to prevail at trial, and; that they will suffer irreparable injury in the event the Penguin Defendants' unauthorized and un-credited reproductions and distribution of the Plaintiffs' copyrighted works continue unabated.

## II. BACKGROUND

The Court is respectfully referred to the Complaint and declarations by the Plaintiffs and their counsel in support of Plaintiffs' Motion for a full statement of the relevant facts and attendant evidentiary submissions.

In filing their Motion, Plaintiffs sought to arrest the unlawful reproduction and sales of copies of their world renowned copyrighted sculptures under the rights and protections afforded them under the Copyright Act and to prohibit the continued display of the Works without appropriate accreditation—conduct plainly barred by § 43(a) of the Lanham Act. Pls.' Compl. ¶¶ 45–51; Pls.' Mem. of Law p. 3.

1

On January 12, 2012, the Penguin Defendants filed an opposition to Plaintiffs' Motion, chiefly claiming that the Plaintiffs have not met their burden of proof under this Circuit's prevailing judicial standards for issuing preliminary injunctions. *See generally* Penguin Defs.' Mem. of Law in Opp'n to Pls.' Mot. The fuel for the Penguin Defendants' argument is to be found in a November 30, 1995 contract between Cooley and the National Geographic Society ("**NGS**")—a document the defendants undoubtedly first encountered after this case was filed. ("**NGS-Cooley Agreement**"). *Id.* p. 3, Ex. A. Pursuant to the agreement Cooley granted NGS certain rights in the Works for one year, after which those rights reverted back to him in perpetuity. *See* Cooley Decl. in Further Supp. of Pls.' Mot. ¶ 8. The Penguin Defendants essentially contend that, notwithstanding Cooley' entitlement to the reversion of the *entirety* of rights appurtenant to the Works, NGS retained a *perpetual* right to permit other commercial operations, such as Psihoyos and the Clearinghouse Defendants to exploit the Works for profit and to allow an endless stream of others to do the same *via* sublicenses. *See* Penguin Defs.' Mem. of Law p. 3.

Whereas NGS had, in fact, contracted with photographer Psihoyos to photograph the Works for publication in the May 1996 edition of the *National Geographic* magazine (the "**NGS-Psihoyos Agreement**" is Exhibit "A" to Penguin Defendants' memorandum), it merely authorized him to photograph/ render copies for use in the publication of the May 1996 edition of the National Geographic magazine. *See* Penguin Defs.' Mem. of Law Ex. A; Cooley Decl. in Further Supp. of Pls.' Mot. ¶¶ 8–12.

Moreover, whereas there is a narrow exception to Cooley's reversion of rights in the NGS-Cooley Agreement; it merely permitted NGS to continue to reproduce the works for *NGS's* "own purposes" and to grant certain rights in the Works to ***educational or non-profit organizations and other institutions;*** nothing in the agreement permitted Psihoyos or other commercial entities to wholly disregard Cooley's copyrights and profit from the unauthorized distribution and sale of copies of the Works.

Books containing infringing material are still widely available for sale in the United States by vendors such as Amazon.com; this is so notwithstanding the Penguin Defendants' claims that they took "prompt steps" to stop further sales, distribution and marketing of copies of the Books in the United States following Plaintiffs' cease and desist letter dated November 18, 2011. Penguin Defs.' Mem. of Law p. 2; Israel Decl. in Support of Pls.' Mot. ¶¶ 4, 5, Exs. 3, 4.

### III.   ARGUMENT

### A.   PLAINTIFFS HAVE MET THE STANDARDS FOR A PRELIMINARY INJUNCTION UNDER *SALINGER V. COLTING* AND OTHER CASE LAW

The Penguin Defendants contend Plaintiffs failed to address the preliminary injunction standards set forth in *Salinger v. Colting*, 607 F.3d 68 (2d. Cir. 2010). Penguin Defs.' Mem. of Law p. 4. Yet, the Plaintiffs' analysis comprises the very same elements addressed in the *Salinger* decision. *Compare Salinger*, 607 F.3d 68 *with* Pls.' Mem. Of Law 3–16 (discussing same). In fact, nothing in the Plaintiffs' brief demands that this Court *automatically presume* the existence of irreparable harm (as the Penguin Defendants suggest); instead, Plaintiffs detail the manner in which Defendants infringed and continue to infringe Cooley's copyrights in the Works, imminently threaten injury to reputation, good will and commercial prospects, and how these injuries will be irreparable and non-compensable by money damages. *See id.* [1]

