UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN COOLEY and COOLEY & CO. LTD.<br>　　　　　　　　　　Plaintiffs,<br><br>　　-against-<br><br><br>PENGUIN GROUP (USA) INC., DK PUBLISHING, INC. an affiliate of PENGUIN GROUP (USA) INC., DORLING KINDERSLEY LIMITED. an affiliate of PENGUIN GROUP (USA) INC., GETTY IMAGES, INC., CORBIS CORPORATION, RGB VENTURES LLC D/B/A SUPERSTOCK and LOUIS PSIHOYOS,<br><br>　　　　　　　　　　Defendants. | Index No. 12-CV-0001 |

# DECLARATION OF BRIAN COOLEY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND IN REPLY TO DEFENDANTS' OPPOSITION PAPERS

　　**BRIAN COOLEY,** pursuant to 28 U.S.C. § 1746, declares under penalties of perjury that the following is true and correct:

　　1.　I am an individual Plaintiff in this matter and a co-owner of Cooley & Co., Ltd.—a Canadian company in the business of creating three-dimensional models, primarily dinosaurs, for use or sale by or to its clients. I submit this declaration in further support of the Plaintiffs' Motion for Preliminary Injunction, and in order to arrest the unauthorized and unaccredited reproduction of my world renowned copyrighted sculptures.

　　2.　In or about 1995, I designed and created two three-dimensional models of baby dinosaurs—one is a broken-open dinosaur egg with an exposed Segnosaur embryo and another is an oblong Therizinosaur egg sculpture (the "**Works**"). I subsequently registered the oblong sculpture as "*Therizinosaur*" (Registration No. VA1-

793-313) and the broken-open egg sculpture as "*Segnosaur embryo*" (Registration No. VA1-793-315) with the United States Copyright Office, and assigned ownership of the copyrights to my company, Cooley & Co. Ltd. by way of written agreement.

3. I recently discovered that the above-captioned defendants have been copying, marketing, distributing and profiting from unauthorized and unaccredited use of my Works. Upon my discovery of this information, I requested a temporary restraining order and a preliminary injunction in order to abate the irreparable injury that these defendants have caused and will continue to cause to my career, reputation, and commercial prospects, should such conduct continue unrestrained.

4. I understand that on January 12, 2012, defendants DK Publishing, Inc. and its affiliated entities ("**Penguin Defendants**") filed an opposition to my request for preliminary injunction, wherein Yuki A. Hirose (Penguin Defendants' Associate General Counsel) alleged that Penguin Defendants believed that they had permission to reproduce, market and distribute unauthorized photographs of my Works in "*Dinosaurs: A Visual Encyclopedia*" (DK Publishing, Inc. 2011), "*Dinosaurs: A Children's Encyclopedia*" (Dorling Kindersley Limited 2011), and "*Ask a Dinosaur*" (DK Publishing, Inc. 2011) (the "**Books**").

5. I have also come to learn from the opposition papers of the Penguin Defendants and other defendants in this action that Penguin Defendants allegedly did not know that they needed to credit me as the model maker in the Books.

6. But the Penguin Defendants credit virtually every other model maker whose artistic creations are illustrated in the Books.

7. Not only did the above-captioned defendants fail to make any effort to obtain proper authorization to display and distribute my Works, but Penguin Defendants now claim that my 1995 Agreement with the National Geographic Society (NGS) somehow challenges the validity of my copyrights and distribution rights in the Works.

8. On November 30, 1995, I entered into an agreement with NGS (the "**Agreement**") because NGS wished to feature my Works in its May 1996 issue of the

National Geographic magazine (the "**Magazine**"). In order to do so, but before my negotiations with NGS were finalized, I understand that NGS commissioned a photographer, Louie Psihoyos, to photograph sculptures of dinosaur eggs for the sole purpose of including their images in the Magazine.

9. In order to effectuate NGS's intent to feature my Works in the Magazine, I granted to NGS my distribution rights and copyrights in the Works for one year from the publication of the Magazine on one condition: that after the lapse of said year, all such rights in the Works will revert back to me forever.

10. As part of our negotiations (and as reflected in my Agreement with NGS), we agreed that, notwithstanding the automatic reversion of my rights in the Works, NGS will retain certain limited rights to continue to reproduce the Works for NGS's own purposes, including the right to grant educational and/or non-profit organizations permission to *reuse* the Works for free, or, if such educational and/or non-profit organizations requested to *reproduce* the Works (presumably in some other medium), they would be able to do so upon a payment of an appropriate fee.

11. Consistent with my interpretation of the Agreement, it was never my intention to grant to NGS a perpetual right to profit from commercial distribution of my Works by permitting any commercial entity to reproduce the Works upon the payment of a fee to NGS. Such conduct would essentially open the door for any third party to disregard my copyrights and profit from unauthorized use of my Works, thereby rendering meaningless the rights that had reverted back to me under the Agreement. Indeed, had I known that such an interpretation were even contemplated, I would have never entered into the Agreement.

12. It was my understanding during the negotiations and execution of the Agreement, that no third-party, for-profit entity would possess unlimited rights to distribute and profit from my Works without my authorization and accreditation. In this regard, none of the above-captioned defendants had any rights or licenses to reproduce my Works in any medium without my permission. Whereas Mr. Psihoyos

unilaterally undertook to distribute copies of my Work for commercial purposes, his conduct is contrary to my Agreement with NGS.

13. I understand that the above-captioned defendants continue to violate my copyrights under the Copyright Act of 1976, misrepresent to consumers the true origin of my Works, and commercially profit from passing off my unique sculptures as their own.

14. Accreditation is essential to my business. Of equal, if not greater importance are my reputation and the good will that I have established over the past thirty years of working as a sculptor of dinosaur models. Indeed, part of my success can be attributed to a high degree of control I retain over the creative process and exhibition of my artworks. Although impossible to quantify, such considerations are of paramount importance because they affect the manner in which my artwork is presented to the public and the impression that it leaves on observers and prominent clients such as NGS.

15. Consequently, and in accordance with the foregoing, money damages are not an adequate remedy to compensate for my loss of creative control over the manner in which my Works are presented to the public, damage to my reputation, and loss of good will. Thus, I respectfully request that this Court grant an order for a preliminary injunction, along with all actual damages, costs, attorney's fees, and whatever other relief that this Court deems just, proper and equitable, as requested in the attendant complaint.

**Dated New York, New York**
**January 16, 2012**                                                                                   s/Brian D. Cooley