# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BRIAN COOLEY and COOLEY & CO. LTD., | Case No. 12-cv-0001 (LAK) |
| *Plaintiffs*, | Hon. Lewis A. Kaplan |
| v. | **ECF CASE**<br>**Filed Electronically** |
| LOUIS PSIHOYOS, |  |
| *Defendant*. |  |

## <u>MEMORANDUM OF LAW IN SUPPORT OF</u>
## <u>DEFENDANT PSIHOYOS' MOTION FOR SUMMARY JUDGMENT</u>

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
The Chrysler Building
405 Lexington Ave., 26th Floor
New York, NY 10174
T: (212) 907-6677
F: (646) 308-1178

*Counsel for Defendant Louis Psihoyos*

DATED:  June 29, 2012

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................. 2

SUMMARY OF ARGUMENT ............................................................................................... 3

ARGUMENT ..................................................................................................................... 5

I.      APPLICABLE STANDARD OF REVIEW ................................................................. 5

II.     PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIM (COUNT I)
        FAILS ON NUMEROUS GROUNDS. ....................................................................... 5

        A.      NGS Owned "All Reproduction Rights And Copyrights" At The
                Time That NGS Granted Psihoyos Permission To Photograph The
                Models. .................................................................................................. 5

        B.      Plaintiffs' Copyright Claim Fails Because NGS, The Copyright
                Owner At The Time, Authorized Psihoyos To Create The Photos
                And Expressly Granted Copyrights In The Photos To Psihoyos. ............ 8

        C.      Plaintiffs' Claims Are Precluded By Implied License Because
                Cooley Authorized Psihoyos To Photograph The Models. .................... 10

        D.      NGS Did Not—Indeed, Could Not—Assign To Cooley Any Rights
                To Psihoyos' Photos, Including Any Right To Control Or Object To
                Any Subsequent Licensing Of The Photos. ........................................... 12

        E.      Plaintiffs' Infringement Claims Are Precluded By Laches And
                Estoppel. ............................................................................................... 15

        F.      Plaintiffs' Claims Are Barred By The Statute Of Limitations. .............. 17

        G.      Plaintiffs Failed To Satisfy The Statutory Prerequisite For Bringing
                Copyright Claims. .................................................................................. 18

III.    PLAINTIFFS' CONTRIBUTORY AND VICARIOUS INFRINGEMENT
        CLAIMS (COUNTS III & IV) FAIL AS A MATTER OF LAW. ................................ 20

IV.     PLAINTIFFS' LANHAM ACT CLAIM (COUNT II) IS PREEMPTED
        BY THE COPYRIGHT ACT AND WITHOUT MERIT. ............................................. 21

V.      PLAINTIFFS' "UNFAIR COMPETITION" CLAIM (COUNT V) IS
        PREEMPTED AND HAS NO MERIT. ..................................................................... 25

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**CASES**

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971 (2nd Cir. 1991) ................................................................................................. 10, 19

*Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926 (S.D.N.Y. 1996) ............................................................................................. 25

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................. 5

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009) ............................................................................................. 20

*Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628 (S.D.N.Y. 2000) ...................................................................................................... 23

*Atrium Group De Ediciones Y Publicaciones, S.L. v. Harry N. Abrams, Inc.*, 565 F. Supp. 2d 505 (S.D.N.Y. 2008) ........................................ 22

*Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235 (S.D.N.Y. 2004) ............................................................................................. 17

*Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83 (2d Cir. 2002) ................................................................................................. 5

*Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F.2d 829 (11th Cir. 1990) ......................................................................... 20

*Carson v. Dynegy, Inc.*, 344 F.3d 446 (5th Cir. 2003) ............................................... 16

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ............................. 6, 16

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ...................................................................................................... 22

*DeCarlo v. Archie Comic Publ'ns, Inc.*, 127 F. Supp. 2d 497 (S.D.N.Y. 2001) ............................................................................................. 11

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) .......................... 20

*Gary Friedrich Enter., LLC v. Marvel Entmt., Inc.*, No. 08-cv-1533 (KBF), 2011 WL 6817709 (S.D.N.Y. Dec. 28, 2011) ............................... 7

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159 (2d Cir. 1971) ......................................................................................... 20

*Haas v. Leo Feist, Inc.,* 234 F. 105 (S.D.N.Y. 1916) .................................................. 16

*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996) ...................................... 11

*LaSalle Bank Nat'l Assn. v. Nomura Asset Capital Corp.*, 424 F.3d 195 (2d Cir. 2005) .................................................................... 13

*Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204 (S.D.N.Y. 2000) ...................................................................... 13

*Levine v. Landy*, 832 F. Supp. 2d 176 (N.D.N.Y. 2011) ........................... 22

*Lipton v. Nature Co.*, 71 F.3d 464 (2nd Cir. 1995) .................................... 18

*Margo v. Weiss*, 213 F.3d 55 (2d Cir.2000)................................................ 18

*Marvel Entm't, Inc. v. Kellytoy (USA), Inc.,* 769 F. Supp. 2d 520 (S.D.N.Y. 2011) ........................................................................ 5

*Merch. v. Levy*, 92 F.3d 51 (2d Cir. 1996)................................................. 17

*Moran v. London Records, Ltd.*, 827 F.2d 180 (7th Cir. 1987) ...................... 7

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) ...................................................................................... 20

*Playboy Enter. v. Dumas*, 53 F.3d 549 (2d Cir. 1995) .................................. 6

*Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (JSR), 2011 WL 5980423 (S.D.N.Y. Nov. 29, 2011)........................................ 20

*Random House, Inc. v. Rosetta Books LLC*, 150 F. Supp. 2d 613 (S.D.N.Y. 2001) .................................................................... 13

*Reed Elsivier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010)........................... 19

*Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091 (2d Cir. 1993)........................................................................ 13

*Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579 (S.D.N.Y. 2007) .................................................................... 23

*Skor–Mor Prod., Inc. v. Sears, Roebuck & Co.*, No. 81-cv-1286, 1982 WL 1264 (S.D.N.Y. May 12, 1982) ....................................... 19

*Stone v. Williams*, 970 F.2d 1043 (2d Cir. 1992)...................................... 18

*Tomas v. Gillespie*, 385 F. Supp. 2d 240 (S.D.N.Y. 2005)........................ 17

*Universal City Studios, Inc. v. T-Shirt Gallery, Ltd.*, 634 F. Supp.
1468 (S.D.N.Y. 1986) ........................................................................................ 25

*Williams v. Smith,* 781 F.2d 319 (2d Cir. 1986) .......................................................... 5

*Zuill v. Shanahan*, 80 F.3d 1366 (9th Cir. 1996) ........................................................ 16

OTHER AUTHORITIES

2 Paul Goldstein, Copyright § 6.0 (1996) ...................................................................... 20

3 Nimmer on Copyright § 10.03[A][7] (1996) .............................................................. 12

3 Nimmer on Copyright § 12.02[B] ............................................................................... 19

4 Nimmer on Copyright § 13.07[A] (2002) ................................................................... 16

FEDERAL STATUTES AND RULES

15 U.S.C. § 1125(a) ....................................................................................................... 22

17 U.S.C. § 101(2) ........................................................................................................... 6

17 U.S.C. § 103(a) ........................................................................................................... 9

17 U.S.C. § 106 ...................................................................................................... 8, 9, 14

17 U.S.C. § 201(b) ...................................................................................................... 5, 6

17 U.S.C. § 201(d)(1) .................................................................................................... 15

17 U.S.C. § 301 .............................................................................................................. 22

17 U.S.C. § 411(a) ......................................................................................................... 19

17 U.S.C. § 501(b) ......................................................................................................... 18

17 U.S.C. § 507(b) ......................................................................................................... 17

Fed. R. Civ. P. 56(a) ........................................................................................................ 5

Defendant Louis Psihoyos ("Psihoyos"), by and through undersigned counsel, hereby submits this Memorandum of Law in support of his Motion for Summary Judgment.  Psihoyos moves the Court for summary judgment on <u>all claims</u> asserted against him by Plaintiffs Brian Cooley ("Cooley") and Cooley & Co. Ltd. (collectively "Plaintiffs").

