# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN COOLEY and COOLEY & CO. LTD.,<br><br>*Plaintiffs*,<br><br>v.<br><br>LOUIS PSIHOYOS,<br><br>*Defendant*. | Case No. 12-cv-0001 (LAK)<br><br>Hon. Lewis A. Kaplan<br><br>**ECF CASE**<br>**Filed Electronically** |

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
The Chrysler Building
405 Lexington Ave., 26th Floor
New York, NY 10174
T: (212) 907-6677
F: (646) 308-1178

*Counsel for Defendant Louis Psihoyos*

DATED:  July 19, 2012

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 3

SUMMARY OF ARGUMENT ...................................................................................................... 3

ARGUMENT .................................................................................................................................. 5

I.  APPLICABLE STANDARD OF REVIEW ...................................................................... 5

II.  PLAINTIFFS' MOTION MUST BE DENIED ON PROCEDURAL GROUNDS. ....................................................................................................................... 6

III.  PLAINTIFFS' MOTION FAILS AS A MATTER OF LAW BECAUSE PLAINTIFFS FAILED TO ADDRESS NUMEROUS AFFIRMATIVE DEFENSES. ........................................................................................................................ 7

IV.  PLAINTIFFS' MOTION MUST BE DENIED BECAUSE IT IS RELIES HEAVILY ON INADMISSIBLE EVIDENCE. .................................................................. 9

V.  PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIM IS PRECLUDED BY THE STATUTE OF LIMITATIONS. ................................................ 11

VI.  PLAINTIFFS CANNOT MAKE OUT A CLAIM FOR UNAUTHORIZED COPYING OR PREPARING UNAUTHORIZED DERIVATIVE WORKS. ..................................................................................................... 12

VII.  PLAINTIFFS CANNOT MAKE OUT A CLAIM FOR INFRINGEMENT AGAINST PSIHOYOS UNDER ANY THEORY. ............................................................ 14

VIII.  PLAINTIFFS' COPYRIGHT CLAIM WOULD REQUIRE THE COURT TO IGNORE CRUCIAL PROVISIONS OF THE AGREEMENT BETWEEN NGS AND PSIHOYOS. ................................................................................. 17

IX.  PLAINTIFFS' CONTRIBUTORY AND VICARIOUS INFRINGEMENT CLAIMS FAIL AS A MATTER OF LAW. .................................................................... 19

CONCLUSION ............................................................................................................................. 21

# TABLE OF AUTHORITIES

**CASES**

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009) ................................................................................ 20

*Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235 (S.D.N.Y. 2004) ................................................................................ 11

*Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F.2d 829 (11th Cir. 1990) ............................................................... 20

*Carson v. Dynegy, Inc*., 344 F.3d 446 (5th Cir. 2003) ................... 8

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ..... 8

*DeCarlo v. Archie Comic Publ'ns, Inc.*, 127 F. Supp. 2d 497 (S.D.N.Y. 2001) ................................................................................ 9

*Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374 (S.D.N.Y. 1998) ................................................

*F.D.I.C. v. Giammettei, 34 F.3d 51 (2d Cir. 1994)* ........................ 6

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) ............................................. 19

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159 (2d Cir. 1971) .................................................................... 19

*Haas v. Leo Feist, Inc.,* 234 F. 105 (S.D.N.Y. 1916) ..................... 8

*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996) ....................... 9

*LaSalle Bank Nat'l Assn. v. Nomura Asset Capital Corp.*, 424 F.3d 195 (2d Cir. 2005) ........................................................................ 18

*Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204 (S.D.N.Y. 2000) ................................................................................ 18

*Margo v. Weiss*, 213 F.3d 55 (2d Cir.2000) ................................. 12

*Matthew Bender & Co.*, 158 F.3d 693 (2d Cir.1998) ................... 20

*Merch. v. Levy*, 92 F.3d 51 (2d Cir. 1996) .................................... 8

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, No. 09-cv-1251(DAB), 2011 WL 3586060, at *4 (S.D.N.Y. Jul. 29, 2011) .................................................................................... 9, 11

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir.
2007) .................................................................................................... 19

*Random House, Inc. v. Rosetta Books LLC*, 150 F. Supp. 2d 613
(S.D.N.Y. 2001) .................................................................................... 18

*Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) ...................... 5

*Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d
1091 (2d Cir. 1993).............................................................................. 18

*Secret Garden USA, Inc. v. McIlwain*, No. 10-CV-00277, 2010
WL 6634709 (W.D.N.Y. Sept. 22, 2010) ......................................... 7

*Stone v. Williams*, 970 F.2d 1043 (2d Cir. 1992)........................... 12

*Tomas v. Gillespie*, 385 F. Supp. 2d 240 (S.D.N.Y. 2005)........... 11

*United States v. Letscher*, 83 F. Supp. 2d 367 (S.D.N.Y. 1999)... 9

*Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986) ........................... 5

*Zuill v. Shanahan*, 80 F.3d 1366 (9th Cir. 1996) ..................... 7, 8

## OTHER AUTHORITIES

2 Paul Goldstein, Copyright § 6.0 (1996).......................................... 20

3 Nimmer on Copyright § 10.03[A][7] (1996) ............................... 9

4 Nimmer on Copyright § 13.07[A] (2002).................................... 8

## FEDERAL RULES AND STATUTES

17 U.S.C. § 103(a) ............................................................................... 16

17 U.S.C. § 106.................................................................... 13, 16, 19

17 U.S.C. § 507(b) ............................................................................... 11

Fed. R. Civ. P. 56(a) ........................................................................... 5

Fed. R. Civ. P. 56(c)(4)....................................................................... 9

Defendant Louis Psihoyos ("Psihoyos"), by and through undersigned counsel, hereby submits this Memorandum of Law in Opposition to the Motion for Partial Summary Judgment ("Motion") filed by Plaintiffs Brian Cooley ("Cooley") and Cooley & Co. Ltd. (collectively "Plaintiffs").

