UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
BRIAN COOLEY and COOLEY & Co. LTD.,

                                    Plaintiffs,


                    -against-                                    12-cv-0001 (LAK)


PENGUIN GROUP (USA) INC., et al.,

                                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


                    **MEMORANDUM OPINION**


                    Appearances:

                                    Sam Peter Israel
                                    SAM P. ISRAEL, P.C.
                                    *Attorney for Plaintiffs*


                                    Danial A. Nelson
                                    Kevin Patrick McCulloch
                                    NELSON & McCULLOCH LLP
                                    *Attorneys for Defendant Louis Psihoyos*


LEWIS A. KAPLAN, *District Judge.*

                    Brian Cooley created two sculptures of dinosaur eggs for the National Geographic

Society ("National Geographic") for use in connection with an article in its magazine, *National

Geographic*.   Louis Psihoyos photographed the sculptures so that the photographs could be

published in the article.   Pursuant to the terms of their respective contracts with National

Geographic, both Cooley and Psihoyos transferred the copyrights in their works to National

Geographic with the copyrights to be assigned to them at different times after publication.  Later, Psihoyos licensed the photographs of the sculptures for various uses and received royalties on the images.  Cooley and his company, Cooley & Co., Ltd. (collectively, "Cooley"), have brought this action against Psihoyos for copyright infringement, violation of the Lanham Act, and unfair competition.[1]

There are two motions before the Court.  Psihoyos moves for summary judgment dismissing the complaint.  Cooley seeks partial summary judgment determining that Cooley at all relevant times has owned valid copyrights in the sculptures and that Psihoyos infringed those copyrights, and dismissing Psihoyos's statute of limitations defense.

*Facts*

In 1993, Charlie Magovern discovered a fossilized embryo of a therizinosaur, a variety of dinosaur.[2]  He playfully named the fossil "Baby Louie" after his friend Louis Psihoyos, a photographer who had photographed a number of fossils that Magovern had discovered.[3]  Two years later, Psihoyos pitched an article on Magovern's discovery to National Geographic.[4]  National Geographic agreed.  In preparation for the article, it engaged sculptor Brian Cooley to construct

---

[1] Although Cooley sued initially several defendants for copyright infringement, the other defendants have since settled.

[2] Psihoyos Decl. [DI 34] ¶ 9.

[3] *Id*.

[4] *Id.* ¶ 8.

models of two dinosaur eggs and Psihoyos to photograph the sculptures.[5]  Each artist's agreement with National Geographic is relevant to this dispute.

A.      *The Contracts*

Cooley agreed with National Geographic in September 1995 (as confirmed in writing on November 30, 1995) to create the two dinosaur embryo sculptures for $6,000.[6]  The agreement provided that:

> "[t]he payment will cover purchase by [National Geographic] of all reproduction rights and copyrights in the work.  One year after publication the artwork [i.e. the two sculptures] will be returned to you along with all rights including copyright thereto except that you hereby grant [National Geographic] a perpetual non-exclusive right (1) to reproduce the work for its own purposes without further payment, (2) to grant requests for reuse without payment by educational and/or non-profit uses, and (3) to grant permission to other organizations to reproduce the work upon payment of an appropriate fee."[7]

It provided also that Cooley was a "free-lance contractor."[8]

National Geographic entered into a letter agreement with Psihoyos some time in the second half of 1995.[9]  Paragraph 8 provided in relevant part:

---

[5]        Cooley Decl. [DI 65], Ex. 3 (Cooley letter agreement dated Nov. 30, 1995); Israel Decl. [DI 70] Ex. 9 (color copies of May 1996 *National Geographic* pages depicting works in question); Nelson Decl. [DI 62], Ex. 2 (Psihoyos letter agreement executed Dec. 24, 1995) ¶ 8.

[6]        Cooley Decl. [DI 65], Ex. 3 (Cooley letter agreement dated Nov. 30, 1995)

[7]        *Id.*

[8]        *Id.*

[9]        Nelson Decl. [DI 62], Ex. 2 (Psihoyos letter agreement executed Dec. 24, 1995) ¶ 8.

> "All photographs taken by you under this Agreement will be considered as specially commissioned for use by [National Geographic] and upon creation all rights, including the copyright, to these photographs will automatically, by virtue of this Agreement, be deemed transferred to [National Geographic].  Ninety days after publication [of the article], and in return for the license granted to [National Geographic] [permitting certain continued uses of the photographs], [National Geographic] will return to you the copyright *in all published and unpublished photographs from that assignment*."[10]

The agreement provided also that Psihoyos was a "freelance photographer" and an "independent contractor."[11]


B.      *Cooley Creates the Sculptures and Psihoyos Photographs Them*

        Cooley spent hundreds of hours researching, designing, and constructing the sculptures before he completed them in the fall of 1995 in his studio in Canada.[12]  As Cooley conceived them, the embryos are nestled within the egg shells.[13]  The embryo lies lengthwise in one

---

[10]

  *Id.* (emphasis added).

[11]

  *Id*. at 1 and ¶ 9

[12]

  Cooley Decl. [DI 65] ¶¶ 3, 4, 8.