Indeed, post-*Salinger* authorities in this District are no less reluctant to grant preliminary injunctions upon a proper showing of a plaintiff's likely success on the merits, irreparable harm, and a favorable balance of hardships and public interest concerns than authorities cited by the Plaintiffs. *CJ Products LLC v. Snuggly Plushez LLC,* 2011 WL 3667750 (E.D.N.Y. Aug. 22, 2011); *see also MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004). Fully consistent with controlling authorities, it was incumbent upon the Plaintiffs to satisfy the Second Circuit's

---

[1] Moreover, Defendants omit from their discussion of *Salinger* its distinction from the case at hand. *Salinger* was issued **on appeal** from a grant of a preliminary injunction. *See, e.g., Western Supreme Buddha Ass'n Inc. v. Oasis World Peace and Health Foundation*, 2010 WL 3488134 (N.D.N.Y. Aug 30, 2010) (distinguishing *Salinger* analysis from the dispute in present case based on procedural posture).

3

preliminary injunction standard and they have done so.

B.     **PLAINTIFFS DEMONSTRATED THEIR OWNERSHIP OF COPYRIGHTS IN THE WORKS AND A LIKELIHOOD OF SUCCESS ON THE MERITS**

The Penguin Defendants allege that Plaintiffs have not shown a probability of success on the merits because "the complicated licensing arrangements plaintiffs entered into with the National Geographic Society, and the NGS's licensing arrangements with Psihoyos, demonstrate issues of fact and contractual interpretation far too substantial to support the drastic relief of preliminary injunction." Penguin Defs.' Mem. of Law p. 5. Although the Penguin Defendants go to great lengths to muddle and confuse NGS's one-page agreement with Cooley through a strained interpretation of its provisions, the agreement's purpose and intent are simple and plain.

The November 30, 1995 NGS-Cooley Agreement provided for stated consideration, Cooley's transfer of rights to the copyrights in the Works for a period of one year in connection with NGS' use of copies of the Works in a forthcoming issue of the National Geographic magazine. Penguin Defs.' Mem. of Law Ex. A (document entitled, "Letter of Agreement and Purchase Order for National Geographic Artwork"); Cooley Decl. in Further Supp. of Pls.' Mot. ¶ 9. The NGS-Cooley Agreement provided that "[o]ne year after publication the artwork will be returned to you [Brian Cooley] along with *all rights including copyright thereto*" (emphasis added).

More than four months *prior* to the NGS-Cooley agreement, NGS purportedly entered into an agreement with Psihoyos whereby NGS commissioned Psihoyos to photograph "article/Dinosaur Eggs/#06281." *See* Penguin Defs.' Mem. of Law Ex. A (the "**July 17, 1995 Letter**"). Yet, the NGS-Psihoyos Agreement never granted Psihoyos any rights in the content of the material being photographed. In fact, "[b]ecause of the cover photograph's prominence and identification with the Society," NGS even retained "all rights including copyright to any Magazine cover photograph." *Id*. Thus, with respect to the photograph of Therizinosaur featured on the cover of the May 1996 issue of National Geographic magazine, Psihoyos had absolutely no right to copyright,

4

publish and distribute copies of his own photograph even if Cooley had conferred rights with respect to the Work it depicts.

With respect to both the Segnosaur Embryo and the Therizinosaur: although the NGS-Psihoyos Agreement provided for a return of copyrights to the assigned photographs to Psihoyos ninety days after their publication[2], *Id*. Ex. A (July 17, 1995 Letter ¶ 8), Psihoyos had no right to license copies of the Works, just as the Clearinghouse Defendants had no right to sub-license copies of the Works. In this vein, the Penguin Defendants had no right to include the Works in their publications. *See* Pls.' Mem. of Law p. 6 ("the protection of the copyright owner's rights extends beyond merely protecting against unauthorized copying but includes the right to make other versions of, perform, or exhibit the work").

The Penguin Defendants seek to exploit three limited exceptions set forth in the Reversion of Rights provision of the NGS-Cooley Agreement:

> … except that you [Brian Cooley] hereby grant the society a perpetual, non-exclusive right to (1) reproduce the work for *its own purposes* without further payment, (2) to grant requests for reuse without payment *by educational and/or non-profit users*, and (3) to grant permission to other organi[z]ations to reproduce the work upon payment of an appropriate fee.