### INTRODUCTION

Plaintiffs allege that Psihoyos infringed their copyrights in two model sculptures titled "Segnosaur Embryo" and "Therizinosaur" that Cooley created in 1995.  Cooley created the models under a written agreement ("Cooley Agreement") with the National Geographic Society ("NGS") for a story entitled "Dinosaur Eggs."  *See* Nelson Decl. Ex. 1 ("Cooley Agmt.").  This agreement is unequivocal that NGS acquired "all reproduction rights and copyrights" in the models and did not convey any rights to Cooley until one year after the "Dinosaur Eggs" story was published in the May 1996 edition of *National Geographic* magazine.  *Id.*

Prior to Cooley's involvement in the project, NGS entered into a separate agreement with Psihoyos ("Psihoyos Agreement") pursuant to which NGS engaged Psihoyos as a "freelance photographer" to create images for the story, including photographing the models commissioned from Cooley.  *Id.* Ex. 2 ("Psihoyos Agmt.").  Under this agreement, NGS also granted Psihoyos copyrights in the photos 90 days after publication of the story, including Psihoyos' photos of the Cooley models that NGS commissioned and owned at the time.  *Id.* at ¶ 8.

Although NGS subsequently returned copyrights in the models to Cooley subject to certain conditions, the Cooley Agreement unquestionably confirms that NGS owned "all reproduction rights and copyrights" in the models at the time that it authorized Psihoyos to photograph the models and at the time that it granted Psihoyos copyrights in the photos.  Indeed, Plaintiffs fully admit that they did not own any copyrights in the Cooley Models and that NGS

1

owned and held all copyrights in the models during this crucial period.  *Id.* Ex. 3 at 2, Nos. 3-4.

## FACTUAL BACKGROUND

### *The "Dinosaur Eggs" Story*

Psihoyos is a preeminent photographer and an Academy Award-winning filmmaker. Psihoyos previously worked as a freelance photographer for NGS.  *See* Nelson Decl. Ex. 4 (Feb. 3, 2012 Affidavit of Louis Psihoyos) ("Psihoyos Aff") ¶¶ 3-4.  One of Psihoyos' areas of specialty was photographing archaeological excavations and dinosaur artifacts.  Psihoyos created images for numerous dinosaur-themed stories that were published in *National Geographic*.  *E.g.*, Nelson Decl. Ex. 5.

NGS engaged Psihoyos to create visual work for the "Dinosaur Eggs" story in July 1995, several months prior to the Cooley's involvement in the project.  *See* Psihoyos Agmt. at 1.  In fact, it was Psihoyos who actually proposed the concept for the story to NGS based on his prior work photographing dinosaur fossils, including the dinosaur embryo fossils discovered by Psihoyos' friend and neighbor, Charlie Magovern, that were the basis for Cooley's models. Indeed, Mr. Magovern named the therizinosaur fossil "Baby Louie" as a tribute to Psihoyos. Psihoyos Aff. ¶¶ 8-9.

Cooley's involvement in this project was limited to creating models that were merely one part of the larger story conceived by Psihoyos.  Cooley created his "Therizinosaur" model based on an embryo fossil that is named after Psihoyos.

### *Psihoyos' Creation of the Photographs*

Sometime in December 1995, Psihoyos traveled to Cooley's studio in Canada to photograph the models.  Cooley admits that he granted Psihoyos access to his studio and the models, was present during the photo shoot, and even helped Psihoyos make changes to the

2

models during the photo shoot.   *See* Nelson Decl. Ex. 6 (Excerpts from Deposition of Brian

Cooley) ("Cooley Dep.") at 25:5-14; 27:11-18.   Cooley admits that he authorized Psihoyos to

photograph the models and concedes that he never expressed any objections or restrictions to

NGS or Psihoyos regarding Psihoyos' subsequent use of the photos.   *Id.* at 139:9-11.

### The NGS Agreements

Plaintiffs previously argued to this Court that Cooley was "the owner of the attendant

copyrights" in the models "at all relevant times," including when Psihoyos created "derivative

copies" of the Cooley models.   (*See* Docket No. 28 at 3-4.)   Plaintiffs wisely abandoned this

baseless position and now fully admit that NGS owned copyrights when Psihoyos photographed

the models and when NGS granted copyright in the photos to Psihoyos.   Nelson Decl. Ex. 3 at 2,

Nos. 3-4.   These conclusions cannot be seriously disputed given that Cooley's agreement with

NGS unequivocally provides that NGS acquired "*all reproduction rights and copyrights*" in the

models and did not grant Cooley any rights until one year after publication.

### SUMMARY OF ARGUMENT

NGS owned all copyrights in the models at the time that it authorized Psihoyos to

photograph them.   NGS also owned all copyrights in the models at the time that it expressly and

irrevocably granted Psihoyos copyrights in the photos.   Although NGS subsequently granted

limited rights in the models to Cooley, NGS did not convey any rights to Cooley until one year

after publication, which was over a year after Psihoyos was authorized to create the photos and

nine months after NGS granted Psihoyos copyrights.   The rights that NGS conveyed to Cooley

were limited in nature and prospective only.   The rights conveyed to Cooley did not operate

retroactively and did not vacate any prior licenses granted by NGS or invalidate any derivatives

authorized by NGS.   NGS did not grant Cooley any rights in Psihoyos' photos.