Psihoyos hereby incorporates the statements, arguments, and supporting materials filed in support of his Motion for Summary Judgment, including the Rule 56.1 Statement, Memorandum of Law, and Declaration of Danial A. Nelson in support thereof.  (*See* Dkt Nos. 60-62.)

## INTRODUCTION

Plaintiffs' Motion rests entirely on the notion that the copyrights in the photographs created by Psihoyos that were granted to Psihoyos by the National Geographic Society ("NGS") either are invalid or did not permit Psihoyos to subsequently license the images to third parties without a further grant of rights from Cooley.  Neither argument finds support in the record or the law.  There is nothing in the agreement between Psihoyos and NGS to support Plaintiffs' argument that photographs were created only for the strictly limited purpose of being published in *National Geographic*.  And certainly NGS did not share this understanding, as evidenced by the fact that NGS transferred the photos directly to Psihoyos' licensing agent (Matrix International) and even purchased limited licenses from Psihoyos to use the photos in subsequent projects unrelated to the "Dinosaur Eggs" story.  Nor is there any language in the agreement between Cooley and NGS that supports the notion that NGS was not permitted to allow Psihoyos to photograph the models or grant him rights in the photos that would allow downstream licensing.  On the contrary, the NGS-Cooley agreement is unequivocal that NGS acquired "*all* reproduction rights and copyrights" in the models and held those rights at the time that it conveyed copyrights in the photos to Psihoyos.  The fact that NGS owned "all . . .copyrights" in

1

the models at the time it granted Psihoyos copyrights in the photos that he created means that NGS owned all rights attendant to copyright ownership, including the rights under Section 106 to allow third parties to copy the models and to prepare derivative works.   Similarly, the "copyrights" conveyed by NGS to Psihoyos in the photos that he had created also included the full scope of rights attendant to copyright ownership, including the right to control the licensing of the photos to third parties.  Plaintiffs' copyright claims in this action thus cannot succeed.

In any event, even if Plaintiffs' argument that NGS could not have authorized Psihoyos to grant downstream licenses to third parties to use his photos because such authority was never granted to or vested in NGS, this would imply only that Plaintiffs have a claim against NGS, not Psihoyos.  There is no question that Psihoyos acted at all times in good faith and within the rights granted to him by NGS and was completely unaware that NGS ever subsequently granted any rights in the models to Cooley.  Psihoyos' use of the photos that he created, including his licensing of the photos to third parties through various licensing agents, is fully consistent with the license and copyrights granted to him by NGS when NGS unquestionably held "all . . . copyrights" in the models.  NGS' subsequent transfer of limited rights to Cooley did not retroactively trump or invalidate the rights and license granted to Psihoyos.  On the contrary, the NGS-Cooley agreement expressly provides that its terms apply only prospectively and relate only to the *models* not the photographs created by Psihoyos.

Moreover, even setting aside the agreements with NGS, Plaintiffs' claims fail because Cooley authorized Psihoyos to photograph the models and thus Psihoyos' copying and/or preparing derivative works cannot possibly be construed as unauthorized.  Cooley admits that he authorized Psihoyos to enter his premises and photograph the models.  Plaintiffs, therefore, must concede that the photographs are authorized (not unauthorized) derivative works and thus

Plaintiffs cannot make out a claim for infringement arising from Psihoyos' creating the photos in question.

Furthermore, even if Plaintiffs could argue that Psihoyos' creating the photos was not authorized, Cooley unquestionably was aware in 1995 that Psihoyos created the photos and thus the statute of limitations has long since expired on any claim for unauthorized copying.

Cooley also admits that he did not advise NGS or Psihoyos of his intent to impose any limitations or restrictions on either NGS' or Psihoyos' subsequent licensing of the photos.  Nor does the agreement between NGS and Cooley include such a restriction.  Consequently, Plaintiffs also cannot make out a claim for infringement based on Psihoyos subsequent distribution of the photos.  And even if such a claim could be made, Cooley testified that he has been aware since at least the "late 90's" that Psihoyos was providing copies of his photos to third parties (other than NGS) for use in projects beyond publication in *National Geographic*.  Thus, any infringement claim related to unauthorized distribution also has long since expired.

## FACTUAL BACKGROUND

Psihoyos rejects Plaintiffs' recitation of the facts.  Psihoyos' own Motion for Summary Judgment sets forth an accurate presentation of the facts and record.  (*See* Dkt. No. 61 at 2-3).

## SUMMARY OF ARGUMENT

Plaintiffs' Motion for Partial Summary Judgment fails as a matter of law because Plaintiffs failed to address all of the defenses asserted by Psihoyos.  In particular, Plaintiffs failed to address Psihoyos' laches, estoppel, unclean hands, and implied license defenses.  (Docket No. 29 at 11-12, ¶¶ 4, 6, 11.)