  Psihoyos at one point claimed that Cooley relied on his photographs of the fossils to create the sculptures.  Psihoyos Decl. [DI 34] ¶ 11.  His "understanding," however, was not said to rest on personal knowledge.  Evidence in support of and in opposition to motions for summary judgment must be admissible in evidence. *See, e.g.*, *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001); *Raskin v. Wyatt*, 125 F.3d 55, 66 (2d Cir. 1997).  Accordingly, Psihoyos's "understanding" is not properly considered here.  In any case, the point is not material.  Cooley, for his part, said that he had not seen Psihoyos's photographs of the fossils.  Cooley Decl. [DI 65] ¶ 5.

[13]

  Cooley Decl. [DI 65] ¶ 3; Ex. 4 (photographs of sculptures as featured in *The Great Dinosaur Egg Hunt*, Nat'l Geographic, May 1996)..

and is coiled in the other.[14]

In November or December of 1995, Psihoyos went to Cooley's studio and photographed the sculptures.[15]  In early 1996, and thus after Psihoyos photographed the sculptures, National Geographic paid Cooley.[16]  The article containing the photographs, "The Great Dinosaur Egg Hunt," was published in the May 1996 issue of *National Geographic*.[17]  According to his contract with National Geographic, the copyrights in the photographs were assigned to Psihoyos in or about August 1996, three months after publication.  In accordance with Cooley's contract, the copyrights in the sculptures were reassigned to him in or about May 1997, one year after publication.

C.    *Photographs of the Sculptures Appear Beyond the Pages of* National Geographic

Psihoyos admits that he provided copies of the photographs to his licensing agent and began licensing them to third parties in 1997.[18]  Among other things, he authored a book, *Hunting Dinosaurs*,[19] in 2001 that contained copies of certain of the photographs. He created also digital files

---

[14]
       Cooley Decl. [DI 65], Ex. 4 (photographs of sculptures as featured in *The Great Dinosaur Egg Hunt*, NAT'L GEOGRAPHIC, May 1996).

[15]
       *See* Cooley Decl. [DI 65] ¶ 8; Nelson Decl. [DI 62], Ex. 10 (National Geographic payment record reflecting payment to Psihoyos for *Dinosaur Egg* photography November 18-December 20, 1995).

[16]
       Cooley Decl. [DI 37] ¶ 9.

[17]
       Cooley Decl. [DI 65], Ex. 4 (photographs of sculptures as featured in *The Great Dinosaur Egg Hunt*, NAT'L GEOGRAPHIC, May 1996).

[18]
       Psihoyos Mem. [DI 61] at 17.

[19]
       Nelson Decl. [DI 62], Ex. 22 (HUNTING DINOSAURS, reproduction of the inside flap of the dust jacket).

of the photographs and made them available for licensing through stock photography companies Corbis Corporation, Getty Images and, most recently, Superstock.[20]   The stock photography companies displayed the images online.[21]   And in 2011, Dorling Kindersley, a United Kingdom subsidiary of Penguin Group, published three books, *Dinosaurs: A Visual Encyclopedia*, *Dinosaurs: A Children's Encyclopedia*, and *Ask a Dinosaur*, which contained copies of certain of the Psihoyos photographs of the Cooley sculptures that were obtained and licensed through Corbis and Getty.[22]

Cooley first learned of Psihoyos's licensing activity in October 2011,[23] and he brought this suit in December 2011.[24]   Indeed, he has testified that he would have pursued legal

---

[20]

Israel Decl. [DI 64], Ex. 14 (Psihoyos Dep.) 104:14-23 (stating Getty and Corbis obtained images from Psihoyos's licensing agent); Ex. 20 (Decl. of Yuki A. Hirose for Def. Penguin Grp. (USA) Inc.) ¶¶ 3, 6 (stating that Penguin licensed photographs from Psihoyos through Corbis and Getty), Ex. 11 (Decl. of Lanny Ziering for Superstock) ¶¶ 3–5 (stating photographs licensed through Psihoyos's licensing agent); Nelson Decl. [DI 62], Exs. 18–21 (Psihoyos database information provided to licensing agents); Answer and Additional Defenses of Louis Psihoyos [DI 29] ¶ 25 (admitting creation of the photographs and their provision to Corbis and Psihoyos's licensing agent).

[21]

Israel Decl. [DI 64], Ex. 6 (Getty, Corbis, and Superstock webpages featuring the images).

[22]

Israel Decl. [DI 64], Ex. 20 (Decl. of Yuki A. Hirose for Def. Penguin Grp. (USA) Inc.) ¶¶ 3, 6.   *Dinosaurs: A Visual Encyclopedia* and *Dinosaurs: A Children's Encyclopedia* essentially are the same work.   The former is the U.S. edition – which Penguin Group distributed – and the latter the U.K. edition. *Id.*

[23]

Cooley Decl. [DI 65] ¶ 18; Israel Decl. [DI 64], Ex. 14 (Cooley Dep.) at 54:11-56:11.

[24]

Cooley assigned his copyrights in the sculptures to his company, Cooley & Co. Ltd., also a plaintiff here, in November 2011, and registered the copyrights.   Israel Decl. [DI 70], Ex. 14 (copyright assignment); Cooley Decl. [DI 65] ¶ 9, Ex. 2 (Copyright Certificates of Registration).