Penguin Defs.' Mem. of Law Ex. A (emphasis added).

The first of the exceptions allows NGS to continue to reproduce the work for its own purposes without future payment. The second and third exceptions to the Reversion of Rights provision provide that NGS may grant educational and non-profit entities the right to reproduce copies of the Works without cost and permit "other organizations" to reproduce the Works for a fee. In other words, NGS retained certain limited rights to continue to reproduce the Works for NGS's own purposes and to oblige requests by publicly-oriented institutions to *reuse* the Works for no fee or to *reproduce* the Works (for example, in a different medium) should they pay a fee to NGS.

---

[2] The NGS-Psihoyos agreement also warned Psihoyos that the photographer "shall make a good faith effort to ensure that your photographs will not infringe upon any right of privacy, copyright or any other proprietary right of a third party…" Penguin Defs.' Mem. of Law Ex. A (July 17, 1995 Letter, ¶ 7).

5

The document does not allow NGS to grant an unfettered license to a commercial photographer such that he might relicense the copyrights in the Works to others, only to have those others further re-license the copyright to publishers, *ad infinitum*.

Instead, to legally accomplish the contract's overarching purpose, Cooley granted NGS a copyright to the Works for one year, after which the possession and all appurtenant rights and copyrights in the Works reverted back to Cooley. The intent was for Cooley to retain the distribution rights and copyrights to the Works commencing one year after publication. For their part, the Penguin Defendants' interpretation would frustrate the very purpose of the NGS-Cooley Agreement and, as such, it must be rejected. *See* 11 Williston, Contracts, § 32:9, 32:11 (4th ed. 2009) ("the law prefers an interpretation which gives effect to all parts of the contract rather than one which leaves a portion of the contract ineffective or meaningless" . . . "'[a] contract must be construed as a whole and the intention of the parties is to be collected from the entire instrument and not from detached portions"). *See also Rex Medical L.P. v. Angiotech Pharmaceuticals (US), Inc.*, 754 F.Supp.2d 616, 620 (S.D.N.Y. 2010); *UBS Securities LLC v. Red Zone LLC*, 77 A.D.3d 575, 578, 910 N.Y.S.2d 55 (2010).

Nor did NGS grant to Psihoyos an unlimited license to reproduce the Works for profit in the NGS-Psihoyos Agreement. While NGS pledged to return "copyright in all published and unpublished photographs" from the assignment to Psihoyos ninety days after their publication, NGS never granted to Psihoyos the unrestricted right to make copies of the Works. If it were not self-evident, basic principles of property law dictate that a party may not give or assign to another more interest in property than he or she possesses.

Along these lines, NGS's contract with Psihoyos could not have conveyed *any* right to reproduce the Works because it was drafted in July 1995; the NGS-Cooley Agreement—which contains the limited NGS entitlements upon which defendants rely—was executed on November 30, 1995. Having been drafted earlier, the NGS-Psihoyos Agreement could not have granted Psihoyos any rights to Cooley's Works pursuant to these terms since it was not yet in existence.

6

Nor can there be any claim that NGS somehow orally *permitted* Psihoyos' usage of copies of the Works. The NGS-Psihoyos Agreement provided as follows: "10) This Agreement cannot be modified by written instrument signed by both of us." Penguin Defs.' Mem. of Law Ex. A (July 17, 1995 Letter). Whereas such a bestowment of rights would have undoubtedly been deemed a modification to the NGS-Psihoyos Agreement, it would have been effective only if it was in writing.

Moreover, that same paragraph (10) in the NGS-Psihoyos Agreement provides that "[n]either NGS nor you shall have the right to assign this Agreement or any of the rights or obligations thereunder." Even if he were given some kind of right to the Works—which he definitely was not—by reason of this express language, Psihoyos could not even legitimately assign any of the rights to his own *photographs* of the Works to a third party—such as Corbis, SuperStock or Getty—pursuant to the NGS-Psihoyos Agreement.

Accordingly, the Penguin Defendants did not have a valid license to reprint copies of Cooley's Works in their Books. And whereas the Plaintiffs have established their ownership of valid copyrights in the Works and furnished a detailed account of the Defendants' infringements of those copyrights, *See* Pls.' Mem. of Law p. 6–8 (establishing substantial similarity between Cooley's Works and the Penguin Defendants expressions of the Works, as well as the Penguin Defendants' access to the Works), the Plaintiffs have satisfied the requirement of demonstrating a likelihood of success on the merits. *See* Israel Decl. in Support of Pls.' Mot. ¶ 5, Ex. 4.