These indisputable facts are dispositive of Plaintiffs' copyright claims against Psihoyos. Because NGS (and Cooley) authorized Psihoyos to photograph the models, Psihoyos' photos cannot be "unauthorized" derivatives or copies.  When NGS granted Psihoyos copyrights in the photographs, Psihoyos necessarily obtained all rights attendant to copyright ownership, including the right to license his photos without any restrictions other than those set forth in his agreement with NGS.  Nothing in the Psihoyos Agreement provides that the copyrights granted to Psihoyos were subject to any restrictions, and the agreement certainly did not provide that Psihoyos would be divested of his right to license his photos or that he needed to obtain a further grant of rights from Cooley when NGS subsequently conveyed limited rights in the models to Cooley. Likewise, nothing in the Cooley Agreement indicates that Cooley obtained copyrights in the models free and clear of whatever uses, licenses, and derivative works that NGS already had authorized.  And there certainly is no language in the Cooley Agreement that suggests that the rights assigned to Cooley—which related only to the *models*, not any derivative works that NGS authorized while it owned the models—operated retroactively to nullify the irrevocable rights granted to Psihoyos in the *photographs* that NGS had authorized.  The agreement between NGS and Cooley did not grant Cooley any rights in or authority to control or object to the photographs that NGS authorized Psihoyos to create.  And Cooley never had any right to restrict NGS' ability to authorize the creation of derivative works prior to NGS' granting rights in the models to Cooley.  And even if Cooley had bargained for such rights, his claims would sound in contract and lie entirely against NGS, not against Psihoyos.  Moreover, even if Cooley held any rights in the models at the time, Cooley admits that he authorized Psihoyos to create the photographs and did not advise Psihoyos of any limit on Psihoyos' inherent right to license the photos he created.

Plaintiffs' claims in this action are meritless.

4

**ARGUMENT**

**I.      APPLICABLE STANDARD OF REVIEW**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the moving party, Psihoyos bears the initial burden of showing that this threshold has been met. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir. 1986). If this threshold is met, the burden shifts to Plaintiffs to "'set forth specific facts showing that there is a genuine issue for trial,'" and Plaintiffs cannot rest on the "allegations of the pleadings." *Marvel Entm't, Inc. v. Kellytoy (USA), Inc.,* 769 F. Supp. 2d 520, 52324 (S.D.N.Y. 2011) (quoting Williams, 781 F.2d at 323); accord *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 91 (2d Cir. 2002). If the evidence offered by Plaintiffs "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).

**II.     PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIM (COUNT I) FAILS ON NUMEROUS GROUNDS.**

**A.      NGS Owned "All Reproduction Rights And Copyrights" At The Time That NGS Granted Psihoyos Permission To Photograph The Models.**

The agreement between NGS and Cooley is unambiguous that NGS acquired "all reproduction rights and copyrights" in the models and held these rights when it authorized Psihoyos to create his photographs and when NGS granted copyrights in the photos to Psihoyos.

NGS commissioned Cooley to create the models as works-for-hire within the meaning of 17 U.S.C. § 201(b). NGS engaged Cooley specifically to create models for use in the "Dinosaur Eggs" project and required that Cooley accurately depict particular dinosaur embryo fossils, including the "Baby Louie" fossil previously photographed by Psihoyos. *See* Cooley Agmt. at 1. The agreement between NGS and Cooley required Cooley to submit his "rough sculpture" to

5

NGS for review and approval before NGS would authorize him to proceed to "final art." *Id.* NGS also retained final approval over all "artistic and editorial merits" and the "historical and factual accuracy" of Cooley's works. *Id.* The agreement also provides that NGS was to acquire all copyrights in the models. *Id.*

These provisions, each of which was set forth in a written agreement signed by both parties prior to Cooley's creation of the final models, confirm that Cooley's models were created for NGS as "works for hire" within the meaning of 17 U.S.C. § 101(2). *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 743 (1989) ("*Reid*") ("unifying feature" of "specially ordered or commissioned" prong of the work-for-hire test is that they are "prepared at the instance, direction, and risk of a publisher or producer"); *Playboy Enter. v. Dumas*, 53 F.3d 549, 560 (2d Cir. 1995) (holding legends stamped on check are sufficient to evidence a work-for-hire relationship where stamp indicates copyright vests in commissioning party). Because Cooley's work satisfies the "specially ordered or commissioned" test, it is not relevant that Cooley was not an employee of NGS. *See Reid*, 490 U.S. at 743.

NGS also confirmed that it commissioned the models as works-for-hire, testifying that it understood and intended the agreement to establish a work-for-hire arrangement pursuant to which NGS would own and hold all copyrights in the models until one year after publication of the "Dinosaur Eggs" story. *See* Nelson Decl. Ex. 7 (Excerpts from Fed. R. Civ. P. 30(b)(6) Deposition of NGS) ("NGS Dep."), at 23:21—24:13; 25:3—26:10; 27:13-20.

As works-for-hire, the copyrights in the models vested in NGS, not Cooley, and copyright was transferred to Cooley only by operation of the written agreement between the parties. *See* 17 U.S.C. § 201(b).

Even if Cooley's models were not works-for-hire, the Cooley Agreement is unequivocal

that NGS acquired "***all reproduction rights and copyrights in the work***" and retained those rights, in full, until "one year after publication." Cooley Agmt. at 1 (emphasis added).

Therefore, whether by operation of statute or by contract, NGS, not Cooley, held "all reproduction rights and copyrights" in these models from the time of their creation until May 1997. *See Gary Friedrich Enter., LLC v. Marvel Entmt., Inc.*, No. 08-cv-1533 (KBF), 2011 WL 6817709, at *5 (S.D.N.Y. Dec. 28, 2011) ("legend of [copyright] assignment that became operative upon endorsement" divested creator of copyright regardless of whether work was made for hire). Although NGS did agree to transfer limited copyrights to Cooley, the agreement is unambiguous that this assignment did not occur until "[o]ne year after publication."[1] Cooley Agmt. at 1. Because the "Dinosaur Eggs" article was published in the May 1996 edition of *National Geographic*, Cooley did not obtain any such rights until at least April 1997.

This language discredits Plaintiffs' prior claim that Cooley held rights in these models "at all relevant times." Indeed, Plaintiffs now fully admit that NGS owned copyrights in the models until NGS transferred copyrights to Cooley in May 1997 and thus Cooley had no rights in the models when Psihoyos photographed the models and acquired copyrights in the models. *See* Nelson Decl. Ex. 3 at 2, Nos. 3-4.

---

[1] Despite this clear language, Plaintiffs previously argued that the Cooley Agreement actually created an "equitable trust" in favor of Cooley and that "at all relevant times Cooley alone enjoyed the bundle of rights exclusively conferred upon a copyright owner under the Act[.]" (*See* Docket No. 28 at 13.) The Cooley Agreement contains no language supporting Plaintiffs' position, and certainly nothing that would overcome the express provision vesting "all reproduction rights and copyrights" in NGS. In fact, the notion that NGS and Cooley held co-extensive rights during this period is discredited by the agreement itself, which provides that Cooley could not use or reproduce the works "in any form without written permission from NGS for one year from the date of publication." (*Id.*) Such language is hardly indicative of Cooley holding an "equitable trust" in reproduction rights during this period. Plaintiffs' equitable trust argument also is discredited by NGS' testimony that the agreement was intended as a work-for-hire arrangement. *See Moran v. London Records, Ltd.*, 827 F.2d 180, 183 (7th Cir. 1987) (rejecting argument that "beneficial trust" existed in a work-for-hire arrangement). Plaintiffs' "equitable trust" position also conflicts with the fact that the rights later assigned to Cooley were limited and incomplete. For instance, NGS retained certain "perpetual" rights in the models, including the right "to grant permission to other organisations [sic] to reproduce the work upon payment of an appropriate fee." Cooley Agmt. at 1(3).