Plaintiffs' claims also are precluded by the agreement between NGS and Psihoyos.  It cannot be disputed that NGS owned "all reproduction rights and copyrights" in the models at the

time that it expressly (and irrevocably) granted Psihoyos copyrights in the photos at issue in this suit.  Although NGS subsequently granted rights in the models to Cooley subject to numerous limitations, NGS did not convey any rights to Cooley until "one year after publication," which was over a year after Psihoyos was authorized to create the photos and nine months after NGS granted Psihoyos copyrights in the photos he created.  The rights that NGS conveyed to Cooley were limited in nature and prospective only.  The rights conveyed to Cooley did not operate retroactively and did not vacate any prior licenses granted by NGS or invalidate any derivatives authorized by NGS.  NGS did not grant Cooley any rights in Psihoyos' photos.

These indisputable facts are dispositive of Plaintiffs' copyright claims against Psihoyos. Because both NGS and Cooley authorized Psihoyos to photograph the models, Psihoyos' photos cannot be "unauthorized" derivatives or copies.  When NGS granted Psihoyos copyrights in the photographs, Psihoyos necessarily obtained all rights attendant to copyright ownership, including the right to license his photos without any restrictions other than those set forth in his agreement with NGS.  Nothing in the Psihoyos Agreement provides that the copyrights granted to Psihoyos were subject to any restrictions, and the agreement certainly did not provide that Psihoyos would be divested of his right to license his photos or that he needed to obtain a further grant of rights from Cooley when NGS subsequently conveyed limited rights in the models to Cooley. Likewise, nothing in the Cooley Agreement indicates that Cooley obtained copyrights in the models free and clear of whatever uses, licenses, and derivative works that NGS already had authorized while it owned the copyrights.  And there certainly is no language in the Cooley Agreement that suggests that the rights assigned to Cooley—which related only to the *models*, not any derivative works that NGS authorized while it owned the models—operated retroactively to nullify the irrevocable rights granted to Psihoyos in the *photographs* that NGS had authorized.

The agreement between NGS and Cooley did not grant Cooley any rights in or authority to control or object to the photographs that NGS authorized Psihoyos to create.  And Cooley never had any right to restrict NGS' ability to authorize the creation of derivative works prior to NGS' granting rights in the models to Cooley.  And even if Cooley had bargained for such rights, his claims would sound in contract and lie entirely against NGS, not against Psihoyos.  Moreover, even if Cooley held any rights in the models at the time, Cooley admits that he authorized Psihoyos to create the photographs and did not advise Psihoyos of any limit on Psihoyos' inherent right to license the photos he created.

## ARGUMENT

## I.   APPLICABLE STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As the moving party, Plaintiffs bear the burden of showing that this threshold has been met.  *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir. 1986).  "[I]f the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."  *Id.* at 323 (quotation omitted).  "All ambiguities must be resolved and all inferences drawn in favor of the party against whom judgment is sought."  *Id.*

With respect to the affirmative defenses where Psihoyos bears the burden of proof, summary judgment may be established in one of two ways: "(1) the movant may point to evidence that negates its opponent's claims or (2) the movant may identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings."  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (internal citations omitted).  IN

making this determination, "whatever evidence there is to support an essential element of an affirmative defense will be construed in a light most favorable to the non-moving defendant." *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994).

## II.   PLAINTIFFS' MOTION MUST BE DENIED ON PROCEDURAL GROUNDS.

As the Court is aware, the parties were instructed to file any motion for summary judgment on or before June 30, 2012.[1] Psihoyos complied with this order and filed his Motion for Summary Judgment on June 29, 2012.  (Dkt. Nos. 60-62.)  Plaintiffs, however, waited until July 2, 2012 to move for summary judgment and file their motion papers.  (*See* Dkt. Nos. 63-66.)  In addition to being late, Plaintiffs' motion also was incomplete as it failed to include the Statement of Undisputed Facts required under Local Civil Rule 56.1.  Plaintiffs inexplicably and improperly delayed filing their Local Civil Rule 56.1 Statement until July 3, 2012. (Dkt. No. 68.)  Plaintiffs counsel did not request leave to file the 56.1 Statement belatedly, and offered no explanation for this dilatory filing.

Plaintiffs' delay in filing created direct prejudice to Psihoyos and an unfair advantage to Plaintiffs because Plaintiffs had access to Psihoyos' moving papers for 3 full days before filing their own motion, and 4 days before filing their 56.1 Statement.  This allowed Plaintiffs to use their motion papers to get an extra 35 pages of responsive briefing on Psihoyos' Motion.

Psihoyos respectfully requests that Plaintiffs' Motion and all supporting papers be stricken and that the Court not consider them in resolving Psihoyos' motion for summary judgment.

---

[1] Only Psihoyos requested and was granted leave to move for summary judgment.

### III.   PLAINTIFFS' MOTION FAILS AS A MATTER OF LAW BECAUSE PLAINTIFFS FAILED TO ADDRESS NUMEROUS AFFIRMATIVE DEFENSES.

Plaintiffs' Motion for Partial Summary Judgment fails as a matter of law because Plaintiffs failed to address all of the defenses asserted by Psihoyos.  *See Secret Garden USA, Inc. v. McIlwain*, No. 10-CV-00277, 2010 WL 6634709, at *2 (W.D.N.Y. Sept. 22, 2010) ("In order to obtain summary judgment, [Plaintiffs] must address and negate the possible applicability of the affirmative defenses asserted by defendants.").   Plaintiffs' failure to address numerous defenses requires that, as a matter of law, the motion for summary judgment on liability be denied.  *Id.*

In particular, Plaintiffs failed to address Psihoyos' laches, estoppel, and implied license defenses.  (Docket No. 29 at 11, Defense Nos. 4, 6, 11.)   This is crucial because Plaintiffs' claims are precluded by these defenses.