Psihoyos makes the meritless argument that neither plaintiff has standing because only the owner of a copyright and the causes of action can bring suit whereas Cooley owns the causes of action that accrued prior to November 2011 while Cooley & Co. owns the copyright.   The plaintiffs both have standing because the assignor of a copyright has

7

action earlier had Psihoyos's activities come to his attention.[25]

In an effort to portray Cooley as knowingly having slept on his rights for years while Psihoyos commercially exploited the photographs, Psihoyos asserts that he "can only assume that Mr. Cooley has been fully aware that [the] photographs have been used, copied and displayed over the last fifteen years."[26] But he attributes this assumption only to two facts – National Geographic's use and display of the photographs, including on its website, and their use by Charlie McGovern, who discovered "Baby Louie," in a traveling museum exhibition.  But neither supports his assumption.

The McGovern story is simple.  In the late 1990s, Magovern proposed to use Cooley's sculptures in a traveling exhibition organized by his entity, the Stone Company.[27]  Cooley learned that Psihoyos's photographs of the sculptures were to be displayed in the exhibition but did not object, in part because the Stone Company was "a client."[28]  Rather, he told the Stone Company it was "welcome" to use "any images" of the sculptures in the exhibition and in its promotion.[29]

The National Geographic story is similar.  Cooley "expressly authorized" its use of

---

standing to sue for infringing acts which occurred prior to the assignment of the copyright. 3 MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHT § 12.02[B].

[25] Cooley Decl. [DI 37] ¶ 10.

[26] Psihoyos Decl. [DI 34] ¶ 18.

[27] *See* Israel Decl. [DI 64], Ex. 13 (Cooley Dep.) at 108:17–110:21.

[28] *Id.*

[29] *Id.*; *see also* Cooley Decl. [DI 37] ¶ 10.

8

his works.[30]  Indeed, his contract explicitly gave National Geographic the perpetual non-exclusive right "to reproduce the work for its own purposes without further payment."[31]

Accordingly, there is no genuine issue of fact as to Cooley's lack of awareness, until shortly before and in some instances after the commencement of this action, of Psihoyos's alleged infringements.[32]

### Discussion

A.   *Summary Judgment Standard*

Summary judgment is warranted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[33]  The moving party must demonstrate the absence of any genuine issue of material fact, and the Court must view the facts in the light most

---

[30]

Cooley Decl. [DI 37] ¶ 10.

[31]

Cooley Decl. [DI 65], Ex. 3 (Cooley letter agreement dated Nov. 30, 1995)

[32]

The Court notes that Psihoyos's treatment of the facts leaves a good deal of candor to be desired.  The Rule 56.1 Statement in support of his motion for summary judgment asserts that "Cooley was aware at least as early as 'the late '90s' [meaning 1990s] that Psihoyos was allowing third parties (other than NGS) to use Psihoyos' photos of the Cooley models in 'traveling exhibits' and projects that did not involve NGS." He cites for that proposition only pages 109-110 of Cooley's deposition.  DI 60, ¶ 21.  In fact, the quoted portion of Cooley's deposition refers only to the use by Charlie McGovern – not third par*ties* generally – of Psihoyos's photographs in an exhibit and says nothing at all about other projects.

[33]

FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000).

favorable to the nonmoving party.[34]   Where, as here, both parties file motions for summary judgment, the court nevertheless "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."[35]

B.      *Copyright Infringement*

The Copyright Act "gives copyright owners the exclusive rights, among other things, to reproduce a copyrighted work, to prepare derivative works, to distribute copies to the public, and to display the work publicly."[36]   To prove infringement, a plaintiff holding a valid copyright must show that the defendant actually copied protectible elements of the plaintiff's work without the plaintiff's authorization.[37]   "To demonstrate unauthorized copying, the plaintiff must first 'show that his work was actually copied'; second, he must establish 'substantial similarity' or that 'the copying

---

[34]

> *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598 (1970).

[35]

> *Hotel Emps. & Restaurant Emps. Union, Local 100 v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)) (internal quotation marks omitted); *accord Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004).

[36]

> *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 430 (2d Cir. 2012); *see also* 17 U.S.C. § 106.

[37]

> *See Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) ("To establish copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'") (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282 (1991)).

amounts to an improper or unlawful appropriation.'"[38]

The parties do not dispute that the egg sculptures that appear in the Psihoyos photographs were the works Cooley prepared. The Court therefore must determine the rights of Cooley and Psihoyos with respect to their respective works, including whether Psihoyos's rights included reproduction and licensing of the photographs depicting those sculptures absent Cooley's permission.

### 1.   Infringement

Cooley contends that he owns the copyrights in the sculptures and that Psihoyos's distribution and licensing of the photographs of them has infringed his rights. Psihoyos responds that he has exclusive rights in the photographs by transfer from National Geographic, which commissioned the sculptures from Cooley as "works for hire" and held exclusive rights to the sculptures when it conveyed its rights to Psihoyos.[39] Psihoyos points also to the fact that National Geographic retained the right under the Cooley contract "to reproduce the work [i.e., Cooley's sculptures],"[40] even after it transferred its other rights in the Cooley sculptures to Cooley.[41] Psihoyos interprets that provision to mean that National Geographic's transfer to Psihoyos of its rights in the

---

[38]
  *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003) (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137-38 (2d Cir. 1998) (internal quotation marks omitted)).