C. PLAINTIFFS HAVE SHOWN IRREPARABLE HARM AND THAT LEGAL DAMAGES ARE INADEQUATE

In addition to establishing likely success on the merits, the Plaintiffs have shown irreparable harm. A party can establish irreparable harm "if it shows that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *CJ Products LLC*, 2011 WL 3667750 at *6; *see also Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp.2d 616, 621 (S.D.N.Y.2010) (internal quotations and citation omitted). The *Salinger*

7

standard derives largely from the possibility of market confusion and the fact that proving "the loss of sales due to infringement is ... notoriously difficult." *Salinger*, 607 F.3d at 81 (citation omitted). Cases following *Salinger*, such as *Mint, Inc. v. Amad*, recognize the existence of irreparable harm where the plaintiff spent "large quantities of time, money and effort to develop goodwill among customers. . . ." and the products were "extraordinarily similar in appearance." *Mint, Inc. v. Amad*, No. 10 Civ. 9395(SAS), 2011 WL 1792570 (S.D.N.Y. May 9, 2011).

Plaintiffs have carried their burden here by showing that the defendants are engaged in usurping commercial and other benefits of publication by using Plaintiffs' creative works without the slightest modification. Contrary to the Penguin Defendants' contentions, licensing and accreditation is the foundation of the Plaintiffs' business. An injunction is necessary to defeat what otherwise would be a forced license without reciprocal obligation of any kind. *See, e.g., Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77 (2d Cir. 2004) (emphasizing that "injunction should be granted in copyright case if denial would amount to forced license to use creative work of another").

### D. THE BALANCE OF HARDSHIPS FAVORS PLAINTIFFS AND THERE IS A STRONG PUBLIC INTEREST IN FAVOR OF ENFORCING COPYRIGHTS

The balance of hardships between the parties is in Plaintiffs' favor. First, the Penguin Defendants' business will not be severely impacted, as they have an extensive array of non-infringing dinosaur publications that they may continue to distribute. *See* Pls.' Mem. of Law p. 15; Israel Decl. in Support of Pls.' Mot. ¶ 2, Ex. 1. Second, although the Penguin Defendants offer a conclusory allegation that injunctions against books are "against the public policy," they can obviously continue to provide such material without infringing on the Plaintiffs' copyrights. Third, as stated above, whereas the Penguin Defendants contend that the Plaintiffs' works are only a small portion of the books," the Works are prominently featured on the covers of two Books, undoubtedly serving a promotional and marketing role in enticing consumers to purchase those Books. Finally, the Penguin Defendants' disingenuous claim that "plaintiffs can be made whole by money damages" (Penguin Defs.' Mem. of Law 6) completely ignores

8

Plaintiff's loss of good will and recognition due to their unauthorized and un-credited use of the Works.

### E. PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ON THEIR LANHAM ACT CLAIM

Again, the Penguin Defendants fixate on the *Salinger* preliminary injunction standard, here contending that Plaintiffs' Lanham Act claim should fail because Plaintiffs do not expressly cite to the case. Yet, again, the Penguin Defendants overlook that even under the *Salinger* standard, the Plaintiffs have set forth enough evidence to state a very promising claim for the "reverse passing off" of Cooley's Works. Specifically, Plaintiffs have satisfied *Salinger's* mandate by alleging, *inter alia*, that the Penguin Defendants falsely described the Works in interstate commerce, thereby inducing prospective purchasers to seek additional goods or services from the Penguin Defendants, Psihoyos, or Clearinghouse Defendants, resulting in diversion of profits from the true author and copyright holder of the Works. Pls.' Mem. of Law p. 11.

The Penguin Defendants further allege that Plaintiffs' Section 43(a) Lanham Act claim is precluded by the decision in *Dastar Corp v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). *Dastar* involved a claim against a distributor of certain "Campaign" videos which included footage from plaintiff's television series but neglected to attribute the television series as the origin of the footage. *See id* (holding that "the phrase ['origin of goods'] refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods"). The Penguin Defendants argue that ***they*** and not the Plaintiffs are producers of the tangible product (Books) and thus the Plaintiffs' Lanham Act claim is foreclosed.