7

**B.** **Plaintiffs' Copyright Claim Fails Because NGS, The Copyright Owner At The Time, Authorized Psihoyos To Create The Photos And Expressly Granted Copyrights In The Photos To Psihoyos.**

Because the Cooley Agreement is unequivocal that NGS held "***all***" reproduction rights and copyrights" in the models, NGS controlled all rights recognized under Section 106 of the Copyright Act, including the rights "to reproduce the copyrighted work in copies" and "to prepare derivative works based upon the copyrighted work." *See* 17 U.S.C. §§ 106(1)-(3).  NGS exercised these rights by granting permission to Psihoyos to create photographs of these models and agreeing that he would own "the copyright in all published and unpublished photographs," including the right to control the subsequent licensing and use of his photos. *See* Psihoyos Agmt. at 2, ¶ 8.  NGS granted copyrights in the photos to Psihoyos "[n]inety days after publication," which was a full nine months before Cooley obtained *any* rights in the models. *Id.*  During this time, Cooley held no rights in the models and Cooley's agreement with NGS did not preclude NGS from granting such rights to Psihoyos.

The rights in the photographs that NGS granted to Psihoyos included all attendant rights to copyright ownership, including the right to authorize subsequent licensing, without any restrictions other than those set forth in the agreement between NGS and Psihoyos. *See* Psihoyos Agmt. at 2-3, ¶ 8.  Nothing in the Psihoyos Agreement divested Psihoyos of his right to license his photos or required that he need to obtain a further grant from Cooley when the rights to the underlying models reverted to Cooley. *Id.*

Likewise, nothing in the Cooley Agreement indicates that Cooley obtained copyrights in the models free and clear of any prior licenses that already had been granted by NGS.  On the contrary, the Cooley Agreement references only potential *future* licenses by NGS, not any prior licenses already granted or any derivative works already authorized, and thus the Cooley

8

Agreement confirms that the rights granted to Cooley are *prospective* only.  *See* Cooley Agmt. at 1.  Moreover, the rights assigned to Cooley, by their very terms, relate only to the *models*, not any derivative works or photographs that NGS authorized while it owned the models.  *Id.*

Plaintiffs previously attempted to confuse the issue and mislead the Court by arguing that Psihoyos obtained only a copyright in his original contributions to the photographs and, therefore, did not have the right to license the photos without a further grant of rights from Cooley.[2]  (*See* Docket No. 28 at 6-7.)  This argument entirely misses the point.  Regardless of whether Psihoyos' works are sufficiently original to warrant their own copyright protection, it is undisputable that Psihoyos' photos were *authorized* by NGS, the owner of all rights in the models at the time, and it is beyond dispute that NGS intended to allow Psihoyos to subsequently license his photos.  Because NGS owned "all reproduction rights and copyrights" in the models, NGS unquestionably had authority to authorize Psihoyos to create either "copies" or "derivative works" of the models.  *See* 17 U.S.C. § 106.  And because NGS (and Cooley) authorized the creation of the photos, Plaintiffs cannot prevail on their claim that Psihoyos' copying was unauthorized because 17 U.S.C. § 103(a) prohibits only copies or derivative works that include preexisting material that "has been used unlawfully."  Plaintiffs cannot possibly establish that Psihoyos used any material "unlawfully" under Section 103(a) given that he was authorized by both the copyright holder (NGS) and the model maker (Cooley) to photograph the models.

---

[2] Cooley previously argued that there was some doubt as to whether NGS owned copyrights in the models because NGS delayed paying Cooley.  Discovery discredited this argument.  Cooley invoiced NGS for his work on December 5, 1995 and NGS made payment on December 19, 1995.  *See* Nelson Decl. Exs. 8 & 9.  Psihoyos' payments from NGS confirm that the photographed the Cooley sculptures sometime between "November 18 - December 20, 1995."  *Id.* Ex. 10.  Cooley thus cannot demonstrate that NGS delayed unreasonably in making payment or that Psihoyos photographed the models prior to NGS making payment to Cooley.  In any event, Plaintiffs admit that NGS made payment in full.  *Id.* Ex. 2 at 2, No. 2.  Cooley also admitted during his deposition that he never made any objection to NGS based on any delay in payment, never rescinded his agreement with NGS based on an alleged breach of contract by NGS, and never objected to Psihoyos photographing the models.  Cooley Dep. at 50:13—51:4.

Moreover, NGS not only authorized Psihoyos to create the photographs, it also expressly granted him the copyrights in the photographs. *See* Psihoyos Agmt. at ¶ 8. No case law restricts Psihoyos' rights to reproduce and distribute his photos under these circumstances, where the rightful copyright owner authorized Psihoyos to create these photographs and then granted him the copyrights to those photographs. Indeed, because Cooley did not have any rights in the photos until at least April or May 1997 and the assignment from NGS did not include the right to bring claims for any unauthorized copying prior to that date, Plaintiffs do not have any basis to object to the rights granted to Psihoyos by NGS. *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2nd Cir. 1991) ("[I]f the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them.")

Any claims that Cooley may have regarding the creation or licensing of Psihoyos' photos lies against NGS only. As Psihoyos testified, he understood NGS to be the copyright owner of the models he was photographing, and he had no reason to suspect that any rights in the models was going to revert at any time to Cooley. *See* Psihoyos Aff. at ¶¶ 12-13. NGS did not advise Psihoyos of any grant of rights in the models to Cooley, and NGS did not impose any restrictions on Psihoyos' normal rights to license his photos. *Id.* On the contrary, discovery produced by NGS confirmed that NGS shared Psihoyos' understanding of the agreements and rights conveyed to Psihoyos. *See infra* at 14. Thus, if Cooley truly believes that his rights have been violated, his only recourse must be against NGS, not Psihoyos, who acted at all times in good faith and did nothing other than exercise the legitimate rights that he believed he had been granted by NGS.

**C.   Plaintiffs' Claims Are Precluded By Implied License Because Cooley Authorized Psihoyos To Photograph The Models.**

Even if Cooley's (now abandoned) argument that he owned copyrights in the models at the time that Psihoyos created his photograph had any merit—which it does not—Plaintiffs'

claims are barred by the implied license that Cooley granted to Psihoyos.   It is undisputed that Cooley created the models for NGS for the express purpose of being photographed by Psihoyos. Cooley also granted Psihoyos access to his studio and the models, was present when Psihoyos photographed the models, and even provided assistance during the photo shoot.  Cooley Dep. at 25:5-14 ("[NGS] had my permission to let Mr. Psihoyos into my studio to photograph these sculptures."); 27:11-18 ("I had no problem at all [with Mr. Psihoyos being there or taking the photographs].  In fact, I thought we got along very well."); 139:9-11 ("Q. [Y]ou authorized the creation of the photographs? A. I did.").   Cooley also testified that he routinely permits his clients to make use of photographs that they create of his work and that he considers the grant of such rights to be "part of the package" that he grants to his clients, including NGS.  *Id.* at 130:11-20 ("I feel that as part of the package my clients are entitled to use photographs of my sculptures as part of their promotion.").   Cooley also conceded that he fully understood that NGS authorized Psihoyos to photograph the models and knew that subsequent uses would be made of the photos.  *Id.* at 130:21—131:11.  Moreover, Cooley never bargained for or imposed any limitation on NGS' right to license (or allowing others to license) the photos.  *Id.* at 29:4-19; 136:6-14.