The following facts are not in dispute: (i) Cooley authorized Psihoyos to enter his studio and photograph the model sculptures; (ii) Cooley did not advise either NGS or Psihoyos that he objected to their downstream licensing of the photos; (iii) Cooley was aware since 1995 that Psihoyos created the photos; and (iv) Cooley was aware since the "late 1990's" that Psihoyos was providing his photos to third parties other than NGS for use in projects unrelated to the "Dinosaur Eggs" story.  *See* Nelson June 29, 2012 Decl. (Dkt. No. 62) at Ex. 6 ("Cooley Dep.") at 24:24—25:14; 109:11—110:6.  Indeed, Plaintiffs' Motion includes a declaration from Brian Cooley in which he concedes that he "was present during the photo shoot" and also "collaborated with Psihoyos on creating the images."  Cooley Decl. (Dkt. No. 65) ¶ 19.

These facts preclude Cooley from objecting to Psihoyos' licensing of the photos on the basis of laches and estoppel.  *See Zuill v. Shanahan*, 80 F.3d 1366, 1370-71 (9th Cir. 1996) (copyright owners are divested of rights by adverse claims of copyright ownership); *Carson v.*

*Dynegy, Inc.*, 344 F.3d 446, 453 (5th Cir. 2003) ("[I]t is accepted that estoppel may be accomplished by a plaintiff's silence and inaction."); Melville B. Nimmer & David Nimmer, 4 Nimmer on Copyright § 13.07[A] (2002) ("estoppel may be accomplished by silence and inaction, particularly if prolonged"); *Haas v. Leo Feist, Inc.,* 234 F. 105, 108 (S.D.N.Y. 1916) (Learned Hand, J.) ("Delay under such circumstances allows the [putative] owner to speculate without risk with the other's money.").  If Cooley wanted the right to prevent the downstream licensing of photos of his models, then he should have bargained for such control in negotiating his agreement with NGS.  And if Cooley believed he did have such a right under his NGS agreement, then he should have brought suit years ago when he discovered that Psihoyos was making additional uses of these images.

It would be contrary to the fundamental principles of copyright law to allow Plaintiffs to lie in the weeds for almost well over a decade and then claim that they have been harmed by conduct of which they were aware that occurred during this time.  *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 749 (1989) ("*Reid*") ("Congress' paramount goal in revising the 1976 Act [was] enhancing predictability and certainty of copyright ownership."); *Merch. v. Levy*, 92 F.3d 51, 57 (2d Cir. 1996) (barring claims where copyright owner knows of claims but delays in bringing suit "promotes the principles of repose integral to a properly functioning copyright market"); *Zuill*, 80 F.3d at 1370-71 ("It is inequitable to allow the putative co-owner to lie in the weeds for years after his claim has been repudiated, while large amounts of money are spent developing a market for the copyrighted material, and then pounce on the prize after it has been brought in by another's effort.").

Cooley's conduct also created an implied license in favor of Psihoyos and thus Cooley cannot now claim—nearly two decades later—that the photographs are "unauthorized"

derivative works.  *See, e.g.*, *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) ("consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license"); *DeCarlo v. Archie Comic Publ'ns, Inc.*, 127 F. Supp. 2d 497, 510 (S.D.N.Y. 2001), *aff'd*, 11 Fed. App'x 26 (2d Cir. 2001) ("Silence or inaction in the face of an explicit contrary assumption by the opposing party may be sufficient to induce justifiable reliance by a defendant that a plaintiff will not later assert a claim."); Melville B. Nimmer & David Nimmer, 3 Nimmer on Copyright § 10.03[A][7] (1996), at 10-43 ("nonexclusive licenses . . . may even be implied from conduct").

Plaintiffs' failure to address these defenses in their motion papers precludes Plaintiffs from raising any argument with respect to these defenses in their reply.  *See, e.g.*, *United States v. Letscher*, 83 F. Supp. 2d 367, 377 (S.D.N.Y. 1999) ("arguments raised in reply papers are not properly a basis for granting relief"); *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998) ("new arguments raised in reply papers in support of a motion for summary judgment will not be considered").

## IV.   PLAINTIFFS' MOTION MUST BE DENIED BECAUSE IT IS RELIES HEAVILY ON INADMISSIBLE EVIDENCE.

Plaintiffs' Motion also should be denied because it is supported with inadmissible evidence.  An affidavit or declaration used to support a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *accord Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, No. 09-cv-1251(DAB), 2011 WL 3586060, at *4 (S.D.N.Y. Jul. 29, 2011).  The Declaration of Brian Cooley, which is Plaintiffs' primary evidence in support of their Motion, fails to meet this standard. The Cooley Declaration is not based on Cooley's personal knowledge and does not show that he is competent

9

to testify on the matters stated.  This is not a mere oversight.  Rather, the Cooley Declaration is a transparent effort by Plaintiffs' counsel to smuggle legal arguments, suppositions, and guesswork into the Motion under the guise of evidence.