[39]
  *See* Psihoyos Mem. [DI 61] at 3, 5, 8.

[40]
  Cooley Decl. [DI 65], Ex. 3 (Cooley letter agreement dated Nov. 30, 1995)

[41]
  *See* Psihoyos Mem. [DI 61] at 8.

photographs carried with it National Geographic's right under the Cooley contract to reproduce Cooley's sculptures.[42]  Psihoyos's arguments are entirely without merit.

> a.    *Cooley's Ownership of the Sculpture Copyrights*

The significance of whether a copyrighted work was made for hire lies in the fact that copyright vests in the author on creation of the work unless the work was made for hire, in which case it vests in the employer or other person for whom it is made.[43]  That said, Psihoyos's work-for-hire argument is a red herring given the facts of this case.

The essence of Psihoyos's argument is that National Geographic assigned all of its rights to the photographs and the sculptures, whatever they were, to Psihoyos in or about August 1996, three months after publication of the article.  He seems to assert that National Geographic then owned the copyrights in the Cooley sculptures because they were works made for hire and, accordingly, that those copyrights then went to Psihoyos.  Although perhaps not necessary to the argument, its corollary seems to be also that National Geographic had no remaining copyright in the Cooley sculptures when those purportedly were assigned to Cooley one year after publication, *i.e.*, in or about May 1997.  But this all is nonsense, irrespective of the work-for-hire issue.

Psihoyos's contract with National Geographic provided that National Geographic "return[ed] to [Psihoyos] the copyright in all published and unpublished photographs from [the]

---

[42]

> *Id.*

[43]

> 17 U.S.C. §§ 201(a), 201(b).

assignment."[44]  It did not mention any copyright in the sculptures.  It did not address how National

Geographic possibly could "return" to Psihoyos copyright in sculptures that Psihoyos never owned

to begin with.  Hence, regardless of whether the sculptures were works for hire, National Geographic

never transferred to Psihoyos any copyright it may have owned in the sculptures.[45]  When the one

year anniversary of publication of the article occurred in or about May 1997, National Geographic

"return[ed] to [Cooley] . . . all rights including copyright" in the sculptures subject to National

Geographic's retention of limited, "perpetual non-exclusive right[s]."[46]  Cooley and, now, his

---

[44]

    Nelson Decl. [DI 62], Ex. 2 (Psihoyos letter agreement executed Dec. 24, 1995) ¶ 8.

[45]

    Moreover, as a matter of incidental interest only, there is no serious basis for contending that Cooley created the sculptures as works for hire in consequence of which National Geographic owned the copyrights at the time of the return of the photographic copyright to Psihoyos.

The Copyright Act of 1976:

 "explicitly defines works made for hire:
    "'A "work made for hire" is—
    "'(1) a work prepared by an employee within the scope of his or her employment; or

    "'(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire . . . .  17 U.S.C. § 101.'"  *Playboy Enters. v. Dumas*, 53 F.3d 549, 558 (2d Cir. 1995).

Cooley was not an employee of National Geographic, so quoted clause (1) of Section 101 of the Act does not apply.  And while we assume that Cooley was "specially ordered or commissioned" to prepare the sculptures for use in a "collective work," the Cooley-National Geographic contract does not "expressly agree . . . that the work[s] shall be considered . . . work[s] made for hire."  Accordingly, clause (2) has no bearing.  The sculptures were not works for hire.  In the last analysis, however, the work for hire issue has nothing to do with this case.

[46]

    Cooley Decl. [DI 65], Ex. 3 (Cooley letter agreement dated Nov. 30, 1995)

company have owned those copyrights ever since.

                     b.       *Psihoyos's Copyrights in his Photographs Extend Only to His Original Contributions*

Psihoyos's next argues that National Geographic's return to him of copyright in the photographs gave him *carte blanche*, irrespective of Cooley's creation of the sculptures and National Geographic's return to Cooley of his copyright in them.  That argument is equally baseless.

The Copyright Act grants to the holder of a copyright in a work the exclusive right "to prepare derivative works based upon the copyrighted work."[47]  A work is deemed derivative for the purposes of the Copyright Act when it is "based upon one or more preexisting works" in any "form in which a work may be recast, transformed, or adapted."[48]  In order to constitute a derivative work, the work in question must, "when analyzed as a whole, . . . display sufficient originality so as to amount to an 'original work of authorship.'"[49]  The Psihoyos photographs of the sculptures, as Psihoyos conceded at his deposition, are derivative works prepared on the basis of the sculptures.[50]

No one here claims that the taking of the photographs infringed anyone's copyright. The photographs were taken at the instance of National Geographic and with the consent of

---

[47]

       17 U.S.C. § 106(2).

[48]

       17 U.S.C. § 101; *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001).

[49]

       *Matthew Bender & Co., Inc. v. West Publ'g Co.*, 158 F.3d 674, 680 (2d Cir. 1998) (quoting 17 U.S.C. § 101).