But the Plaintiffs do not allege any copyright ownership in the Penguin Defendants' Books; what is at issue in this case is the defendants' unlawful use and reproduction of Plaintiffs' Works, albeit cast in a different medium. In this regard, Cooley is in fact the "producer of the tangible goods"—to wit, sculptures of dinosaur eggs which he single-handedly created "using his imagination, paleontological talent, judgment and skill." Pls.' Mem. of Law p. 5. The Works are more than an idea or an

9

expression of an idea, they are unique, "three dimensional renditions of dinosaur embryos as they likely would have existed prior to hatching" and arguably the only such sculptures in existence. *Id*; Cooley Decl. in Further Supp. of Pls.' Mot. ¶ 3; Pls.' Compl. ¶ 14.

Moreover, in *Dastar* the Supreme Court noted that, "had the defendant bought some of plaintiff's videotapes and merely repackaged them as its own, this would have been a proper false designation of origin claim." *Dastar Corp.*, 539 U.S. at 31. The Penguin Defendants repackaged unauthorized reproductions in a different medium, abrogating any sign of the Works' true ownership and misleading consumers as to the origin of the materials depicted in the Books. Such conduct exceeds copyright infringement. Defendants are profiting from holding themselves out as the true owners and creators of art derived from Cooley's artistic talent.

The Penguin Defendants' contention that the Works are only present "on small portion of the books" is specious inasmuch as the *Segnosaur Embryo* comprises the majority of the ***front cover*** of the Books and will be the key to purchases made by tens of thousands of purchasers and potential purchasers of the Books. *See* Penguin Defs.' Mem. of Law p. 6; Pls.' Mem of Law at 12. The Penguin Defendants have deprived the Plaintiff of the opportunity to have his name associated with this signature image of his work in the minds of tens, if not hundreds of thousands of viewers. The value of contracts coming by way of likely referrals is inestimable.[3] *See Mint, Inc.*, 2011 WL 1792570 at *3 (holding that plaintiff showed that it will be irreparably harmed without a preliminary injunction due to the loss of market and pricing power); *see also Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975–76 (Fed.Cir. 1996) (loss of market opportunities cannot be quantified or adequately compensated and is evidence of irreparable harm); *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362

---

[3] Moreover, unlimited distribution of the Works without Cooley's authorization deprives Plaintiffs of any control over the manner in which their Works are depicted. In this regard, damages are not enough to compensate the author and holder of copyrights in the Works for the loss of recognition and control over his creative artwork.

(Fed.Cir. 2008) (likelihood of price erosion and loss of market position are evidence of irreparable harm).

### F. PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ON THEIR NEW YORK UNFAIR COMPETITION CLAIM

The Penguin Defendants claim that the Plaintiff's request for relief under the New York unfair competition law is preempted by federal copyright laws. Beyond this *bullet point*, the Penguin Defendants simply state that "[n]o extended discussion is necessary." Penguin Defs.' Mem. of Law p. 9. But recent decisions in this District demonstrate that an allegation of copyright infringement does not, as the Penguin Defendants would have this Court believe, automatically preclude a plaintiff's claim under the New York unfair competition law stemming from the same violation. *See, e.g., Yurman Design, Inc. v. PAJ, Inc.*, 29 Fed.Appx. 46 (2d Cir. Feb. 8, 2002) (affirming district court's issuance of preliminary injunction and holding that defendant infringed plaintiffs' copyrights, violated the Lanham Act and New York unfair competition laws).

### IV. CONCLUSION

Because Plaintiffs have stated a valid claim for copyright infringement and violations of the Lanham Act and New York unfair competition laws, demonstrated a likelihood of success on the merits of those claims, their exposure to certain irreparable injury, that a balance of hardships is in their favor, and that the public interest would be served by issuance of a preliminary injunction, Plaintiffs have met their burden on this Motion and respectfully request that this Court issue preliminary injunction against all defendants in this action, including the Penguin Defendants and grant whatever further relief that the Court deems just and proper.

Dated: New York, NY
January 16, 2012

                        Respectfully Submitted:
                        Sam P. Israel, P.C.
                        By: *S// Sam P. Israel*
                        **N.Y. Fed. Bar No: SPI0270**
                        **Sam P. Israel, Esq.**

1 Liberty Plaza – Twenty Third Floor
New York, NY 10006
Tel: 212-201-5345; Fax: 212-201-5343
Email:SMisrael@aol.com

*Attorney for Brian Cooley and Cooley & Co. Ltd.
Plaintiffs*