Therefore, in addition to the express permission given by NGS, who was the rightful copyright owner at the time, Cooley's conduct also created a license in favor of Psihoyos and thus Cooley cannot now claim—nearly two decades later—that the photographs are "unauthorized" derivative works.  *See, e.g.*, *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) ("consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license"); *DeCarlo v. Archie Comic Publ'ns, Inc.*, 127 F. Supp. 2d 497, 510 (S.D.N.Y. 2001), *aff'd*, 11 Fed. App'x 26 (2d Cir. 2001) ("Silence or inaction in the face of an

11

explicit contrary assumption by the opposing party may be sufficient to induce justifiable reliance by a defendant that a plaintiff will not later assert a claim."); Melville B. Nimmer & David Nimmer, 3 Nimmer on Copyright § 10.03[A][7] (1996), at 10-43 ("nonexclusive licenses . . . may even be implied from conduct").

### D.   NGS Did Not—Indeed, Could Not—Assign To Cooley Any Rights To Psihoyos' Photos, Including Any Right To Control Or Object To Any Subsequent Licensing Of The Photos.

Cooley cannot have obtained the right to control, prevent, or otherwise object to Psihoyos' subsequent licensing of his photographs because, at the time NGS assigned rights to Cooley, NGS already had granted those rights to Psihoyos and unequivocally pledged that these rights were irrevocable.  Thus, whatever rights NGS eventually granted to Cooley were limited by the permission and rights that NGS previously granted to Psihoyos.

The Psihoyos Agreement specifies that NGS returned copyrights in the photos to Psihoyos 90 days after publication, in August 1996.  Psihoyos Agmt. at 3.  Conversely, NGS did not assign any rights in the sculptures to Cooley until nine months later, in May 1997.  Cooley Agmt. at 1.  Consequently, when NGS assigned limited rights to Cooley, NGS already had been divested of any right to control the licensing of the photos and thus could not have transferred such interests to Cooley.  At best, NGS granted Cooley a co-extensive right to create his own photos of the sculptures that would compete with Psihoyos' works in the marketplace.

Contrary to Plaintiffs' suggestion, the NGS-Cooley agreement cannot be read as terminating or revoking the rights that NGS already had granted to Psihoyos, particularly because NGS expressly "pledged" to Psihoyos "that it shall never exercise any right of termination which may exist as to the above grant of copyright to [Psihoyos]."  Psihoyos Agmt at 3.  Basic tenets of contract law preclude Plaintiffs' reading of these agreements because it

ignores this crucial provision of Psihoyos' agreement and would render the "copyrights" granted to Psihoyos meaningless. *See LaSalle Bank Nat'l Assn. v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005); *Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (court must "safeguard against adopting an interpretation that would render any individual provision superfluous"); *Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204, 229 (S.D.N.Y. 2000) ("[B]asic principles of contract interpretation militate against the adoption of an interpretation that would render any portion of the contract language a nullity."). The Court must read the agreements in a manner that does not strip Psihoyos of the benefits of the copyrights he was granted under his agreement with NGS. *Random House, Inc. v. Rosetta Books LLC*, 150 F. Supp. 2d 613, 618 (S.D.N.Y. 2001) ("The court must consider the entire contract and reconcile all parts, if possible, to avoid an inconsistency.")

Avoiding the intractable problem created by Plaintiffs' position merely requires reading the rights assigned to Cooley as prospective only.  That the rights assigned to Cooley were prospective only is supported by the express language of Cooley's agreement with NGS which, as demonstrated above, references only *future* licensing and is silent with respect to any prior licenses already granted by NGS or any derivative works already authorized by NGS.

This conclusion also is required because NGS plainly intended to allow Psihoyos to grant subsequent licenses in his photos of the models.  *See Random House*, 150 F. Supp. 2d at 620 (courts should adopt "the most reasonable interpretation of the grant [of rights] in the contracts at issue" so as not to do harm to the licensor's intentions).  For instance, NGS delivered Psihoyos' photos directly to Psihoyos' licensing agent at the time, Matrix International.  *See* Nelson Decl. Ex. 11.  NGS also repeatedly purchased licenses from Psihoyos to republish these photos, even after NGS conveyed rights in the models to Cooley.  *Id.* Ex. 12.  NGS also has agreed in prior

lawsuits that Psihoyos owns copyright in photographs he created while working for NGS.  This evidence confirms that NGS never intended to impose any restrictions on Psihoyos' right to subsequently license his photos and fully discredits Plaintiffs' position that NGS intended to limit Psihoyos' rights in his photos to the "discrete purpose of . . . publication in the May 1996 issue of *National Geographic*."  *Id.* Ex. 13 (Plaintiffs' Responses to Interrogatories) at 3, No. 1.

The only acceptable interpretation of the NGS agreements is that Cooley's rights in his *models* coexist with Psihoyos' already-vested rights in his *photographs*, which necessarily included the right to license his photos under 17 U.S.C. § 106.  Because NGS already had authorized Psihoyos to create photographs depicting the models and already had granted Psihoyos copyrights in those photos, NGS could not have subsequently granted that same right to Cooley or transferred rights to Cooley that effectively stripped Psihoyos of the lawful benefits of his copyrights.  And certainly NGS could not have done so implicitly.  Because nothing in the Cooley Agreement could be read to eliminate the valid rights that NGS already granted to Psihoyos while NGS was the indisputable copyright owner of the models, NGS' assignment of rights to Cooley must be construed as *prospective only* and cannot be construed so as to revoke, terminate, or in any way diminish the prior permissions and rights that already had been granted to Psihoyos by NGS in August 1996.[3]

Contrary to Plaintiffs' suggestion, it is not true that NGS' transferring "copyrights" to Cooley means that NGS necessarily assigned "all rights" to him or even the full "bundle of

---

[3] In the event that the Court does determine some conflict exists between Psihoyos' claim to control the subsequent licensing of his photographs and the rights assigned to Cooley, Psihoyos' pre-existing and superior rights must prevail.  Cooley had no rights in the sculptures until NGS assigned such rights to him by written agreement one year after publication, whereas Psihoyos obtained copyrights in his photographs 90 days after publication.  Furthermore, the rights assigned to Cooley are limited by a "perpetual" license to NGS to grant "reproduction rights" to third parties, which would include Psihoyos.  *See* Cooley Agmt. at 1.  Conversely, NGS "pledge[d]" to Psihoyos that "it shall never exercise any right of termination which may exist as to the above grant of copyright to you."  Psihoyos Agmt. at 2, ¶ 8.

rights" set forth in Section 106.  As detailed above, NGS was the lawful owner of all copyrights in the models, and thus Cooley could obtain rights in these models only by operation of written transfer from NGS.  *See* 17 U.S.C. § 201(d)(1).  The Copyright Act is clear that such transfers need not be complete or include "all rights."   Rather, Section 201(d) allows transfer of "a copyright . . . in whole *or in part*" and provides that "any of the rights specified by section 106 may be transferred . . . and owned *separately*."  17 U.S.C. 201(d)(1)-(2) (emphasis added).  The Cooley Agreement makes clear that the set of rights subsequently assigned to Cooley by NGS was not complete and did not include "all rights" in these models.  For instance, NGS did not transfer to Cooley the right to pursue claims that accrued prior to the transfer.  The Agreement also includes numerous conditions on Cooley's rights, including a reservation of rights and a perpetual license in favor of NGS.  *See* Cooley Agmt. at 1.