For instance, Cooley's declaration includes legal conclusions, including commentary about U.S. Copyright law and New York contract law, about which Cooley is not qualified to express an opinion.  *See* Cooley Decl. (Dkt. No. 65) ¶¶ 11, 14, 21, 26.  Cooley also opines extensively on his own interpretation of the agreement between NGS and Psihoyos (which he concedes he was not a party to and read only after this suit was filed).  *Id.* ¶ 20.  Cooley also offers asides and editorial comments on Psihoyos' filings in this action and Psihoyos' deposition testimony.  *Id.* ¶¶ 12, 16.  Cooley also engages in an extended soliloquy about his entitlement to a permanent restraining order and his opinion that the evidence supports a claim for "willful" copyright infringement – a claim which Plaintiffs are not entitled to raise because they concede that the copyrights in the models were not registered until November 2011 which was after all allegedly infringing acts.  *Id.* ¶¶ 30-31.  In fact, Cooley even goes so far as to offer his legal opinion about the ultimate issues in the case.  *Id.* ¶ 21.

Cooley's Declaration is not based on his personal knowledge, and does not recount *facts*.  Rather, Cooley's Declaration is a litany of legal arguments dressed up and disguised as a factual declaration.  Indeed, these layman's rants amount to Mr. Cooley's *opinion* that when copyright in something is transferred to him, it carries greater legal significance than when it's transferred to the National Geographic Society or to Mr. Psihoyos.  Cooley is not qualified to testified on the

statements and issues in his declarations.  Because this evidence is inadmissible, it cannot be considered in resolving Plaintiffs' Motion.[2]

## V.    PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIM IS PRECLUDED BY THE STATUTE OF LIMITATIONS.

Plaintiffs' claims are barred by the statute of limitations set forth in 17 U.S.C. § 507(b). The gravamen of Plaintiffs' claim against Psihoyos is that he failed to obtain permission to copy the Cooley models or license the photographs that he created.  Psihoyos created these photographs at Plaintiffs' studio—with Cooley present—in late 1995.  Psihoyos began licensing the photos in 1997 when NGS provided the photos to his licensing agent.  If Plaintiffs' claims accrued when the allegedly infringing conduct began, *see Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235, 247 (S.D.N.Y. 2004), then Plaintiffs' claims accrued in 1995 and 1997 and thus are barred by Section 507(b).

Plaintiffs' claims also are barred even if the discovery rule applies.  *See Tomas v. Gillespie*, 385 F. Supp. 2d 240, 243 (S.D.N.Y. 2005) ("To trigger the statute of limitations, it is required only that the plaintiff knows of the facts furnishing her with a claim, not that those facts are sufficient to entitle her to relief.").  With respect to Plaintiffs' claim that Psihoyos infringed their copyright by copying the models, there is no doubt that Cooley was aware of Psihoyos' "copying" of the models in 1995 as Cooley concedes he was present during the photo shoot. Any claim for unauthorized copying or preparing unauthorized derivative works thus undoubtedly is barred under Section 507(b).

If Plaintiffs' claim is read as pertaining only to Psihoyos' subsequent licensing of the

---

[2] Rather than move to strike the Cooley Declaration, Psihoyos respectfully requests that the Court simply disregard it.  *See Mihalik*, 2011 WL 3586060, at *4 ("nothing in the Federal Rules or the Local Rules requires a court to engage in the time-consuming, cumbersome process of formally striking [a declaration] . . . . Instead, a court may 'simply disregard the allegations that are not properly supported.'").

photos, Cooley testified that he has known that Psihoyos was allowing third parties (other than NGS) to use these photos in projects that were beyond publication in *National Geographic* since at least "the late '90s."   *See* Cooley Dep. at 109:11—110:6.   Because Cooley was aware that Psihoyos was licensing these photos to third parties over 12 years ago, the statute of limitations was triggered.   *See Margo v. Weiss*, 213 F.3d 55, 60 (2d Cir. 2000) (plaintiffs' deposition testimony revealed that they knew of facts surrounding their co-authorship claim before the three-year accrual period).   The statute of limitations on any potential copyright claim against Psihoyos thus expired long ago.

Plaintiffs' contention that each subsequent use of the photographs constituted the creation of a new "derivative work" and thus a new infringement is baseless.   The books created by the publisher Defendants are not new "derivative works" of Cooley's models simply because they include a photograph that features the models.   Nor would such an argument be relevant with respect to Plaintiffs' claims against Psihoyos, who did not play any role in the sale of his photos or publish the books indentified in the Complaint.   Merely because Psihoyos gained licensing *revenue* does not give rise to a new *claim* against Psihoyos.   *See Stone v. Williams*, 970 F.2d 1043, 1049-50 (2d Cir. 1992) ("Application of the continuous wrong doctrine generally has been rejected in the infringement context.").   Plaintiffs cannot avoid the statute of limitations by construing actions by different parties as giving rise to new claims against Psihoyos.   Psihoyos created these images in 1995 and began licensing them in 1997.

## VI.   PLAINTIFFS CANNOT MAKE OUT A CLAIM FOR UNAUTHORIZED COPYING OR PREPARING UNAUTHORIZED DERIVATIVE WORKS.

Plaintiffs' Motion is rather unclear at times as to what acts, precisely, Plaintiffs contend constitute infringement.   For instance, Plaintiffs argue:

If pre-existing material serves as the basis for a derivative or collective work and

> is itself protected by copyright, then its unauthorized incorporation into the derivative or collective work comprises direct copyright infringement. It directly violates the copyright holder's exclusive right to prepare derivative works based upon the preexisting work. Thus, for instance, Psihoyos has directly infringed the Plaintiffs' copyrights by reproducing and peddling his derivative works without Cooley's authorization.