[50]

       Israel Decl. [DI 64], Ex. 14 (Psihoyos Dep.) 153:10-20.

Cooley.[51]   Moreover, the court already has decided that the copyright in the sculptures was not transferred by National Geographic to Psihoyos and, in any case, has been owned by Cooley since May 1997.  The remaining question on this point is the extent, if any, to which Psihoyos's copyright in the photographs – not the sculptures – gave him the right to license and otherwise deal with the photographs as he has since May 1997 and gives him such rights going forward.

 The Court assumes that Psihoyos's photographs reflect some element of originality.[52] It thus assumes that Psihoyos owns valid copyrights in the photographs.  But that does not mean that Psihoyos's copyrights in the photographs give him the unrestricted right to use and license them as he wishes without regard to Cooley's copyrights in the sculptures those photographs depict.

 As an initial matter, the fact that Psihoyos is assumed to own valid copyrights in the

---

[51]

 Contrary to Psihoyos's argument (Psihoyos Mem. [DI 61] at 10-11), Cooley's consent to the taking of the photographs in the first place conferred no license on Psihoyos to use or license those photographs in whatever way he chose. Cooley was commissioned by National Geographic to create the sculptures so that they might be photographed and use in the magazine.  His agreement provided that the rights in the sculptures, upon payment to Cooley, would go to National Geographic for one year and then be returned to him.  Any license that was created by Cooley's consent to the photo shoot was a license to Psihoyos to make the photographs for the purpose of their being published in *National Geographic* and nothing more.  *See Gilliam v. Am. Broadcasting Cos., Inc.*, 538 F.2d 14, 20 (2d Cir. 1976) ("One who obtains permission to use a copyrighted [work] in the production of a derivative work . . . may not exceed the specific purpose for which permission was granted.").

[52]

 *See Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 449-61 (S.D.N.Y. 2005); *Bridgeman Art Library, Ltd. v. Corel Corp.*, 36 F. Supp. 2d 191, 195-99 (S.D.N.Y. 1999).

 There is some disagreement as to whether a photograph of a copyrighted work necessarily is a derivative work.  *See, e.g.*, *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 306 (S.D.N.Y. 2000) (finding that a photograph of a copyrighted subject does not "recast, transform, or adapt the authorship" of the subject and therefore does not necessarily constitute a derivative work).  The Court need not determine whether all photographs of copyrighted subjects necessarily are derivative works, for it assumes that Psihoyos's contributions to the photographs were sufficient to "recast" and "transform" Cooley's sculptures, thereby satisfying the requirements for a derivative work.

15

photographs is the beginning, not the end, of the analysis.  The Copyright Act grants the author of a derivative work copyright protection only in whatever increment of original expression the author contributes, but does not disturb the ownership of the copyright or the rights of its holder in respect of the underlying work.[53]  In other words, "[t]he copyright in [the derivative] work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the pre-existing material,"[54] even where the new and pre-existing material are "inseparably intertwined."[55]  The copyright in a derivative work thus does not confer the unfettered – let alone exclusive – right to reproduce the derivative work in a manner that would infringe rights of the holder of the copyright in the underlying work absent a license to reproduce or otherwise use the underlying work.[56]

In light of these principles, Psihoyos's copyrights in his photographs are essentially immaterial here.  They give him rights only to the extent that he may exercise them without infringing Cooley's copyrights in the sculptures.  As his original contributions to the photographs are inextricably intertwined with Cooley's sculptures, Psihoyos's ability to exploit his own rights to the photographs without Cooley's consent is virtually nonexistent.  If he reproduces an image of

---

[53]

17 U.S.C. § 103(b);  *Stewart v. Abend*, 495 U.S. 207, 223, 110 S. Ct. 1750 (1990) ("The aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-existing work remains on grant from the owner of the pre-existing work.").

[54]

17 U.S.C. § 103(b).

[55]

*Stewart*, 495 U.S. at 223 ("It is irrelevant whether the pre-existing work is inseparably intertwined with the derivative work.").

[56]

*Id.* ("So long as the pre-existing work remains out of the public domain, its use is infringing if one who employs the work does not have a valid license or assignment for use of the pre-existing work.").

a Cooley sculpture, he reproduces also the sculpture, which infringes Cooley's rights[57] if done without Cooley's authorization.[58]  Indeed, Psihoyos does not even dispute that his photographs are substantially similar to Cooley's sculptures – the point of taking them after all was to reproduce them accurately, if in but two dimensions – thus, conceding infringement absent some affirmative defense.

        c.     *Direct Versus Contributory or Vicarious Infringement*

        The parties dispute whether Psihoyos infringed Cooley's copyrights directly and, if not, whether Psihoyos may be held secondarily liable for contributory or vicarious infringement assuming the absence of some affirmative defense.

        Direct infringement is conduct that is "sufficiently close and causal to the illegal [infringement] that one could conclude that the [defendant] himself trespassed on the exclusive domain of the copyright owner."[59]  An intent to infringe is not required, for copyright is a strict

---

[57]

        *See Jarvis v. K2 Inc.*, 486 F.3d 526, 532 & n.6 (9th Cir. 2007);  *Gilliam*, 538 F.2d at 20 ("Since the copyright in the [original work] survives intact despite the incorporation of that work into a derivative work, one who uses the [derivative work], even with the permission of the proprietor of the derivative work, may infringe the underlying copyright" absent the permission of the original work's copyright owner); 1 NIMMER ON COPYRIGHT § 3.07[B] (recognizing that the owner of a derivative work may be "unable to exploit it because the new material is inextricably intermingled with the underlying material").