Although NGS granted Cooley "copyright" to his models one year after publication, that transfer of rights was not complete.  Rather, the rights NGS granted to Cooley were expressly limited in nature and subject to the prior rights granted by NGS, including the rights granted to Psihoyos.  Conversely, the Psihoyos Agreement is unequivocal that the copyrights in the photos granted to Psihoyos were irrevocable.  Nothing in Cooley's agreement with NGS suggests that Cooley obtained all copyrights in the models or that his rights were free and clear of prior rights granted by NGS, and certainly the agreement did not expressly nullify NGS' prior rights grants.

### E.    Plaintiffs' Infringement Claims Are Precluded By Laches And Estoppel.

Plaintiffs' claims also fail because Cooley failed to object to Psihoyos' claim to copyrights in the photographs for well *over a decade*.  Psihoyos created these photographs in December 1995, and did so with Cooley's full knowledge and authorization.  Cooley Dep. at 24:24—25:14.  Psihoyos registered copyrights in his photographs in 1997.  Nelson Decl.

Ex. 14.  Cooley testified that he was aware that Psihoyos was displaying his photographs of the models in a traveling exhibit "in the late '90s" that was unrelated to Psihoyos' work for NGS. Cooley Dep. at 109:11—110:6.  Plaintiffs thus have been aware of Psihoyos' creation and claim to copyright in these photographs for approximately fifteen years and have known that Psihoyos was allowing third parties (other than NGS) to use his photos since at least "the late '90s."

Cooley's failure to object to Psihoyos' copyright claim in these photos for over fifteen years precludes him from asserting infringement claims now, and Cooley's admission that he was aware that Psihoyos was licensing these photos in projects that did not involve NGS since "the late '90s" precludes Plaintiffs from objecting now.  *See Zuill v. Shanahan*, 80 F.3d 1366, 1370-71 (9th Cir. 1996) (copyright owners are divested of rights by adverse claims of copyright ownership); *Carson v. Dynegy, Inc*., 344 F.3d 446, 453 (5th Cir. 2003) ("[I]t is accepted that estoppel may be accomplished by a plaintiff's silence and inaction."); Melville B. Nimmer & David Nimmer, 4 Nimmer on Copyright § 13.07[A] (2002) ("estoppel may be accomplished by silence and inaction, particularly if prolonged"); *Haas v. Leo Feist, Inc.,* 234 F. 105, 108 (S.D.N.Y. 1916) (Learned Hand, J.) ("Delay under such circumstances allows the [putative] owner to speculate without risk with the other's money.").  If Cooley wanted the right to prevent the downstream licensing of photos of his models, then he should have bargained for such control in negotiating his agreement with NGS.  And if Cooley believed he did have such a right under his NGS agreement, then he should have brought suit years ago when he discovered that Psihoyos was making additional uses of these images.  It would be contrary to the fundamental principles of copyright law to allow Plaintiffs to lie in the weeds for almost well over a decade and then claim that they have been harmed by conduct of which they were aware that occurred during this time.  *Reid,* 490 U.S. at 749 ("Congress' paramount goal in revising the 1976 Act

[was] enhancing predictability and certainty of copyright ownership."); *Merch. v. Levy*, 92 F.3d 51, 57 (2d Cir. 1996) (barring claims where copyright owner knows of claims but delays in bringing suit "promotes the principles of repose integral to a properly functioning copyright market"); *Zuill*, 80 F.3d at 1370-71 ("It is inequitable to allow the putative co-owner to lie in the weeds for years after his claim has been repudiated, while large amounts of money are spent developing a market for the copyrighted material, and then pounce on the prize after it has been brought in by another's effort.").

### F.    Plaintiffs' Claims Are Barred By The Statute Of Limitations.

Plaintiffs' claims are barred by the statute of limitations set forth in 17 U.S.C. § 507(b). The gravamen of Plaintiffs' claim against Psihoyos is that he failed to obtain permission to license these photographs.   Psihoyos created these photographs at Plaintiffs' studio—with Cooley present—in late 1995.  Psihoyos began licensing the photos in 1997 when NGS provided the photos to his licensing agent.   If Plaintiffs' claims accrued when the allegedly infringing conduct began, *see Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235, 247 (S.D.N.Y. 2004), then Plaintiffs' claims accrued in 1997 and thus are barred by § 507(b).

Plaintiffs' claims also are barred if the discovery rule applies.  *See Tomas v. Gillespie*, 385 F. Supp. 2d 240, 243 (S.D.N.Y. 2005) ("To trigger the statute of limitations, it is required only that the plaintiff knows of the facts furnishing her with a claim, not that those facts are sufficient to entitle her to relief.").   Cooley testified that he has known that Psihoyos was allowing third parties (other than NGS) to use these photos in projects that did not relate to the NGS story since at least "the late '90s."  *See* Cooley Dep. at 109:11—110:6.  Because Cooley was aware that Psihoyos was licensing the right to display these photos to third parties over 12 years ago, the statute of limitations was triggered.  *See Margo v. Weiss*, 213 F.3d 55, 60 (2d

Cir.2000) (plaintiffs' deposition testimony revealed that they knew of facts surrounding their co-authorship claim before the three-year accrual period).   The statute of limitations on any potential copyright claim against Psihoyos thus expired long ago.

Plaintiffs' contention that each subsequent use of the photographs constituted the creation of a new "derivative work" and thus a new infringement is baseless.   The books created by the publisher Defendants are not new "derivative works" of Cooley's models simply because they include a photograph that features the models.   Nor would such an argument be relevant with respect to Plaintiffs' claims against Psihoyos, who did not play any role in the sale of his photos or publish the books indentified in the Complaint.   Merely because Psihoyos gained licensing *revenue* does not give rise to a new claim against Psihoyos.   Plaintiffs cannot avoid the statute of limitations by construing actions by different parties as giving rise to new claims against Psihoyos.   Psihoyos created these images in 1995, began licensing them in 1997, and supplied them to the vendors identified in the Complaint in at least 2005.   Psihoyos has not made any new copies of Cooley's models, and has not taken any new action to display his photos since that time.   So, even if the publication of the books identified in the Complaint did give rise to a "new" claim, that claim would lie against the other defendants only, not Psihoyos.   *See Stone v. Williams*, 970 F.2d 1043, 1049-50 (2d Cir. 1992) ("Each act of infringement is a distinct harm giving rise to an independent claim for relief. . . .   Application of the continuous wrong doctrine generally has been rejected in the infringement context.").