Pl. Mtn. (Dkt. No. 66) at 32 (citation omitted).  But there is no serious dispute that Cooley *did authorize* Psihoyos to photograph the models and thus Plaintiffs cannot possibly make out a claim against Psihoyos for unauthorized copying or creating unauthorized derivative works.

A copyright owner possesses exclusive rights "to reproduce the copyrighted work in copies" and "to prepare derivative works based upon the copyrighted work."  *See* 17 U.S.C. §§ 106(1)-(3).  Even assuming that Cooley did own copyrights in the models at the time – which he did not – Plaintiffs concede that Cooley expressly authorized Psihoyos to copy the models by creating photographs of them.  *See* Cooley Dep. at 25:5-14 ("[NGS] had my permission to let Mr. Psihoyos into my studio to photograph these sculptures."); 27:11-18 ("I had no problem at all [with Mr. Psihoyos being there or taking the photographs].  In fact, I thought we got along very well."); 139:9-11 ("Q. [Y]ou authorized the creation of the photographs? A. I did.").  Indeed, Cooley concedes in his declaration that "It is true that I was present during the photo shoot, and in fact collaborated with Psihoyos on creating the images."  Cooley Decl. (Dkt. No. 65) ¶ 19; *accord* Psihoyos Feb. 3, 2012 Aff. (Dkt. No. 34), ¶ 20.

Thus, even setting aside the express language of the NGS agreements and the fact that Cooley was not the copyright owner at the time, Cooley undoubtedly authorized Psihoyos to photograph the models.  Consequently, Psihoyos' "copying" and creation of "derivative works" cannot possibly be <u>unauthorized</u> or run afoul of Cooley's alleged rights under Section 106.  Nor can Plaintiffs make out a claim under 17 U.S.C. § 103(a), which prohibits only copies or derivative works that include preexisting material that "has been used unlawfully."  Plaintiffs

cannot possibly establish that Psihoyos used any material "unlawfully" given that he was authorized by both the copyright holder (NGS) and the model maker (Cooley) to photograph the models.

## VII.   PLAINTIFFS CANNOT MAKE OUT A CLAIM FOR INFRINGEMENT AGAINST PSIHOYOS UNDER ANY THEORY.

Because Plaintiffs cannot seriously contend that Psihoyos' copying or preparing derivative works was unauthorized, the only possible basis for an infringement claim must relate only to Psihoyos' subsequent licensing of the photos.  In addition to being precluded by the statute of limitations and the other defenses identified above, Plaintiffs' unauthorized distribution claim is discredited and precluded by the separate agreements between NGS and Cooley and Psihoyos.

The agreement between NGS and Cooley is unambiguous that NGS acquired "all reproduction rights and copyrights" in the models and held these rights when NGS granted copyrights in the photos to Psihoyos.  Nelson June 29, 2012 Decl. (Dkt No. 62) Ex. 1 ("NGS-Cooley Agmt.").  Although NGS did agree to transfer limited copyrights to Cooley, the agreement is unambiguous that this assignment did not occur until "[o]ne year after publication." *Id.*  Because the "Dinosaur Eggs" article was published in the May 1996 edition of *National Geographic*, Cooley did not obtain any rights in the models from NGS until at least April 1997.

Before NGS transferred rights in the models to Cooley, however, NGS granted Psihoyos copyrights in the photos that Psihoyos had created, including the photos he created of the Cooley models.  *Id.* Ex. 2, ¶ 8 ("NGS-Psihoyos Agmt.").  Because Cooley would not obtain rights from NGS until 9 months later, Cooley had no rights in the models when Psihoyos acquired copyrights in the photos from NGS.

Plaintiffs' Motion confusingly argues that Cooley's alleged ownership of copyrights in

the models entitles him to control licensing of any photos of his models, while at the same time arguing that NGS was not entitled to allow licensing of photos of the models.  This argument is wrong as a matter of law (not to mention hypocritical).  Because the Cooley Agreement is unequivocal that NGS held "*__all__* reproduction rights and copyrights" in the models, NGS controlled all rights recognized under Section 106 of the Copyright Act.  Again, these rights include the ability to control copying and distributing of the models, as well as the creation of derivative works.  17 U.S.C. §106.

NGS exercised these rights by granting permission to Psihoyos to create photographs of these models and agreeing that he would own "the copyright in all published and unpublished photographs," including the right to control the subsequent licensing and use of his photos.  *See* NGS-Psihoyos Agmt. at 2, ¶ 8.  NGS granted copyrights in the photos to Psihoyos "[n]inety days after publication," which was a full nine months before Cooley obtained *any* rights in the models.  *Id.*  At this time, Cooley held no rights in the models and Cooley's agreement with NGS did not preclude NGS from granting such rights to Psihoyos.