[58]

        *See* 1 NIMMER ON COPYRIGHT § 3.07[A][1] (rejecting as "unwarranted by . . . the Copyright Act" and "contrary to . . . axiomatic copyright principle" the notion that "once a derivative work is created pursuant to a valid license to use the underlying material, a new property right springs into existence with respect to the entire derivative work, so that even if the license is thereafter terminated, the proprietor of the derivative work may nevertheless continue to use the material from the underlying work as contained in the derivative work").

[59]

        *In re Cellco P'ship*, 663 F. Supp. 2d 363, 370 (S.D.N.Y. 2009) (quoting *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 130 (2d Cir. 2008)) (internal quotation marks

liability statute.[60]  That said, to establish direct liability the defendant must engage in conduct that is volitional and causally related to the illegal infringement.[61]

Psihoyos's arrangements with the stock photography agencies Getty, Corbis, and Superstock constitute direct infringement.  Psihoyos admits that Getty and Corbis obtained the images through his licensing agent.[62]  Similarly, in 2010, Psihoyos, again through his agent, signed an agreement with Superstock.[63]  All three companies displayed the images online and made them available to the public for licensing.[64]  It is irrelevant whether Psihoyos personally uploaded the files from the agencies' internal databases to their publicly accessible websites.  It is sufficient that Psihoyos made available to the agencies digital copies of his photographs and contracted with them to have the images displayed publicly.  Psihoyos's conduct was "sufficiently close and causal to the illegal [display of the photographs] that one could conclude that [Psihoyos] himself trespassed on the exclusive domain of [Cooley]."[65]

---

omitted).

[60]

*See Cartoon Network LP*, 536 F.3d at 130.

[61]

*See In re Cellco P'ship*, 663 F. Supp. 2d at 370.

[62]

Israel Decl. [DI 64], Ex. 14 (Psihoyos Dep.) 104:14-23 (stating Getty and Corbis obtained images from Psihoyos's licensing agent); Nelson Decl. [DI 62], Exs. 18–21 (Psihoyos database information provided to licensing agents).

[63]

Israel Decl. [DI 64], Ex. 11 (Decl. of Lanny Ziering for Superstock) ¶¶ 3–5 (stating photographs licensed through Psihoyos's licensing agent); Answer and Additional Defenses of Louis Psihoyos [DI 29] ¶ 25 (admitting creation of the photographs and their provision to Corbis and Psihoyos's licensing agent).

[64]

Israel Decl. [DI 64], Ex. 6 (Getty, Corbis, and Superstock webpages featuring the images).

[65]

*In re Cellco P'ship*, 663 F. Supp. 2d at 370 (quoting *Cartoon Network LP*, 536 F.3d at 130.

Psihoyos's conduct with respect to Dorling Kindersley and Penguin Group's infringing publication and distribution of the photographs in the books, *Dinosaurs: A Visual Encyclopedia, Dinosaurs: A Children's Encyclopedia*, and *Ask a Dinosaur*,[66] was more remote. Psihoyos admits that he provided the photographs to his licensing agents, and that he contracted with Corbis and Getty to make copies of the photographs available for licensing.[67]   Dorling Kindersley purchased a license in two of the photographs and published them in three books.   Dorling Kindersley and Penguin Group then distributed the books.[68]   The publication and distribution of the photographs infringed Cooley's reproduction and distribution rights.[69]

---

[66]

Although not addressed by the parties, the Court recognizes that Dorling Kindersley is a UK company that published the books in the UK and distributed *Dinosaurs: A Children's Encyclopedia* in the UK.   "It is well settled that copyright laws generally do not have extraterritorial application."   *Update Art, Inc. v. Modiin Publ'g Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988); *Richard Feiner & Co., Inc. v. BMG Music Spain, S.A.*, No. 01 Civ. 0937, 2003 WL 740605, at *2 (S.D.N.Y. Mar 4, 2003); *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, No. 96 Civ. 1103, 1996 WL 724734, at *4 (S.D.N.Y. Dec. 17, 1996).   A narrow exception to this rule exists where an individual commits an infringing act in the United States that permits further infringement abroad.   *Update Art*, 843 F.2d at 73.   For the exception to apply, the domestic act must have been an act of infringement itself.   *Id.*   Here, Psihoyos infringed Cooley's copyrights when he contracted with Corbis and Getty to display the photographs online in order to make them available for licensing.   This predicate act permitted further reproduction of the photographs abroad.   Cooley therefore may recover for the infringing acts committed extraterritorially.

[67]

Israel Decl. [DI 64], Ex. 14 (Psihoyos Dep.) 104:14-23; Answer and Additional Defenses of Louis Psihoyos [DI  29] ¶ 25 (admitting creation of the photographs and their provision to Corbis and Psihoyos's licensing agent).