### G.     Plaintiffs Failed To Satisfy The Statutory Prerequisite For Bringing Copyright Claims.

To bring a claim for copyright infringement, a plaintiff must show that it is the owner of a valid copyright in the work allegedly infringed.   17 U.S.C. § 501(b); *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2nd Cir. 1995).   In addition, the Copyright Act requires that the plaintiff

18

demonstrate that it has validly registered its copyrights in the allegedly infringed works with the U.S. Copyright Office before initiating a civil action.  *See* 17 U.S.C. § 411(a); *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1247 (2010) ("The registration requirement in 17 U.S.C. § 411(a) . . . imposes a precondition to filing a claim.").

The Complaint alleges that Plaintiff Cooley & Co. Ltd. owns copyright in the "Segnosaur Embryo" and "Therizinosaur" models "by way of written assignment."  Compl. ¶ 14.  The certificates of registration produced by Plaintiffs identify Cooley & Co. as the "Copyright Claimant" and note that copyright is held "by assignment."  Nelson Decl. Ex. 15.  The copyright transfer agreement between Brian Cooley and Cooley & Co. Ltd. is dated November 15, 2011.  *Id.* Ex. 16.  Significantly, however, this transfer agreement is silent with respect to the right to bring actions for infringements that occurred prior to the transfer date.  Because the transfer agreement fails to expressly include the right to bring actions for past infringements, such rights were not transferred and thus Cooley & Co. lacks standing to bring claims regarding any of the alleged conduct at issue in this action, all of which unquestionably accrued prior to November 15, 2011.  *See ABKCO Music*, 944 F.2d at 980; *Skor–Mor Prod., Inc. v. Sears, Roebuck & Co.*, No. 81-cv-1286, 1982 WL 1264, at *3 (S.D.N.Y. May 12, 1982) ("An assignment of copyright does not convey existing causes of action for infringement unless expressly included."); 3 Nimmer on Copyright § 12.02[B] at 12–57 (even if assignment says it conveys "all right, title and interest" it is "generally construed *not* to assign existing causes of action") (emphasis in original).  Cooley & Co. lacks standing to bring an infringement action, and Brian Cooley has not registered his copyrights in these works.  Therefore, neither Plaintiff has satisfied the statutory prerequisite to filing suit for infringement and their claims must be dismissed *with prejudice*.  *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (JSR), 2011 WL

5980423, at *2 (S.D.N.Y. Nov. 29, 2011) (affirming dismissal with prejudice is warranted where party fails to satisfy Section 411(a)'s precondition to suit).

## III.   PLAINTIFFS' CONTRIBUTORY AND VICARIOUS INFRINGEMENT CLAIMS (COUNTS III & IV) FAIL AS A MATTER OF LAW.

Even though Plaintiffs have dismissed their claims against all other defendants, they continue to assert contributory and vicarious infringement claims against Psihoyos.  Nelson Decl. Ex. 13 at 4, No. 4.  These claims fail as a matter of law.

A claim for contributory infringement requires Plaintiffs to demonstrate that Psihoyos, "with knowledge of the infringing activity, induce[d], cause[d] or materially contribute[d] to the infringing conduct of another[.]"  *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *see also Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).  Vicarious infringement requires Plaintiffs to demonstrate that Psihoyos "has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).  Both contributory and vicarious infringement claims, therefore, are forms of secondary liability, and thus essential element underlying both claims is that Plaintiffs be able to make out a claim of *direct* copyright infringement against a third party.  *See Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 149 (S.D.N.Y. 2009) ("For all three theories of secondary copyright infringement, there must be the direct infringement of a third party."); *Matthew Bender & Co.*, 158 F.3d 693, 706 (2d Cir.1998) (finding plaintiff failed to identify any third-party infringers); *Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) ("Contributory infringement necessarily must follow a finding of direct or primary infringement."); 2 Paul Goldstein, Copyright § 6.0 (1996) ("For a defendant to be held contributorily or vicariously liable, a direct infringement must have occurred.").  If Plaintiffs

cannot make out a claim for direct infringement against a third party, Plaintiffs cannot sustain their secondary liability theories of infringement against Psihoyos.

Plaintiffs cannot make out any direct infringements by a third party because Plaintiffs settled, released, and dismissed *with prejudice* their direct infringement claims against all other defendants, and thus there no longer are any direct infringement claims at issue in this suit.  (*See* Docket Nos. 48-50, 54, 56-68.)  Moreover, the settlements reached between Plaintiffs and the other defendants (i) denied that any infringement occurred, (ii) included full releases, (iii) included covenants not to sue, and (iv) some included licenses from Cooley that operate retroactively to authorize whatever uses Plaintiffs previously alleged to be infringing.  *See, e.g.*, Nelson Decl. Ex. 17.

Because Plaintiffs have now released their claims against all third parties and granted licenses to cover the alleged direct infringements, Plaintiffs can no longer assert direct claims against those entities and thus cannot assert any secondary infringement claims against Psihoyos related thereto.  Indeed, Plaintiffs' direct claims have been dismissed with prejudice.  Plaintiffs thus cannot establish an essential element of their secondary liability claims against Psihoyos.

Furthermore, for the reasons discussed above, Psihoyos was authorized to create the photos at issue and was granted copyrights in the photos nine months before Cooley acquired any rights in the models.  Therefore, Plaintiffs' cannot sustain any infringement claims against Psihoyos, and his licensing agents conduct is fully authorized by Psihoyos, who owns valid copyright in the photos he was authorized to create.

## IV.   PLAINTIFFS' LANHAM ACT CLAIM (COUNT II) IS PREEMPTED BY THE COPYRIGHT ACT AND WITHOUT MERIT.

Plaintiffs allege violations of the Lanham Act's provision regarding the "false designation of origin" of goods set forth in 15 U.S.C. § 1125(a).  Compl. ¶¶ 45-52.  Plaintiffs'

effort to dress up their copyright infringement claims as a Lanham Act claim is unavailing.

It is settled law that Lanham Act claims preempted by the Copyright Act unless the claim alleges "false representation as to the creator of the tangible works" being offered for sale by the defendant rather than the ideas or subject matter depicted in the tangible works.  *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003); *Atrium Group De Ediciones Y Publicaciones, S.L. v. Harry N. Abrams, Inc.*, 565 F. Supp. 2d 505, 512 (S.D.N.Y. 2008); *Levine v. Landy*, 832 F. Supp. 2d 176 (N.D.N.Y. 2011).  Because Plaintiffs make no such allegations here, their claims sound in copyright only and their Lanham Act claim is preempted under 17 U.S.C. § 301.  Plaintiffs' copyright claim cannot be dressed up as a Lanham Act claim.