The rights in the photographs that NGS granted to Psihoyos included all rights attendant to copyright ownership, including the right to authorize subsequent licensing, without any restrictions other than those set forth in the agreement between NGS and Psihoyos.  *See* NGS-Psihoyos Agmt. at 2-3, ¶ 8.  Nothing in the Psihoyos Agreement divested Psihoyos of his right to license his photos or required that he need to obtain a further grant from Cooley when the rights to the underlying models reverted to Cooley.  *Id.*

Likewise, nothing in the Cooley Agreement indicates that Cooley obtained copyrights in the models free and clear of any prior licenses that already had been granted by NGS.  On the contrary, the Cooley Agreement references only potential *future* licenses by NGS, not any prior

licenses already granted or any derivative works already authorized, and thus the Cooley Agreement confirms that the rights granted to Cooley are *prospective* only.  *See* NGS-Cooley Agmt. at 1.  Moreover, the rights assigned to Cooley, by their very terms, relate only to the *models*, not any derivative works or photographs that NGS authorized while it owned the models.  *Id.*  In fact, Cooley cannot have obtained the right to control, prevent, or otherwise object to Psihoyos' subsequent licensing of his photographs because, at the time NGS assigned rights to Cooley, NGS already had granted those rights to Psihoyos and unequivocally pledged that these rights were irrevocable.  Thus, whatever rights NGS eventually granted to Cooley were limited by the permission and rights that NGS previously granted to Psihoyos.

Because NGS owned "all reproduction rights and copyrights" in the models, NGS unquestionably had authority to authorize Psihoyos to create "copies" or "derivative works" of the models.  *See* 17 U.S.C. § 106.  And because NGS (and Cooley) authorized the creation of the photos, Plaintiffs cannot prevail on their claim that Psihoyos' copying was unauthorized because Moreover, NGS not only authorized Psihoyos to create the photographs, it also expressly granted him the copyrights in the photographs.  *See* NGS-Psihoyos Agmt. at ¶ 8.

In any event, even if Plaintiffs were correct that NGS did not have the right to authorize Psihoyos to license the photos, that would give rise to a claim (for breach of contract or otherwise) against NGS, not Psihoyos.  At the time that NGS granted copyrights in the photos to Psihoyos, Psihoyos had no idea that Cooley *subsequently* would obtain rights in the models.  On the contrary, it was Psihoyos' understanding that NGS owned the models and the copyrights therein and that NGS was authorized to grant him copyrights in the photos.  Psihoyos Feb. 3, 2012 Aff. (Dkt. No. 34), ¶¶ 12-13.

For purposes of determining whether Psihoyos is liable for copyright infringement, the

only relevant issue is whether Psihoyos acted within the scope of the rights and license granted to him by NGS.  No case law restricts Psihoyos' rights to reproduce and distribute his photos under these circumstances, where the original creator of the works (Cooley) expressly authorized Psihoyos to create these photographs and the copyright owner at the time (NGS) granted Psihoyos copyrights to those photographs.  NGS did not advise Psihoyos of any grant of rights in the models to Cooley, and NGS did not impose any restrictions on Psihoyos' normal rights to license his photos.   On the contrary, discovery confirmed that NGS shared Psihoyos' understanding of the agreements and rights conveyed to Psihoyos, as evidenced by the fact that NGS transferred the photos directly to Psihoyos' licensing agent and even subsequently purchased limited licenses to use the photos from Psihoyos' agents.  *See* Nelson June 29, 2012 Decl. Exs. 11-12.

If Cooley truly believes that his rights have been violated, his only recourse is to pursue claims against NGS, not Psihoyos, who acted at all times in good faith and did nothing other than exercise the legitimate rights that he believed had been (and were) granted to him by NGS.

## VIII.   PLAINTIFFS' COPYRIGHT CLAIM WOULD REQUIRE THE COURT TO IGNORE CRUCIAL PROVISIONS OF THE AGREEMENT BETWEEN NGS AND PSIHOYOS.

Plaintiffs' copyright claims must fail because they require the Court to ignore crucial provisions of the agreement between NGS and Psihoyos.  Contrary to Plaintiffs' suggestion, the NGS-Cooley agreement cannot be read as terminating or revoking the rights that NGS already had granted to Psihoyos, particularly because NGS expressly "pledged" to Psihoyos "that it shall never exercise any right of termination which may exist as to the above grant of copyright to [Psihoyos]."  NGS-Psihoyos Agmt at 3.  Basic tenets of contract law preclude Plaintiffs' reading of these agreements and would render the "copyrights" granted to Psihoyos by NGS

17

meaningless.  *See LaSalle Bank Nat'l Assn. v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005); *Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (court must "safeguard against adopting an interpretation that would render any individual provision superfluous"); *Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204, 229 (S.D.N.Y. 2000) ("[B]asic principles of contract interpretation militate against the adoption of an interpretation that would render any portion of the contract language a nullity.").  The Court must read the agreements in a manner that does not strip Psihoyos of the benefits of the copyrights he was granted under his agreement with NGS.  *Random House, Inc. v. Rosetta Books LLC*, 150 F. Supp. 2d 613, 618 (S.D.N.Y. 2001) ("The court must consider the entire contract and reconcile all parts, if possible, to avoid an inconsistency.")

Avoiding the intractable problem created by Plaintiffs' position merely requires reading the rights assigned to Cooley as prospective only.  That the rights assigned to Cooley were prospective only is supported by the express language of Cooley's agreement with NGS which, as demonstrated above, references only *future* licensing and is silent with respect to any prior licenses already granted by NGS or any derivative works already authorized by NGS.