[68]

Psihoyos argues that Cooley cannot establish a primary infringement because he settled his claims against the third parties who would have committed these infringements and that those third parties continue to deny any infringement occurred.   The terms of these settlements are hardly probative of whether there was a primary infringement.   Nor is the evidence of these settlements admissible to prove or disprove Cooley's claims.   FED. R. CIV. P. 408(a); *see also Rein v. Socialist People's Libyan Jamahiriya*, 568 F.3d 345 (2d Cir. 2009).

[69]

*See Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 119 (S.D.N.Y. 2012).

Although Psihoyos himself did not sign an agreement with Penguin, "[o]ne infringes [a copyright] contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."[70] Psihoyos knowingly induced these infringements by making copies of the photographs available to the public for licensing, he profited from these infringements by receiving royalties, and he had the power to stop the infringements because he controlled whether or not the photographs were publicly available. Whether his liability is couched as contributory or vicarious makes little difference.[71]

2.      *Alleged Affirmative Defenses*

Psihoyos asserts several affirmative defenses in response to Cooley's infringement claims. First, he contends that Cooley's claims are time barred. Second, he purports to have either a contractual or implied license to distribute the photographs. Finally, he claims that Cooley's claims are barred by equitable estoppel and laches. Because the defendant bears at trial the burden of proof as to any affirmative defenses, "a plaintiff may satisfy its Rule 56 burden by showing there is an absence of evidence to support an essential element of the non-moving party's case."[72] Cooley has sought partial summary judgment dismissing the defense of statute of limitations although not

---

[70]

  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (internal citations omitted).

[71]

  *See Metro-Goldwyn-Mayer Studios*, 545 U.S. at 930 n.9 (noting that the lines between contributory and vicarious infringement are not clearly drawn).

[72]

  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *DiCola v. SwissRe Holding (North Am.), Inc.*, 996 F.2d 30, 32 (2d Cir. 1993)) (internal quotation marks and brackets removed).

the other affirmative defenses.[73]

        *a.      Statute of limitations*

        The statute of limitations for copyright infringement is three years from the accrual of the claim.[74]   Under *Psihoyos v. John Wiley & Sons*,[75] this Court is bound by the Circuit's determination that an infringement claim accrues when the copyright holder discovers, or with due diligence should have discovered, the infringement.[76]

        Psihoyos claims first to have licensed the photographs in 1997 and asserts that Cooley knew full well or, at least, should have known – due to the Stone Company exhibition in the late 1990s, at which both the sculptures and photographs were featured and National Geographic's

---

[73]

      Cooley Mem. [DI 66] at 30-31.

[74]

      17 U.S.C. § 507(b).

[75]

      748 F.3d 120 (2d Cir. 2014).

[76]

      748 F.3d at 124-25.

      This Court respectfully remains of the view that an infringement claim – by virtue of 17 U.S.C. § 507(b), properly construed – accrues on the date of each infringement rather than upon the date of actual or constructive discovery.  *Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235, 242-48 (S.D.N.Y. 2004).  Moreover, in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), which post-dated *Psihoyos*, the Supreme Court wrote that "[a] copyright claim thus arises or 'accrues[s]' when an infringing act occurs." *Id.* at 1969 (footnote omitted).  In the following paragraph, it wrote that "a discrete 'claim' . . . 'accrue[s]' at the time the wrong occurs." *Id.*

      Viewed in isolation, these two comments would suggest that an infringement claim accrues when the infringement occurs.  But in a footnote to the first of the two quoted sentences, the Court indicated that it had not passed on the question whether the accrual of an infringement claim occurs on the date of the infringement or on the date of discovery.  Thus, it would be inappropriate to take the quoted text as determining the accrual question.  In these circumstances, this Court is bound by *Psihoyos*.

actions[77] – that Psihoyos was doing so.   The Court already has rejected that contention. Accordingly, Psihoyos is not entitled to summary judgment dismissing the case on the basis of the statute of limitations.   Moreover, in view of Cooley's unrebutted testimony that he first became aware of Psihoyos's use of the photographs in October 2011, Cooley is entitled to summary judgment striking the limitations defense.

> b.    *Psihoyos Did Not Have A Contractual or An Implied License to Reproduce Cooley's Sculptures*

Psihoyos contends that he cannot have infringed Cooley's copyrights in the sculptures because either National Geographic or Cooley granted him a license.   This contention is without merit for reasons previously expressed.

> c.    *Estoppel and Laches*

Psihoyos claims that Cooley's suit is barred by laches because Cooley delayed unreasonably the initiation of this action and thereby prejudiced Psihoyos.[78]   To prevail on laches grounds, a party must demonstrate both that there was a delay in filing suit that was unreasonable, and that the delay caused the defendant prejudice.[79]   Those elements are irrelevant here, however,

---

[77]

   *See* DI 70, Ex. 7 (Cooley Dep.) ¶ 109:11-110:21.

[78]

   *See New Era Publications Int'l, ApS v. Henry Holt & Co., Inc.*, 873 F.2d 576, 584 (2d Cir. 1989).