Even assuming *arguendo* that Plaintiffs' Lanham Act claim is not preempted, Plaintiffs cannot possibly sustain their claim that Psihoyos made a "false designation" as to the origin of the works he offered for sale.  Claims under § 1125 of the Lanham Act are limited to false designations regarding "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."  *Dastar Corp.*, 539 U.S. at 37.  In this case, the only "tangible goods" that Psihoyos ever offered for sale are his photographs.  Psihoyos did not ever possess, let alone offer for sale, Cooley's actual models.  Indeed, Plaintiffs' Complaint expressly acknowledges that the Lanham Act claim against Psihoyos relate only to his "selling *photographs* of the Plaintiff's [sic] Works."  Compl. ¶ 47 (emphasis added).  Plaintiffs also do not dispute that Psihoyos created the photographs and thus cannot seriously argue that he is not the "producer" of the only "tangible goods" that he ever offered for sale.  Any representations that the photos—as opposed to the subject matter of the photos—were created by Psihoyos are not "false" because Psihoyos unquestionably created the photos at issue.  Plaintiffs thus cannot bring a Lanham Act claim because Psihoyos never offered

Cooley's models for sale and thus could not have made any false representations regarding their origin. *See Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 601 (S.D.N.Y. 2007); *Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 633 (S.D.N.Y. 2000) ("Any claim of false originality on the part of the defendants in this action does not venture beyond that implicit in any allegedly false copyright.").

Plaintiffs' "failure to give credit" allegation—which cannot support a Lanham Act claim in any case—also was discredited during discovery, where all evidence confirmed that Psihoyos consistently identified Cooley as the creator of the models depicted in his photos when submitting his photos to his licensing agents. In particular, the supporting data for every image file submitted by Psihoyos to his licensing agents expressly identified Cooley as the sculptor of the models and included Cooley's name in both the image description and keyword fields. *See* Nelson Decl. Exs. 18-21. For example, the following data accompanied one image:

- Image Headline: "Dino Egg Model 0002 – *Model by Brian Cooley*"
- Image Description: "A therizinosaur embryo how it appeared in its egg. *By artist Brian Cooley*."
- Keyword Search Terms included "*Brian Cooley*"

*Id.* Ex. 18 (emphasis added). In fact, one image included the following description: "A curled up therizinosaur embryo in a model created by *Brian Cooley, the best dinosaur model maker in the world*." *Id.* Ex. 19 (emphasis added). This information accompanied all files provided by Psihoyos to any parties that licensed his photos.[4] *Id.* ¶¶ 20-23.

Psihoyos also used one of his photos of the "Therizinosaur" model on the cover of the

---

[4] Plaintiffs do not allege, and certainly no evidence shows, that Psihoyos ever had any ability to control how the "Clearinghouse Defendants" utilized this information, including whether it is displayed on their websites. Because Psihoyos has no ability to control how those entities utilize the metadata and credit information supplied by Psihoyos, he cannot be held liable for any failure by these entities to provide credit or attribution to Cooley.

2001 edition of his *Hunting Dinosaurs* book.  Contrary to Plaintiffs' allegation that Psihoyos failed to give Cooley proper credit, the inside of the front cover plainly states:

> One of the best preserved theropod embryos ever found was discovered in Boulder, Colorado in a block of 18 inch long dinosaur eggs from central China. The discovery enabled ***world-renowned paleo-sculptor Brian Cooley*** of Calgary, Alberta to make this model. . . . ***Brian Cooley can be found at: cooley@cadvision.com.***

Nelson Decl. Ex. 22 (emphasis added).

Psihoyos thus not only consistently provided credit and attribution to Cooley for creating the models, Psihoyos even praised Cooley as a "world-renowned paleo-sculptor" and "the best dinosaur model maker in the world" and even provided Cooley's contact information on the inside front cover of his book!

The record also shows that Plaintiffs' counsel was aware months ago of significant evidence that discredits Plaintiffs' allegations that Psihoyos' licensing agents failed to give credit to Cooley.  On March 23, 2012, Plaintiffs' counsel sent a letter to Jeffrey L. Loop, counsel for Corbis Corporation, that included 39 pages of attachments related to various products (ranging from t-shirts to wall stickers) featuring Psihoyos' photos.  *See* Nelson Decl. Ex. 23.  The attachments appear to be print outs from various websites, including Amazon.com and Zazzle.com.  *Id.*  Each and every page, and each and every product, gives credit to Brian Cooley as the sculptor or creator of the models.  *Id.* These documents also reveal that the Corbis image files expressly identify Brian Cooley as the sculptor of the models.  *See id.* at COR000093 ("Image ID: 42-18525772 . . . Sculpture by Brian Cooley").

Plaintiffs' Lanham Act claim thus fails on both the law and the merits.  Plaintiffs lacked a basis for bringing this claim in the first place, and unquestionably lack a basis for continuing to assert this claim.  Plaintiffs should be sanctioned for continuing to press such a meritless claim.

## V.    PLAINTIFFS' "UNFAIR COMPETITION" CLAIM (COUNT V) IS PREEMPTED AND HAS NO MERIT.

Plaintiffs' Complaint asserts a claim against Psihoyos for "unfair competition" under New York law.  Compl. ¶ 53.  The Complaint includes no factual allegations that could support such a claim against Psihoyos.  Rather, Plaintiffs merely allege that the same facts giving rise to their Lanham Act claim also support a claim for "unfair competition" under New York law.  Plaintiffs' allegations are insufficient to support any claim against Psihoyos.

 As explained above, Plaintiffs' false designation claims cannot be brought under the Lanham Act and are preempted under Section 301 of the Copyright Act.  For the same reason, Plaintiffs' state law claims also are preempted.  *See Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 933 (S.D.N.Y. 1996) ("Courts in this Circuit have consistently held that claims for misappropriation of rights within the scope of copyright brought under New York unfair competition law are preempted.") (collecting cases); *Universal City Studios, Inc. v. T-Shirt Gallery, Ltd.*, 634 F. Supp. 1468, 1474 (S.D.N.Y. 1986) (holding New York unfair competition claim preempted) (collecting cases).  Moreover, as demonstrated above, Psihoyos never made any false representations regarding his authorship of the photographs, and he consistently credited Cooley for sculpting the models depicted in the photos.  Consequently, any claims related to an alleged lack of attribution cannot possibly lie against Psihoyos.

## CONCLUSION

For all these reasons, Plaintiffs' claims against Psihoyos cannot prevail on any theory and thus the Court should GRANT summary judgment on all counts in favor of Defendant Psihoyos.

Dated:  New York, New York
        June 29, 2012

Respectfully submitted by:

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON &McCULLOCH LLP
The Chrysler Building
405 Lexington Ave., 26th Floor
New York, New York 10174
Tel: (212) 907-6677
Fax: (646) 308-1178
dnelson@nelsonmcculloch.com
kmcculloch@nelsonmcculloch.com

*Counsel for Defendant Psihoyos*

## CERTIFICATE OF SERVICE

I, Danial A. Nelson, an attorney, hereby certify that I caused a true and correct copy of DEFENDANT PSIHOYOS' MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT to be served via the ECF system and/or electronic mail on all counsel listed below on this 29th day of June 2012.

Sam P. Israel, Esq.
1 Liberty Plaza, 23rd Floor
New York, New York  10006
Tel:  (212) 201-5345
Fax: (212) 201-5343
smisrael@aol.com

Dated:   June 29, 2012

_____
Danial A. Nelson
dnelson@nelsonmcculloch.com