This conclusion also is required because NGS plainly intended to allow Psihoyos to grant subsequent licenses in his photos of the models.  *See Id.* at 620 (courts should adopt "the most reasonable interpretation of the grant [of rights] in the contracts at issue" so as not to do harm to the licensor's intentions).  For instance, NGS delivered Psihoyos' photos directly to Psihoyos' licensing agent at the time, Matrix International.  *See* Nelson June 29, 2012 Decl. Ex. 11.  NGS also repeatedly purchased licenses from Psihoyos to republish these photos, even after NGS conveyed rights in the models to Cooley.  *Id.* Ex. 12.  This evidence confirms that NGS never intended to impose any restrictions on Psihoyos' right to subsequently license his photos and

18

fully discredits Plaintiffs' position that NGS intended to limit Psihoyos' rights in his photos to the "discrete purpose of . . . publication in the May 1996 issue of *National Geographic*." *Id.* Ex. 13 (Plaintiffs' Responses to Interrogatories) at 3, No. 1.

The only acceptable interpretation of the NGS agreements is that Cooley's rights in his *models* coexist with Psihoyos' already-vested rights in his *photographs*, which necessarily included the right to license his photos. Because NGS already had authorized Psihoyos to create photographs depicting the models and already had granted Psihoyos copyrights in those photos, NGS could not have subsequently granted that same right to Cooley or transferred rights to Cooley that effectively stripped Psihoyos of the lawful benefits of his copyrights. And certainly NGS could not have done so implicitly. Because nothing in the Cooley Agreement could be read to eliminate the valid rights that NGS already granted to Psihoyos while NGS was the indisputable copyright owner of the models, NGS' assignment of rights to Cooley must be construed as *prospective only* and cannot be construed so as to revoke, terminate, or in any way diminish the prior permissions and rights that already had been granted to Psihoyos by NGS in August 1996.

## IX.   PLAINTIFFS' CONTRIBUTORY AND VICARIOUS INFRINGEMENT CLAIMS FAIL AS A MATTER OF LAW.

A claim for contributory infringement requires Plaintiffs to demonstrate that Psihoyos, "with knowledge of the infringing activity, induce[d], cause[d] or materially contribute[d] to the infringing conduct of another[.]" *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *see also Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996). Vicarious infringement requires Plaintiffs to demonstrate that Psihoyos "has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).

Both contributory and vicarious infringement claims, therefore, are forms of secondary liability, and thus essential element underlying both claims is that Plaintiffs be able to make out a claim of *direct* copyright infringement against a third party.  *See Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 149 (S.D.N.Y. 2009) ("For all three theories of secondary copyright infringement, there must be the direct infringement of a third party."); *Matthew Bender & Co.*, 158 F.3d 693, 706 (2d Cir.1998) (finding plaintiff failed to identify any third-party infringers); *Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) ("Contributory infringement necessarily must follow a finding of direct or primary infringement."); 2 Paul Goldstein, Copyright § 6.0 (1996) ("For a defendant to be held contributorily or vicariously liable, a direct infringement must have occurred.").  If Plaintiffs cannot make out a claim for direct infringement against a third party, Plaintiffs cannot sustain their secondary liability theories of infringement against Psihoyos.

Plaintiffs cannot make out any direct infringements by a third party because Plaintiffs settled, released, and dismissed *with prejudice* their direct infringement claims against all other defendants, and thus there no longer are any direct infringement claims at issue in this suit.  (*See* Dkt. Nos. 48-50, 54, 56-68.)  Moreover, the settlements reached between Plaintiffs and the other defendants (i) denied that any infringement occurred, (ii) included full releases, (iii) included covenants not to sue, and (iv) some included licenses from Cooley that operate retroactively to authorize whatever uses Plaintiffs previously alleged to be infringing.  *See, e.g.*, Nelson June 29, 2012 Decl. Ex. 17.

Because Plaintiffs have now released their claims against all third parties and granted licenses to cover the alleged direct infringements, Plaintiffs can no longer assert direct claims against those entities and thus cannot assert any secondary infringement claims against Psihoyos

20

related thereto.  Indeed, Plaintiffs' direct claims have been dismissed with prejudice.  Plaintiffs thus cannot establish an essential element of their secondary liability claims against Psihoyos.

Furthermore, for the reasons discussed above, Psihoyos was authorized to create the photos at issue and was granted copyrights in the photos nine months before Cooley acquired any rights in the models.  Therefore, Plaintiffs' cannot sustain any infringement claims against Psihoyos, and his licensing agents conduct is fully authorized by Psihoyos, who owns valid copyright in the photos he was authorized to create.

Defendants also offer no evidence that Psihoyos had the right to supervise or control the actions of the licensors, including Getty Images and Corbis.

## CONCLUSION

For all these reasons, the Court should DENY Plaintiff's belated, improper Motion for Partial Summary Judgment.

Dated:  New York, New York
        July 19, 2012

Respectfully submitted by:

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON &McCULLOCH LLP
The Chrysler Building
405 Lexington Ave., 26th Floor
New York, New York 10174
Tel: (212) 907-6677
Fax: (646) 308-1178
dnelson@nelsonmcculloch.com
kmcculloch@nelsonmcculloch.com

*Counsel for Defendant Psihoyos*

**CERTIFICATE OF SERVICE**

I, Danial A. Nelson, an attorney, hereby certify that I caused a true and correct copy of DEFENDANT PSIHOYOS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTINO FOR PARTIAL SUMMARY JUDGMENT to be served via the ECF system and/or electronic mail on all counsel listed below on this 19th day of July 2012.


Sam P. Israel, Esq.
1 Liberty Plaza, 23rd Floor
New York, New York  10006
Tel:  (212) 201-5345
Fax: (212) 201-5343
smisrael@aol.com


Dated:  July 19, 2012


_____
Danial A. Nelson
dnelson@nelsonmcculloch.com