[79]

   *See Costello v. United States*, 365 U.S. 265, 282, 81 S. Ct. 534 (1961) (stating requirements that a party demonstrate "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense"); *Newsome v. Brown*, No. (S.D.N.Y. Mar. 16, 2005) (recognizing availability of laches defense where there exists "unreasonable or inexcusable" delay that causes "evidentiary or expectations based"

because the defense of laches cannot be used to defeat a claim filed within the Copyright Act's three-year statute of limitations.[80]   As the Court has found Cooley's claims to be timely filed, Psihoyos's laches defense fails as a matter of law.

Psihoyos argues also that Cooley is estopped from asserting his infringement claims because he knew that Psihoyos distributed copies of the photographs and yet did nothing, which caused Psihoyos to rely on Cooley's inaction.[81]   A copyright defendant asserting equitable estoppel ultimately must show that:

> "(1) plaintiff had knowledge of the defendant's infringing conduct; (2) plaintiff either (a) intended that defendant rely on plaintiff's acts or omissions suggesting authorization, or (b) acted or failed to act in such a manner that defendant had a right to believe it was intended to rely on plaintiff's conduct; (3) defendant was ignorant of the true facts; and (4) defendant relied on plaintiff's conduct to its detriment."[82]

"Estoppel is a drastic remedy and must be utilized sparingly."[83]   The party asserting estoppel must "use due care and not fail to inquire as to rights where that would be the prudent course of conduct."[84]

The claim that Cooley was aware of Psihoyos's allegedly infringing conduct rests on

---

prejudice to the defendant).

[80]   *Petrella*, 134 S. Ct. at 1973 (holding laches cannot be invoked to preclude adjudication of timely copyright infringement claim).

[81]   Psihoyos Mem. [DI 61] at 15.

[82]   *SimplexGrinnell LP*, 642 F. Supp. 2d 167, 194 (S.D.N.Y. 2009) (quoting *DeCarlo v. Archie Comic Publ'ns, Inc.*, 127 F. Supp. 2d 497, 509 (S.D.N.Y. 2001)) (brackets omitted).

[83]   *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 948 (S.D.N.Y. 1997).

[84]   *Id.*

the same factual basis as the contention that Cooley knew or, in the exercise of due diligence, would have discovered his claims more than three years before the commencement of the action.   For reasons previously expressed, there is no admissible evidence challenging Cooley's testimony that he first became aware of Psihoyos's actions in October 2011.   Accordingly, the estoppel defense fails as well.

C.      *Lanham Act Claim*

Section 43(a) of the Lanham Act prohibits, among other things, any misrepresentation likely to cause confusion as to the origin of goods.[85]  Cooley argues that Psihoyos marketed goods containing images of his sculptures without attribution, which caused consumers to think that Psihoyos was the creator of the sculptures, thereby falsely designating the origin of the goods.   Psihoyos moves for summary judgment of dismissal on this claim as well.

The phrase "origin of goods" under the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."[86]  It "refers only to the manufacturer or producer of the physical goods that are made available to the public," not "the creator of the underlying work that [is] copied."[87]  Therefore, as a matter of law, Cooley – the author of the sculptures – has no false designation of origin claim against Psihoyos based upon Psihoyos's reproduction of the sculptures without proper attribution.

---

[85]      15 U.S.C. § 1125(a).

[86]      *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003).

[87]      *Id.* at 31, 37 (internal quotation marks omitted).

D.      *Unfair Competition*

Cooley's unfair competition claim rests upon the same facts that underpin his copyright infringement claim.  He asserts that Psihoyos sold Cooley's work without attribution, "deceived the public about the origin and nature of the [sculptures]," and "thereby depriv[ed] . . . Cooley of the commercial benefits stemming from having his name associated with his sculptures."[88] Psihoyos moves as well for summary judgment dismissing Cooley's unfair competition claim.

"An unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property."[89] Although Cooley attempts to distinguish his unfair competition claim from his copyright claim by highlighting Psihoyos's public deception and the fact that he allegedly profited from "Cooley's expenditure of time, labor and talent,"[90] his claim falls squarely within the category preempted by the Copyright Act.[91]

---

[88]

   Cooley Opp. [DI 69] at 31.

[89]

   *Roy Export Co. Est. of Vaduz, Liechtenstein v. Columbia Broadcasting Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982).

[90]

   Cooley Opp. [DI 69] at 31.

[91]

   *See Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) ("[U]nfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted."); *Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 933 (S.D.N.Y. 1996) ("A claim that a defendant has reproduced the plaintiff's work and sold it under the defendant's name . . . is preempted by the Copyright Act.").

*III.    Conclusion*

   For the foregoing reasons, Cooley's motion for summary judgment [DI 63] is granted to the extent that (1) the Court determines that Psihoyos directly and contributorily infringed Cooley's copyrights commencing in or about 1997 and that neither the Cooley nor the Psihoyos agreement with National Geographic warrants any different conclusion, and (2) the affirmative defense of statute of limitations, equitable estoppel, and laches are stricken.

   Psihoyos's motion for summary judgment dismissing the complaint [DI 59] is granted insofar as the Lanham Act and unfair competition claims (Counts II and V) are dismissed. It is denied in all other respects.

   SO ORDERED.

Dated:  July 11, 2014

            _____

            Lewis A. Kaplan
           United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)